**SIDLEY**                                                                    **JENNER&BLOCK**LLP

April 3, 2020

UNREDACTED VERSION
FILED UNDER SEAL

**VIA ECF**

The Honorable Ann M. Donnelly
United States District Court
Eastern District of New York
225 Cadman Plaza East
Courtroom 4GN
Brooklyn, NY 11201

Re: *United States v. Huawei Technologies Co., Ltd., et al.*, 18 CR 457 (S-3) (AMD); <u>Application re Sensitive Discovery Material</u>

Dear Judge Donnelly:

    Huawei Technologies Co., Ltd., Huawei Device USA Inc., Huawei Device Co., Ltd., and Futurewei Technologies, Inc. (collectively, "Huawei") respectfully seek the Court's authorization, pursuant to the protective order entered by the Court on June 10, 2019 ("Protective Order"), *see* ECF No. 57, to redesignate as "Discovery Materials" ("DM") a small fraction of the vast quantity of materials that the government has designated as "Sensitive Discovery Material" ("SDM").[1] The government's application of the more restrictive SDM designation to these materials is unwarranted and makes it all but impossible for Huawei to prepare its defense.

    As the Court is aware, *all* discovery in this case—even that labeled "only" DM—is subject to stringent use and disclosure restrictions, including a bar on disclosing *any* of it to any non-signatory to the Protective Order. Even more stringent restrictions apply to SDM, which, among other things, generally cannot be taken or even discussed outside the United States. Although the Protective Order allows the government to mark discovery as SDM in the first instance, the ultimate authority to impose restrictions on discovery rests with the Court, and the government

---

[1] Capitalized terms and acronyms in this Application have the meaning given to them in the Protective Order.

*United States v. Huawei Technologies Co., Ltd., et al.*, 18 CR 457
April 3, 2020
Page 2

bears the burden of establishing good cause for any such restriction. *See* Protective Order ¶ 19; Fed. R. Crim. P. 16(d)(1); *United States v. Smith*, 985 F. Supp. 2d 506, 523 (S.D.N.Y. 2006).

During the negotiation of the Protective Order, the government represented that it expected SDM designations to be relatively rare. Instead, the government has designated more than half (54%) of the documents produced in its first 14 productions as SDM.[2] These broad SDM designations severely handicap Huawei's ability to prepare its defense, and that handicap has become only more severe with the travel restrictions imposed in the wake of the COVID-19 pandemic. Huawei's legal department and management are based primarily in China, which means, as a practical matter, that counsel cannot discuss *more than half of that discovery* with them at all. Among other limitations:

- Defense Counsel cannot discuss the majority of discovery in the case with client personnel in China by telephone or email;

- Defense Counsel cannot share legal memoranda analyzing that discovery with client personnel in China;

- Travel restrictions caused by the COVID-19 pandemic prevent client personnel from traveling from China to the United States to review SDM. But even if those personnel could travel to the United States or another government-approved location to learn about the evidence concerning the company, those personnel are prohibited upon returning to China from briefing their colleagues, memorializing their thoughts, or even discussing that evidence; and

- Client personnel who cannot (or choose not to) travel to learn about the evidence are *never* permitted to know or understand the evidence concerning the company, or to be exposed to any analytical work product "derived" or "prepared" from that evidence.

Taken together, the government's sweeping designations mean that Defense Counsel must, as a practical matter, wait until a meeting can be set up (a cumbersome and expensive process that has taken months under the best of circumstances and is currently impossible) to discuss some of the most important discovery in the case. When those discussions generate further tasks or work product, Defense Counsel must again, in the best of times, wait months to present those findings and analyses. The cumulative effect is like something out of the 18th century, when messages could travel no faster than a sailing ship could cross an ocean. And that in turn, as a practical matter, has cut the client out of its own defense—out of the process of understanding, placing in

---

[2] This Application concerns the SDM designated in the government's first 14 productions. The government has recently made five additional productions, and Huawei reserves the right to challenge designations in those productions and subsequent productions at a later time, or to bring a broader challenge to the appropriateness of the government's designations.

*United States v. Huawei Technologies Co., Ltd., et al.*, 18 CR 457
April 3, 2020
Page 3

context, investigating, and ultimately evaluating the evidence that the government claims establishes its guilt.

At the Court's urging, the parties have attempted to work together to find a compromise to reduce the amount of material designated as sensitive or the restrictions imposed with regard to SDM. Although this process has resulted in some concessions from the government's most extreme positions, the government has largely refused to budge. The government has explained that, in its view, any discovery that it obtained from a "third party" (including every supposed victim-bank) is properly classified as SDM and warrants extreme protections unless there is some special mitigating circumstance, such as where a document is already public or a communication was received from or sent to Huawei in the first place.[3]

Under the Protective Order, Huawei is authorized to lodge an objection to any or all of the government's overbroad SDM classifications, which would require the government to justify, on a particularized basis, why each category of discovery marked as SDM requires the specific heightened restrictions the government seeks to impose. Protective Order ¶ 19; *see Smith*, 985 F. Supp. 2d at 523. In the continued interests of compromise, however, Huawei instead asks the Court to permit a narrow set of documents ("the Application Documents") to be redesignated as standard Discovery Materials.

The Application Documents consist of less than 9% of the SDM produced in the first 14 productions. They are materials that Defense Counsel believe, based on their review to date, may be among the most important materials for Huawei's defense. They consist largely of records and communications from the banks supposedly defrauded by Huawei, including documents that contradict key allegations in the Indictment.[4] As only one example, a core allegation in the Indictment is that Huawei fraudulently obtained banking services from HSBC by "concealing the link" between Huawei and an entity called Skycom, which openly conducted business in Iran. *See* Indictment ¶ 70. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

---

[3] The government initially designated communications to and from Huawei email addresses as SDM. It has now conceded those materials should be redesignated as DM.

[4] All Indictment references are to the Third Superseding Indictment unsealed on February 13, 2020. *See* ECF No. 126. Although that Indictment adds additional counts, the allegations concerning the existing counts are largely unchanged. The government has not yet produced any discovery in connection with the new counts.

[5] A list of the Bates numbers of all Application Documents and copies of all exemplar documents discussed in this Application are attached hereto as Appendix A and Appendix B, respectively.

*United States v. Huawei Technologies Co., Ltd., et al.*, 18 CR 457
April 3, 2020
Page 4

      There is no basis to treat the Application Documents as SDM. To be clear, Huawei is not challenging the Protective Order or the various classifications that the Protective Order establishes. Huawei has never disputed that there could exist a category of actually sensitive materials that justify stringent restrictions in how those materials can be handled. It has, however, objected—and continues to object—to the government's attempts to clamp down on Huawei's ability to prepare its defense to a criminal indictment. *See* ECF No. 85 at 6-12. The Application Documents raise no national security concern (nor has the government ever suggested they do). Nor do they present any risk of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ concerns the government previously raised to the Court. *See* ECF No. 81 at 4-6. And even if they did, the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ could be redacted without treating the entire document as SDM.

      Finally, pursuant to paragraph 7 of the Protective Order, because this application expressly identifies the categories of documents (and particular documents) Defense Counsel has determined may be important to Huawei's defense strategy, Huawei is providing an unredacted version of this motion only to the Court and Firewall counsel and providing a version without defense-strategy material to the prosecution team; and requests permission to file the latter version under seal as stated in the accompanying motion to seal. Huawei respectfully asks that the Court hold oral argument on the de-designation relief that Huawei seeks.

## BACKGROUND

### A. The Protective Order

      The Protective Order places substantial restrictions on *all* discovery in this case, including restrictions on who can see discovery materials and how discovery materials can be used. *See* Protective Order ¶¶ 2-10. For example, discovery can be disclosed only to narrow categories of people, including the Defendants, Defense Counsel, and potential witnesses; anyone to whom discovery is disclosed (including the defense team and in-house counsel for Huawei) must sign and acknowledge the Protective Order's provisions; and personally identifying information must be redacted before any discovery is shown to a potential witness. *Id.* ¶¶ 2-5. The identical restrictions apply not only to discovery, but also to work product "derived" or "prepared" from the discovery. *Id.* ¶ 2.

      SDM is subject to heightened restrictions, including a requirement that neither SDM nor information derived or prepared from it be taken, discussed, or kept outside of the United States. *Id.* ¶ 11. In practice, this means that Defense Counsel cannot discuss SDM with their client when any party to that discussion is outside of the United States—which is virtually *every* discussion involving China-based Huawei Technologies Co., Ltd. Nor can in-house counsel for Huawei or company leadership discuss that evidence—or even write down their thoughts—among themselves. Instead, counsel and company personnel can review and discuss SDM only in the

*United States v. Huawei Technologies Co., Ltd., et al.*, 18 CR 457
April 3, 2020
Page 5

United States (or, for limited time periods, another government-approved location), and even then only in the presence of Defense Counsel.

Under the Protective Order, the government is entitled to make an initial designation as to whether a given document is SDM. But if the parties disagree about that designation, the Protective Order allows Defense Counsel to seek relief in Court. Pursuant to the Protective Order, and consistent with the law, the government then bears the burden of establishing "good cause" to treat the material as SDM. *See id.* ¶ 19; Fed. R. Crim. P. 16(d)(1); *Smith*, 985 F. Supp. 2d at 523.

Huawei has fully respected the Protective Order's provisions and, other than a small number of unintentional technical violations attributable to outside counsel, followed every stipulation in its 27 paragraphs.

### B. The Government's Productions And Prior Litigation Over Designations

This Application concerns the first 14 discovery productions by the government, totaling 476,313 documents. The government has designated 256,804 of these documents, or approximately 54%, as SDM.

Huawei previously filed a motion with the Court objecting to a particular subset of these SDM designations—specifically, to the government's designation of the entirety of the contents of various cloud-based email and social media accounts as SDM. ECF No. 85 at 7-10. Huawei explained that the government's blanket SDM designations caused substantial prejudice to the company's ability to fully participate in its own defense. *Id.* at 11-12. The government argued in response that the designations were appropriate because the documents contained ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ that implicated the safety of the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ECF No. 81 at 4-6.

At argument on the motion, the Court indicated that it understood the government's desire to keep certain discovery out of China, but also observed that there was a threshold issue of whether the discovery was "really sensitive" in the first place. The Court then asked Defense Counsel and the government to attempt to "come to some kind of an accommodation." Counsel agreed to try to do so. *See* Sept. 4, 2019 Hearing Tr. at 35-39.

As noted above, these further negotiations have largely been unsuccessful. Although the government has made some small concessions, it has refused to revisit its blanket overdesignations or to permit Defense Counsel to discuss the discovery with their client by phone, email, or at their offices in China.[6] Although the issue of the government's improper, blanket designation of the

---

[6] In November 2019, the government agreed that Defense Counsel and Huawei personnel could meet to review and discuss SDM in Japan. Although a helpful stop-gap to initially inform a subset

*United States v. Huawei Technologies Co., Ltd., et al.*, 18 CR 457
April 3, 2020
Page 6

various cloud-based email and social media accounts as SDM remains unresolved, it is not the subject of the present motion, which focuses instead on Huawei's identification of specific documents, material to the company's defense, that Huawei needs to be able to discuss internally and with its counsel.

## ARGUMENT

Huawei's present motion focuses on a small set of what Defense Counsel believe are likely the most important documents through production 14, based on its review to date. They represent less than 9% of the documents (21,259 documents) that the government has designated as SDM. They consist of categories of documents that responsible counsel must be able to discuss with their clients to understand and respond to the government's allegations. Indeed, on their face, many of these documents directly contradict the Indictment's allegations that HSBC and other banks were misled by Huawei and relied on those misrepresentations in their decisions to extend banking services to the company. Equally important, there is no basis for treating them as SDM, and the government has never offered one. The Court should thus redesignate the Application Documents as DM rather than SDM.

### I. Legal Standard

It is a bedrock rule that "defense counsel need to be able to consult with their clients about the nature of the prosecution's expected proof . . . [and] must thus be free to communicate freely with their clients, and to discuss with them the anticipated testimony against them." *United States v. Garcia*, 406 F. Supp. 2d 304, 305 (S.D.N.Y. 2005). Accordingly, restrictions on discovery can be no greater than necessary given the importance of allowing defendants and Defense Counsel to prepare the defense. *See, e.g.*, *United States v. Lindh*, 198 F. Supp. 2d 739, 741-42 (E.D. Va. 2002). The government bears the burden to establish good cause for imposition of the SDM restrictions (or any lesser restrictions) on the Application Documents. *See* Protective Order ¶ 19; Fed. R. Crim. P. 16(d)(1).

"Good cause exists 'when a party shows that disclosure will result in a clearly defined, specific and serious injury.'" *Smith*, 985 F. Supp. 2d at 523 (quoting *In re Terrorist Attacks on September 11, 2001*, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006)); *see also United States v. Stone*, No. 10-20123, 2012 WL 137746, at *3 (E.D. Mich. Jan. 18, 2012) (denying government's motion for a protective order based only on broad allegations). "A finding of harm 'must be based on a particular factual demonstration of potential harm, not on conclusory statements.'" *Smith*, 985 F.

---

of Huawei's in-house legal team about the contents of the discovery, the meeting was logistically cumbersome to arrange and far from a long-term solution. In particular, upon their return to China, Huawei personnel cannot discuss anything they learned from their review of the discovery in Japan with each other, their colleagues, or Defense Counsel. No further meetings can take place in Japan while travel bans are in place due to the COVID-19 pandemic.

*United States v. Huawei Technologies Co., Ltd., et al.*, 18 CR 457
April 3, 2020
Page 7

Supp. 2d at 523 (citation omitted).  "Broad allegations of harm, unsubstantiated by specific examples of articulated reasoning, do not support a good cause showing." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (citation and quotation marks omitted).  Although a blanket protective order may be entered initially without a particularized showing of harm, such a showing is required whenever "'a claim under an order is challenged.'" *United States v. Williams*, No. 15-10145, 2015 WL 5923551, at *3 (D. Mass. Oct. 9, 2015) (citing *United States v. Bulger*, 283 F.R.D. 46, 53 (D. Mass. 2012)) (observing that protective orders can "can be overbroad and unnecessary").

Applying the good cause standard "requires courts to balance several interests, including whether dissemination of the discovery materials inflicts 'hazard to others,' and whether 'the imposition of the protective order would prejudice the defendant.'" *Smith*, 985 F. Supp. 2d at 523 (citations omitted).  In particular, courts must be sensitive to "the impact [discovery restrictions] might have on a defendant's due process right to prepare and present a full defense at trial." *Lindh*, 198 F. Supp. 2d at 742.

Stringent restrictions must be commensurate with the aims of the Protective Order: "Courts should take care . . . to ensure that the limits on dissemination imposed by a protective order are no broader than necessary to accomplish the goals of the protective order." *United States v. Betancourt*, No. 17-30022, 2019 WL 1767396, at *2 (D. Mass. Apr. 22, 2019) (citing *Smith*, 985 F. Supp. 2d at 523-24).  For the same reason, "courts should be sensitive to less restrictive alternatives available to achieve [the] goal." *Lindh*, 198 F. Supp. 2d at 742.

II. **The Application Documents Are Highly Relevant To Huawei's Defense And In Some Cases Are Affirmatively Exculpatory.**

A core premise of the government's case as alleged in the Indictment is that Huawei lied to HSBC and other banks about its relationship with an entity called Skycom that operated openly in Iran.  Indictment ¶¶ 70-79.  The government alleges that in a meeting in 2013, Huawei showed HSBC a PowerPoint deck stating that it had a "normal business relationship" with Skycom, when in fact Huawei had a closer (but unspecified) relationship to the company.  According to the government, Huawei concealed its relationship with Skycom in order to continue to obtain banking services from HSBC and other banks.  *E.g.*, *id*. ¶ 79 ("Based in part on the false representations … [HSBC] continued its banking relationship with Huawei . . . .").  It is largely based on that 2013 meeting that the government alleges eight-year bank and wire fraud counts and conspiracies aimed at an unspecified number of banks.

To defend against these allegations—indeed, even to understand them—Defense Counsel and their client must be able to review, discuss, and analyze the evidence the government provided in discovery.  The Application Documents, which consist ███████████████ ████████████ speak directly to these issues.  They show, among other things, ████████

*United States v. Huawei Technologies Co., Ltd., et al.*, 18 CR 457
April 3, 2020
Page 8



Moreover, many of the Application Documents are exculpatory. Huawei looks forward to demonstrating the legal and factual inadequacy of the government's charges on a complete record. But even the discovery the government has produced to date tells a different story than the Indictment:



- [REDACTED]
- [REDACTED]
- [REDACTED]
- [REDACTED]
- [REDACTED]
- [REDACTED]

*United States v. Huawei Technologies Co., Ltd., et al.*, 18 CR 457
April 3, 2020
Page 9

In short, not only are the Application Documents relevant to Huawei's defense, many of them undermine the Indictment's allegations that Huawei sought to mislead and that the banks were misled.

Because these documents are directly relevant to Huawei's defense, Defense Counsel needs to be able to discuss them with their client, and Huawei needs to be able to discuss them internally. No defendant, particularly a large corporation facing charges concerning alleged conduct that took place the better part of a decade ago, can adequately prepare its defense without its Defense Counsel being able to show it key documents, to present work product based on those documents, and to follow up on its investigation based on those documents.

As just one example, Defense Counsel and in-house counsel for Huawei need to be able to review the evidence that ▓▓▓ was aware ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ with Huawei personnel across multiple corporate divisions who interacted ▓▓▓▓▓▓ as well as Huawei lawyers responsible for making strategic decisions about the company's defense. In other words, the need to discuss discovery with Huawei has both a factual component – *i.e.*, expanding Defense Counsel's understanding of key facts by discussing them with relevant personnel and placing them into context, and a strategic component – *i.e.*, apprising company officials and in-house counsel about the government's case, including weaknesses in the case, so that the company can best assess how to proceed.

On the factual side, the records produced by the government are so voluminous and the allegations so broad that responsible counsel must have the leeway to confer about those records with relevant in-house counsel and knowledgeable employees. As any prosecutor or defense counsel has experienced, a theoretical discussion of a topic with a potential witness is no substitute for direct review of documentary materials. The very point of discovery is to provide the relevant documents so that counsel need not rely solely on witness memory (especially concerning ▓▓▓▓▓ ▓▓▓▓▓ over a decade old) to investigate the facts. Likewise, on the strategic side, Huawei officials and in-house counsel cannot understand, let alone help prepare, their defense options without reviewing those documentary materials and accompanying work product. In short, review of these documents will permit Huawei to evaluate the strength of the government's case, locate potential witnesses or other evidence to contradict it, and, in general, develop a coherent defense strategy for a company with 180,000 employees.

Yet Defense Counsel currently have no way to undertake those basic tasks. Defense Counsel cannot discuss those documents with client personnel in China nor send them work product based on Defense Counsel's own investigation of the documents. And even when the government allowed a single meeting in Japan to discuss SDM (which is currently impossible), follow-up was equally difficult and expensive because Defense Counsel cannot share their subsequent analyses without setting up yet another in-person meeting.

*United States v. Huawei Technologies Co., Ltd., et al.*, 18 CR 457
April 3, 2020
Page 10

In the past, the government has argued that the possibility of obtaining safe passage letters for Huawei officials to travel to the United States to review SDM justifies maintaining the SDM designation for documents. *See* ECF 81 at 2, 5. That argument was fatally flawed even before the advent of the COVID-19 pandemic, which has led to an indefinite effective ban on travel between China and the United States. But even apart from the ban on travel to the United States, this is a case of enormous complexity, involving 16 counts against affiliates of one of the world's largest corporations. Even the Application Documents, comprising just a small fraction of the SDM in the case, amount to several thousand documents. To present an adequate defense to these charges, Huawei must be able to participate directly in its own defense. And there is simply no way that Huawei personnel could be briefed on this volume of documents on a visit to the United States (again even assuming that the travel bans were lifted and safe passage letters were obtained). Even if they were, those personnel who hypothetically were able to travel to the United States could not discuss what they learned with their colleagues in China upon their return, or even bring basic notes back with them.

### III. The Government Cannot Show Good Cause To Treat The Application Documents As SDM.

It is the government's burden to establish good cause for treating the Application Documents as SDM. The government cannot carry that burden. The sole basis the government has ever offered to Huawei for its SDM designations regarding these documents (whether for the Application Documents, or any other SDM) is that the documents are "third-party" documents.

This ground is manifestly inadequate. Most criminal discovery concerns "third-party" documents. And disclosure of third-party documents is not a risk or harm, much less "a clearly defined, specific and serious injury." *Smith*, 985 F. Supp. 2d at 523 (quoting *In re Terrorist Attacks on September 11, 2001*, 454 F. Supp. at 222). It would perhaps be different if the Application Documents actually contained sensitive personal information, such as social security numbers, home addresses, or information relating to health, juveniles, or trade secrets.[7] But they do not. Instead, these documents are business records and communications.



Likewise, while Huawei certainly acknowledges that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ there is nothing about the Application Documents—▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See Smith*, 985 F. Supp. 2d at 528-29 ("[T]o establish good cause based on the interests of third parties . . . the Government must provide specific information about the third parties whose interests might be at risk, and how dissemination of the discovery might jeopardize them."). And in any event, the Protective Order already provides strong and sufficient

---

[7] Huawei has offered to consider redaction of any sensitive categories of information identified by the government in the SDM, and affirmatively proposed the categories listed above.

protection against the government's vague concerns even for materials designated DM, as evidenced by the fact that the Protective Order's restrictions have been respected since it was entered. Again, under the Protective Order, all persons entitled to view Discovery Materials must *already* keep those materials confidential and abide by the other restrictions on disclosure and dissemination outlined above. *See* Protective Order ¶¶ 2-8.

Indeed, the government has pointed to no specific negative consequences at all, which makes it impossible to explain how such a consequence would follow from the Court's decision regarding discovery restrictions. *See United States v. Wecht*, 484 F.3d 194, 211 (3d Cir. 2007) (good cause requires "specific examples or articulated reasoning" (internal quotation marks omitted)); *Stone*, 2012 WL 137746, at *3 ("[T]he serious nature of the charges, coupled with the Government's generalized concerns about security, are not sufficient to grant this protective order request."). Moreover, the government's failure to articulate any justification for applying SDM-level protection is hardly surprising, given that the government is not treating the materials as warranting such protection. To the contrary, the government has, itself, already chosen to selectively disclose choice examples of the "third-party" documents—or information derived therefrom—in its Indictments, press release, press conference, and other public statements—and obviously plans to disclose more of them at trial. *See, e.g.*, U.S. Dep't of Justice, Press Release, *Chinese Telecommunications Conglomerate Huawei and Huawei CFO Wanzhou Meng Charged with Financial Fraud*, Jan. 28, 2019, https://www.justice.gov/opa/pr/chinese-telecommunications-conglomerate-huawei-and-huawei-cfo-wanzhou-meng-charged-financial; U.S. Dep't of Justice, Press Conference, *Acting Attorney General Whitaker Announces National Security Related to Charges Against Chinese Telecommunications Conglomerate Huawei*, Jan. 28, 2019, https://www.justice.gov/opa/video/acting-attorney-general-whitaker-announces-national-security-related-criminal-charges. In short, the government's view seems to be that documents can become fully public if doing so helps the prosecution, but they cannot even be whispered about or jotted down outside of the United States among parties who have committed to respecting the Court's orders if doing so helps the defense.

Finally, to the extent some of the Application Documents include actually ▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓ such as medical information or personally identifying information, the proper procedure is to redact that information, not designate the entire document as SDM. If the Court deems it necessary, Defendants agree to the redaction of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. But further restriction is not warranted. The Protective Order's strong restrictions on *all* Discovery Materials is sufficient to ensure protection against the government's vague concerns about some information in some of the Application Documents.

**IV.  This Motion Should Be Litigated Via Firewall Counsel.**

By its very nature, this motion concerns defense strategy and Defense Counsel's assessment of the evidence. As a result, and as provided in the Protective Order, Huawei has served the unredacted version of this motion on Firewall Counsel identified by the government.

*United States v. Huawei Technologies Co., Ltd., et al.*, 18 CR 457
April 3, 2020
Page 12

*See* Protective Order ¶ 7 & n.3 (providing for Firewall Counsel to litigate issues regarding disclosure not currently authorized by the Protective Order).

\*\*\*

For the foregoing reasons, Huawei respectfully asks this Court to redesignate the Application Documents as Discovery Materials.

Respectfully submitted,

| | |
|---|---|
| /s/ Michael A. Levy | /s/ David Bitkower |
| Thomas C. Green | David Bitkower |
| Mark D. Hopson | Matthew S. Hellman |
| Michael A. Levy | JENNER & BLOCK LLP |
| SIDLEY AUSTIN LLP | 1099 New York Avenue, NW |
| 787 Seventh Avenue | Washington, D.C. 20001 |
| New York, NY 10019 | Tel.: 202-639-6048 |
| Tel.: 212-839-5300 | Email: dbitkower@jenner.com |
| Email: mlevy@sidley.com | |

*Counsel for Defendants Huawei Technologies Co., Ltd., Huawei Device USA Inc., Huawei Device Co., Ltd., and Futurewei Technologies, Inc.*