# SIDLEY

## JENNER & BLOCK LLP

February 7, 2021

**REDACTED FOR
PUBLIC FILING**

**BY ECF AND ELECTRONIC MAIL**

Alexander A. Solomon
David K. Kessler
Julia Nestor
Sarah Evans
Assistant United States Attorneys
United States Attorney's Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201

Laura M. Billings
Christian J. Nauvel
Trial Attorneys
Money Laundering and Asset Recovery Section
U.S. Department of Justice, Criminal Division
1400 New York Ave., NW, 10th Floor
Washington, D.C. 20005

Thea D. R. Kendler
David Lim
Trial Attorneys
Counterintelligence and Export Control Section
U.S. Department of Justice, National Security Division
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

Re:  ***United States v. Huawei Technologies Co., Ltd. et al.* No. 18-457 (S-3)
(AMD) (CLP); Huawei Defendants' Request for *Brady* Material**

Dear Counsel:

We write to follow up on our repeated and largely ignored requests for *Brady*
information.  *See* Dkt. 117, 180.  Since this case was first charged, we have asked the
government to produce to us the reports of the independent monitor appointed as part of
DOJ's deferred prosecution agreement with HSBC, any reports resulting from Latham &
Watkins's investigation of HSBC's relationship with Huawei, and other favorable and
exculpatory information that tends to undermine the government's assertions that the Huawei
Defendants defrauded HSBC or the other so-called Victim Financial Institutions.  Throughout
that time, until very recently, the government has ignored these requests, delayed, and
stonewalled.  And the government has done so despite consensus among all three branches of
government that *Brady* material is to be disclosed promptly.  *See* Due Process Protections Act
of 2020, Pub. L. No. 116-182, 134 Stat. 894 (2020) (Congressional directive that judges must
now remind the government about *Brady* obligation and consequences of disregarding it on

# SIDLEY

# JENNER&BLOCK LLP

Page 2

first court day of criminal prosecution, orally and by written order); Justice Manual § 9-5001(D)(1) (exculpatory information "must be disclosed reasonably promptly after it is discovered"); EDNY Discovery Policy at 24 ("If the material is exculpatory, it must be disclosed promptly after it is discovered."); *United States v. Armstrong*, 2005 WL 1803129, at *1 (S.D.N.Y. 2005) ("The government must, under Brady, produce exculpatory evidence promptly upon its discovery.").



Two years after this case was indicted, the government at long last began responding to the defendants' early and repeated requests with a smattering of significant but insufficient *Brady* disclosures in the form of letters from the government to the defendants. The first two such letters—dated August 25, 2020 and October 8, 2020 (respectively, the "First" and "Second *Brady* Letters")—consist of                                        undermining the Indictment's central fraud allegation that Huawei hid the nature of the relationship between Huawei and Skycom from                         supposed victim banks, and that               the       banks relied on those misrepresentations when deciding to continue doing business with Huawei.

Then, on December 9, 2020, the government produced a third letter (the "Third *Brady* Letter"), which consists of 14 single-spaced pages of information that bears heavily on the core of the Huawei Defendants' defense to the Indictment's fraud charge. Specifically, the letter                                                                                   The information plainly tends to support the Huawei Defendants' argument that the banks were not victims and that the information that the Huawei Defendants are charged with fraudulently concealing was not material to any action                  .

The government has no excuse for failing to disclose this information sooner. Although only produced to the defense in December, the information has been well known to the government at least since                                  . The Defendants requested this specific information on March 26, 2019, and has repeated that request several times since then. The government steadfastly refused to disclose                  for nearly two years—or even whether it had such information in its possession, custody, or control.

The government's disclosures are insufficient. Based on what is described in the three *Brady* Letters, it is clear that the government possesses significantly more *Brady* material that it is required to disclose. We therefore renew our prior demands for *Brady* information and articulate herein some of the specific categories of disclosable exculpatory information that the *Brady* Letters make clear are in the government's possession.

# SIDLEY

JENNER & BLOCK LLP

Page 3

**The *Brady* Letters Are Exculpatory**

Each of the three Brady Letters came with the government's assertion that ███████ ██████████ combined with the government's years-long delay in providing it, raises serious questions about the government's understanding of its *Brady* obligations in this case. The information in the *Brady* Letters is not only exculpatory but also *critical* to the Huawei Defendants' ability to defend themselves against the fraud charges that the government has alleged in the Indictment and has further detailed in various "Record of the Case" submissions filed in connection with co-defendant Wanzhou Meng's extradition proceedings in Canada.[1]

In particular, the *Brady* information recently disclosed by the government indicates that key government allegations are misleading or flatly false:

- **HSBC's Knowledge.**  At the core of the government's fraud allegations is its assertion that Huawei misled HSBC about its relationship with Skycom.  The Indictment alleges that Huawei "repeatedly misrepresented" the manner in which it conducted business in Iran and its business with Skycom, and that, "[b]ased in part" on those "false representations," HSBC "continued its banking relationship with Huawei."  Indictment ¶¶ 70–79.  In the face of substantial evidence that Huawei was transparent with HSBC about its relationship with Skycom, the ROC retreats to a back-up position: that although "some *junior* HSBC employees" were aware of the allegedly misrepresented facts, these "more *junior* employees did not report information regarding the HSBC Skycom account … to [the HSBC Managing Director, Deputy Head of Banking Asia Pacific] or other senior HSBC executives."  ROC ¶ 31 (emphases added).

- The *Brady* Letters show that these contentions are misleading and inaccurate in several ways.

  - First, the *Brady* Letters indicate ████████ ████████ █ ████████████, the First *Brady* Letter ████████ ██████. First Brady Letter at 2–6. ████████████ *Id.* ████████████████. *Compare* First *Brady* Letter at 6 *with* ROC ¶ 23 *and* SSROC ¶



---

[1] As you know, the Huawei Defendants have filed a motion for a bill of particulars setting forth the specifics of the government's bank and wire fraud theories.  In opposing that motion, the government directed the defense to its Canadian filings to discern "detailed information" about "the government's theory of the fraud charges."  Gov't's Opp'n to Defs.' Mot. for Bill of Particulars, ECF No. 209, at 6.  Those filings include a so-called Record of the Case ("ROC"), Supplemental Record of the Case ("SROC"), and Second Supplemental Record of the Case ("SSROC").

**SIDLEY**                                           **JENNER&BLOCK** LLP

Page 4

24. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ tends to
support Huawei's expected defense that it did not conceal material facts
▮▮▮▮▮▮▮▮.[2]

o Second, the *Brady* Letters ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

The Third *Brady* Letter ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮ Third *Brady* Letter at 6.  And the First *Brady* letter
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮.  First *Brady* Letter at 4–5.  To the extent the
government intends to rely on its "junior"/"senior" theory at trial, the
Huawei Defendants have a right to learn and develop information that
undermines its very premise.

o And third, the *Brady* Letters ▮▮▮▮▮▮▮▮▮▮▮



Third *Brady* Letter at 6.

▮▮▮▮▮▮▮▮▮▮  *Id.* at 6.

- **Materiality.**  To prevail at trial, the government must also convince a jury that
  Huawei's relationship with Skycom was material to HSBC's and the other alleged
  victim banks' decisions to provide banking services to the company.  The
  government actually goes further in the Indictment and ROC, and is apparently
  pursuing a trial theory that HSBC actually relied on statements in Ms. Meng's
  2013 PowerPoint presentation to Managing Director ▮▮▮▮▮▮ in making its
  decision to retain Huawei as a client.  For example, the Indictment alleges that
  HSBC "would have reevaluated [its] banking relationship[] with HUAWEI" if it
  had known more.  Indictment ¶ 71.  And in the SSROC, the government alleges

---

[2] Attempting to defend its fallback position that only "junior" HSBC employees knew the truth, the
government alleges in the SSROC that employees with the title of "vice president" and "senior vice president"
did not in fact hold "senior" positions at HSBC.  SSROC ¶¶ 23–24.  But even that statement is misleading at
best:  the government's First *Brady* Letter ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮   The Huawei Defendants have a right to learn and use that information to undermine the
government's misleading allegations.

**SIDLEY**                                    **JENNER&BLOCK** LLP

Page 5

that Ms. Meng's presentation was important to ███████ assessment of the "risk" posed to HSBC by its relationship with Huawei.  SSROC ¶¶ 1–5.  The government further alleges that after "[r]elying on the misrepresentations by Meng [at the 2013 presentation] and others, HSBC … continued to provide banking services to Huawei, believing the civil, criminal, and reputational risks of banking Huawei to be acceptable."  ROC at p. 2; *see also id.* ¶¶ 36–38; SROC ¶¶ 5–6.

- The *Brady* Letters turn this narrative on its head and show that these materiality allegations are inconsistent with the true facts.

    o   The Third *Brady* Letter reveals that ████████

    

    ████████████ Third *Brady* Letter at 6 (emphasis added). ████████

    ████████████████ *Id.* at 6–7.

    o   Nor are such inferences limited to ██████: the government reveals in the Third *Brady* Letter that notwithstanding the government's allegations in the Indictment and ROC, ████████████████

    ████ Third *Brady* Letter at 11. ████████

    ████ *Id.* at 2-3. ████

    ████ *Id.* at 3.

Put simply, the government's theory, as reflected in the Indictment, ROC, and supplementary materials, is that Huawei misled HSBC about its relationship with Skycom, and that the truth about that relationship was important to HSBC.  By contrast, the Third *Brady* Letter reveals that, ████████████████████

**Huawei Is Entitled to the Underlying *Brady* Material Immediately**

The three recent *Brady* letters are insufficient to discharge the government's constitutional obligations with respect to the disclosure of *Brady* information.  In the First and Second *Brady* Letters, ████████████████

 **SIDLEY**                                        JENNER & BLOCK LLP

Page 6

███████████████████████████████████████████████████████████████
And in the Third *Brady* Letter, the government has only ████████████
███████████████████████████████████████████     These disclosures
do not meet the government's substantive *Brady* obligations.  We therefore request that you
immediately disclose the following information:

    1.    For ████████████████ in the First and Second *Brady* Letters, provide the
relevant ██████████████████████████████████████████████████████
███████████████████████████████ exculpatory information, the
government must disclose that information immediately.

    2.    We have previously requested that the government produce ████████
████████████████████; the Third *Brady* Letter reveals why the
government should have done so at the outset of this case.  The government
cannot discharge its *Brady* obligations by providing ████████████
███████████████████████████████████████████████████████████
█[3] in a way that obscures ██████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████

    3.    In addition, Huawei should not be forced to rely on ██████████████
(or the government's self-interested description of ██████████████████)
of exculpatory evidence when the original source documents are in the
government's possession, custody, or control.[4]  We therefore ask the
government to promptly produce (or identify in discovery) the documents
forming the basis ██████████████████████████████████████:

        a.    ████████████████████████████████████████████
███████████████████████████ Third *Brady* Letter at 6.
In particular, it appears from the Third *Brady* Letter that ███████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████ would directly contradict the
allegations in the Indictment and would be immediately discoverable
pursuant to *Brady*.  If the government has, or is aware, of such
statements, but is withholding them on the basis that they need not be

---

[3] ██████████████████████████████████████████████████████
███████████████████████████████████████

[4] ████████████████████████████████████████████████
████████████████████████

**SIDLEY**                    **JENNER&BLOCK** LLP

Page 7

disclosed until the production of impeachment material, please alert us to that fact so that we may bring it to the Court's attention.

b.   ███████████████████████████████
     ███████████. *Id.* at 11.

c.   ███████████████████████████████
     ███████████████████ *Id.* at 2.

d.   ███████████████████████████████
     ███████████████████████████████
     ████████, *id.* at 7,
     ███████████████████████.[5]

e.   ███████████████████████████████
     ████████. *Id.* at 12.

f.   ███████████████████████████. *Id.* at 3.

g.   ███████████████████████████████
     ██████████[6])███████████████
     ███████████████ *Id.* at 2, 11.

h.   ███████████████████████████████
     ███████████████████████. *Id.*
     at 2, 11–12.

4.      The Third *Brady* Letter ████████████
     ██████████████. It is public knowledge, however, that in addition to ███



_____

[5] *See also* Karen Freifeld & Steve Stecklow, *Exclusive: HSBC Probe Helped Lead to U.S. Charges against Huawei CFO*, Reuters (Feb. 26, 2019).

[6] ███████████████████████████████
███████████████████████████████
███████████████████████████████

**SIDLEY**                                             **JENNER & BLOCK** LLP

Page 8



████████████████████████, there were likely other ████████████████████[7]  Please provide to Huawei any such documents to the extent they relate to Huawei or are otherwise exculpatory for the reasons identified in our prior communications.  To the extent any such findings were not reduced to writing or preserved, summarize them in detail.

5.   The government has also refused to provide the results of the Latham & Watkins investigation, including any reports, presentations, or work product from the investigation shared with the government.[8]  As we have explained previously, that investigation is materially exculpatory ████████████ ████████████████.  Please produce any such documents, or where the conclusions were not reduced to writing or preserved, provide a detailed summary.

6.   For both the ████████████████████████████████████████, please produce any documents within the government's possession, custody, or control that ████████████ regarding HSBC's relationship with Huawei, its knowledge of the Huawei-Skycom relationship and Huawei's business in sanctioned jurisdictions, and HSBC's compliance with sanctions, money laundering, or KYC regulations—including but not limited to:

   a.   Reports of ████████████████████████████████.[9]

   b.   Documents, including but not limited to memoranda, notes, and exhibits, related to ████████████████████████████████ ████████████████████████████████████████████,[10]

   c.   Reports of ████████████████████████████████[11] and

   d.   Letters sent ████████████████████████████████[12]

---

[7] ████████████████████████████████████████████████
████████████████████████

[8] *Cf.* Karen Freifeld & Steve Stecklow, *Exclusive: HSBC Probe Helped Lead to U.S. Charges against Huawei CFO*, Reuters (Feb. 26, 2019).

[9] ████████████████████████████████████████████████
████████████████████████████████████████████████

[10] ████████████████████████

[11] 

[12] Anthony Cormier et al., *The Untold Story of What Really Happened After HSBC, El Chapo's Bank, Promised to Get Clean*, Buzzfeed (Sept. 21, 2020).

**SIDLEY**                                          **JENNER&BLOCK** LLP

Page 9

Likewise, please produce any documents regarding HSBC's relationship with Huawei that relate to meetings attended by HSBC ███████████████████████ ███████████.[13]  To the extent the government is aware of the existence of otherwise discoverable materials along these lines, but asserts that such materials are not discoverable at least in part because they are not in its possession, custody, or control, please identify those materials and the basis for the government's control or lack thereof.

7.     Separate and apart from ██████████████████████████████ ████████████, we understand that the government has interviewed numerous HSBC witnesses.  Those interviews, however memorialized, should be produced to Huawei to the extent they relate to HSBC's relationship with Huawei, its knowledge of the Huawei-Skycom relationship and Huawei's business in sanctioned jurisdictions, and HSBC's compliance with sanctions, money laundering, or KYC regulations.

8.     Similarly, we expect that the government has in its possession HSBC's internal risk criteria and policies that, ████████████████████, would undermine the government's contention that HSBC would have handled Huawei's Skycom-related business differently had it been told the information that the government contends Huawei withheld—even while HSBC was knowingly clearing hundreds of millions of dollars (or billions of Iranian Rials) worth of Iran-related transactions for other customers.  Huawei is entitled to those criteria and policies.

9.     Finally, the government's decision to terminate the HSBC DPA despite ██████ ██████████████████████████████████████████████████████ raises even deeper concerns about the nature of the government's agreement with HSBC.  If the government entered into any agreements with HSBC, or exerted pressure on HSBC in any way, to provide information about Huawei in exchange for favorable treatment, Huawei is entitled to know it; to the extent there are documents reflecting such agreements or pressure, Huawei is entitled to the documents themselves and not the government's self-serving characterization of them.

Please let us know promptly what additional categories of *Brady* material the government intends to provide and dates certain by which the government will provide it. We are available to meet and confer with you immediately.

---

[13] ████████████████████████████.

**SIDLEY**                                    JENNER & BLOCK LLP

Page 10

Respectfully submitted,

/s/ Thomas C. Green                    /s/ David Bitkower
Thomas C. Green                        David Bitkower
Mark D. Hopson                         Matthew S. Hellman
Michael A. Levy                        JENNER & BLOCK LLP
Joan M. Loughnane                      1099 New York Avenue, NW
Douglas A. Axel                        Washington, D.C. 20001
Brian J. Stretch                       Tel: 202-639-6048
SIDLEY AUSTIN LLP                      Email: dbitkower@jenner.com
787 Seventh Avenue
New York, NY 10019
Tel: 212-839-7341
Email: tcgreen@sidley.com

*Counsel for Huawei Technologies Co., Ltd., Huawei Device USA Inc.,*
*Huawei Device Co., Ltd., and Futurewei Technologies, Inc.*

CC:      Clerk of Court (AMD) (by ECF)