SEALED BY ORDER OF THE COURT                    1

1

2    UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
3    -----------------------------x
                                        18-CR-457(AMD)
4    UNITED STATES OF AMERICA,

5            Plaintiff,              United States Courthouse
                                    Brooklyn, New York
6            -against-              September 9, 2021
                                    3:45 p.m.
7    HUAWEI TECHNOLOGIES CO.,
     LTD,

8

9            Defendant.

     -----------------------------x
10

        TRANSCRIPT OF CRIMINAL CAUSE FOR MOTION TO SEAL COURTROOM
11        ALL PRESENT VIA TELECONFERENCE AND/OR VIDEOCONFERENCE
                BEFORE THE HONORABLE CHERYL L. POLLAK
12               UNITED STATES CHIEF MAGISTRATE JUDGE

13   APPEARANCES

14   For the Government:        UNITED STATES ATTORNEY'S OFFICE
                                Eastern District of New York
15                              271 Cadman Plaza East
                                Brooklyn, New York 11201
16                              BY:  JULIA NESTOR, ESQ.
                                     MEREDITH ASHLEY ARFA, ESQ.
17                                   ALEXANDER SOLOMON, ESQ.
                                     DAVID KESSLER, ESQ.
18                                   SARAH EVANS, ESQ.
                                     CHRISTIAN NAUVEL, ESQ.
19                                   DAVID LIM, ESQ.
                                     LAURA BILLINGS, ESQ.
20                              Assistant United States Attorneys

21   For the Defendant:        JENNER & BLOCK LLP
                                1099 New York Avenue NW
22                              Washington, DC 20001
                                BY:  DAVID BITKOWER, ESQ.
23                                   MATTHEW HELLMAN, ESQ.

24   Proceedings recorded by mechanical stenography.  Transcript
     produced by computer-aided transcription.
25

*AVERY N. ARMSTRONG, RPR*
*OFFICIAL COURT REPORTER*

SEALED BY ORDER OF THE COURT                                    2

1   APPEARANCES CONTINUED:

2   For the Defendant:          SIDLEY AUSTIN, LLP
                                787 Seventh Avenue
3                               New York, New York 10019
                                BY:  THOMAS C. GREEN, ESQ.
4                                    DOUGLAS A. AXEL, ESQ.
                                     MICHAEL A. LEVY, ESQ.
5

6

7

8

9   Court Reporter:            AVERY N. ARMSTRONG, RPR, OCR
                                Phone:  718-613-2419
10                              Email:  Aarm.edny@gmail.com

11

    Proceedings recorded by mechanical stenography.  Transcript
12  produced by computer-aided transcription.

13

14

15

16

17

18

19

20

21

22

23

24

25

*AVERY N. ARMSTRONG, RPR*
*OFFICIAL COURT REPORTER*

1     COURTROOM DEPUTY:  This is the matter of United

2  States versus Huawei Technologies Co. Ltd.  18 CR 457,

3  criminal cause for motion to seal the courtroom.  It is

4  September 19, 2021, at 3:47 p.m.

5     Counsel, please state your appearances for the

6  record.

7     MS. NESTOR:  Good afternoon.  We have Julia Nestor,

8  Alex Solomon, David Kessler, Sarah Evans, and Meredith Arfa,

9  for the Eastern District of New York for the Government.  You

10  also have Laura Billings, from the money laundering and asset

11  protection for DOJ.  And I believe David Lim from the National

12  Security Division of DOJ is on, as well.

13     I don't think I missed anybody.

14     THE COURT:  Good afternoon, all of you.

15     MR. GREEN:  Good afternoon.  Afternoon, Your Honor.

16  Can you hear me?  This is Tom Green from Sidley Austin.  And

17  my colleagues from Sidley are Mike Levy, who is here with us,

18  and Doug Axel.

19     I don't think there are other Sidley lawyers on the

20  call, but I maybe wrong.  If they are, would they identify

21  themselves, please.

22     I'm going to turn it over to Mr. Bitkower.

23     MR. BITKOWER:  Good afternoon, Your Honor.  David

24  Bitkower and Matthew Hellman from Jenner & Block, also for the

25  defense.

1    THE COURT:  All right.  Good afternoon, everyone.

2  We have some other people appearing by telephone.

3    Do any of you wish to be heard today?  If so, would

4  you please state your appearances, for the record.

5    MR. NAUVEL:  Your Honor, this is Christian Nauvel

6  from the money laundering section.

7    Apologies for the technical difficulties.

8    THE COURT:  No, that's fine.  All right.

9    Anyone else on the phone who wishes to be heard

10  during these proceedings?  Okay.

11    Well, Ms. Nestor, I guess I'll turn the proceedings

12  over to you to put on the record what we're here for this

13  afternoon.

14    MS. NESTOR:  Sure, Your Honor.  In terms of the

15  sealing procedure, I think Ms. Arfa is going to handle that

16  from the Government, and I'll handle the argument.

17    THE COURT:  Okay.  So Ms. Arfa.

18    MS. ARFA:  Good afternoon, Your Honor.  The

19  Government moves to close the courtroom for today's

20  proceedings in order for the Court, the Government, and the

21  defendant to address the defendant's motion to compel.

22    As further set forth in the Government's sealed

23  motion, the purpose of today's proceedings is to discuss a set

24  of sensitive documents that has been designated as sensitive

25  discovery materials, or SKM, under the Court's order,

1    protective order which prohibits public disclosure of those

2    documents and their contents.  Discussion of those documents,

3    therefore, cannot occur in open court.

4            The defendants have raised certain concerns about

5    the Government's closure motion, but for purposes of today's

6    proceedings, the defendants are not contesting that the

7    documents to be discussed constitute SKM, nor are they

8    objecting to closing the courtroom for purposes of today's

9    proceeding.  I'll note also that the government provided

10   public notice of its motion for courtroom closure yesterday.

11           Your Honor, the framework for courtroom closure is

12   well established under Second Circuit precedence.  First, the

13   Court must identify, through specific finding, whether there

14   is a substantial probabilty of prejudice to compelling

15   interest of the defendant, the Government, or a third party.

16           Second, where the Court finds there is a substantial

17   probability of prejudice, the Court must consider whether

18   reasonable alternatives to closure can protect the compelling

19   interest.

20           Third, the Court must decide whether the prejudice

21   to the compelling interest overrides the qualified First

22   Amendment Right of access.

23           Finally, if the Court determines that closure is

24   warranted, the Court must advise a closure order that is

25   narrowly tailored to protect the compelling interests.

SEALED BY ORDER OF THE COURT                    6

1          Here, Your Honor, the Government respectfully

2    requests that the Court make the following finding:  First, it

3    is a substantial probability that public discussion of the

4    motion to compel would prejudice compelling interest of the

5    Government.

6          Second, no reasonable alternative to closure of the

7    courtroom exists that would adequately protect the compelling

8    interest of the Government, while allowing for public

9    discussion on its motion.  The parties today must be able to

10   speak freely and fulsomely.

11         Third, assuming a public right of access to today's

12   proceeding, the prejudice the Government's compelling interest

13   outweighs the qualified First Amendment Right of the public

14   and the media to access the proceedings.

15         Finally, disclosure should be narrowly tailored by

16   allowing the transcript of today's proceeding to be unsealed

17   once the likely prejudice to the Government's interest no

18   longer outweighs the qualified right to access.

19         The defendants have asked that the parties review

20   the transcript and propose redactions.  The Government is

21   prepared to proceed in that manner, specifically reviewing the

22   transcripts and working with defense counsel to propose

23   redactions.  We're hopeful the parties will be able to reach

24   agreements on the proposed redactions, but we anticipate there

25   may be some disputes.

1          Accordingly, we request 10 days, rather than the

2     five requested by defendant, from the date in which the

3     transcript is released for the parties to submit proposed

4     reductions to the Court without any disagreement among the

5     parties noted.

6          Your Honor, the Government respectfully submits that

7     the Court should make these or similar findings on the record

8     and also enter the proposed order submitted by the Government

9     or a similar order, and close the courtroom for today's

10    proceeding.  Thank you.

11         THE COURT:  All right.  Thank you.

12         Mr. Green, Mr. Bitkower, who wishes to address this

13    on behalf of the defendant?

14         MR. GREEN:  Mr. Bitkower will, Your Honor.

15         THE COURT:  Thank you.

16         MR. BITKOWER:  Thank you, Your Honor.

17         As we indicated in our response to the Government's

18    motion to close the courtroom from yesterday, we think the

19    Government's original motion substantially overstated the

20    basis for closure here.  But Ms. Arfa is correct that we do

21    not object, under the circumstances present here, to closure

22    in this instance.  We believe the Court can find here that

23    there is a substantial likelihood of a full discussion of the

24    issues may require discussion of some legitimately sensitive

25    information, and so we're not objecting to closure on that

1    basis.  We don't think the Court should enter the Government's

2    proposed order from yesterday, but the findings as Ms. Arfa

3    stated today, we think would be appropriate and we don't

4    object to them.  And the difference between five days to view

5    the transcript and 10 days to view the transcript, we don't

6    object to that either.  We simply didn't want there to be an

7    indefinite unilateral blank check for the Government to decide

8    when the transcript should be addressed and unsealed.

9              So on those terms, we're prepared to not object.

10             THE COURT:  All right.  Is there anyone else present

11   who wishes to be heard on issue of closure at this time?

12             Okay.  I hear no responses, so I'm going to issue

13   the following order:  Upon consideration of the motion of the

14   United States, filed under seal for an order to close the

15   courtroom during this status conference and having scheduled

16   this public hearing on the motion and provided notice to the

17   public of the hearing and having held this hearing, of course,

18   with no interveners appearing, even though they would have

19   been provided an opportunity to be heard, I have considered

20   the arguments of both sides and the submissions of the

21   parties, and I make the following findings:  One, there is a

22   substantial probability that a public proceeding would result

23   in the public disclosure of certain discovery material which

24   has been provided to the defendant only pursuant to a

25   protective order, and this would cause prejudice and create --

SEALED BY ORDER OF THE COURT                                9

1    excuse me, cause prejudice to the Government's compelling

2    interests in avoiding possible efforts to obstruct its

3    prosecution as set forth in their motion.

4           Two, the Court finds there are no reasonable

5    alternatives to closure of the courtroom that can adequately

6    protect the compelling interests that would be prejudiced by a

7    public proceeding.

8           Three, the probable prejudice to these compelling

9    interests overrides the public's and the media's qualified

10   First Amendment Right to access the proceeding, particularly

11   in light of the further limitations that I am imposing on the

12   closure as set forth below.

13          So accordingly, pursuant to the decision of the

14   Second Circuit *United States versus O'Hara*, and in *United*

15   *States versus Doe*, it is ordered that the motion to close the

16   courtroom during the hearing in this matter is granted.

17          It is further ordered that the Government's motion

18   to seal the transcript of these proceedings is granted.

19          It is further ordered that the closure of the

20   courtroom be tailored by requiring the parties to review the

21   transcript of the proceedings, and within 10 days of receipt

22   of the transcript, propose redactions limited to those

23   necessary to protect sensitive nonpublic information from

24   disclosure or show cause why redactions would not suffice to

25   protect the compelling interests identified above.

SEALED BY ORDER OF THE COURT                    10

1            It is further ordered that the Court provisionally

2    grant the Government's request to file its letter motion to

3    close the courtroom under seal, including any additional

4    documents in connection with the motion and the government's

5    proposed order.

6            The Government is further ordered, however, to

7    provide an explanation as to why the initial letter seeking

8    closure should be filed under seal.  Such explanation shall be

9    filed with the Court within five days of this order.

10           And it is further ordered that the docket in this

11   case be amended to reflect the occurrence of the hearing on

12   the motion to close the courtroom, the disposition of the

13   motion, and the fact of closure, courtroom closure.  So

14   ordered.  Okay.

15           So at this point, I would ask that anyone who is

16   appearing by phone -- and unless they are somehow connected to

17   this proceeding, we're going to end the AT&T call and

18   effectively close the courtroom that way.  Only those who have

19   been provided with access to this Webex proceeding will be

20   allowed to continue.  If there's anyone here who was unable to

21   access the Webex video, I believe there was a phone number

22   provided that you could call in separately and not on the AT&T

23   line.  So I'm going to give everyone a minute or two to hang

24   up and redial in, if, in fact, that's what they wish to do.

25           And Scott, I assume you're still on the line.  Would

1    you please ensure that the AT&T line is discontinued.

2              COURTROOM DEPUTY:  I'm here, Judge.  I'll do that

3    now.

4              (Pause in Proceedings.)

5              THE COURT:  That seems to cover everyone.  So I

6    guess we will now move to the actual motion before us.

7              It is defendant's motion to compel, so I will hand

8    the argument over to whoever intends to take the lead on this.

9              Mr. Green, Mr. Bitkower, who's going?

10             MR. GREEN:  It's Mr. Axel, Your Honor.

11             THE COURT:  Okay.  Go ahead.

12             MR. AXEL:  Thank you, Your Honor.  This is Douglas

13   Axel, also from Sidley Austin, representing the defendants.

14   Thank you for the opportunity to address the Court today and

15   for the Court's participation in this.

16             We have been -- as indicated in the papers, we've

17   been after these materials for greater than two years now.  We

18   do believe that they are well within what is appropriately

19   considered to be *Brady* material.  They undermine the

20   Government's showing on both the elements of intent to defraud

21   and materiality with respect to the fraud charges that allege

22   ███████ as a victim.

23             In December of 2020, as I'm sure the Court is aware

24   from the papers, was the first time really there was any

25   production of this material and that was in the form of the

SEALED BY ORDER OF THE COURT                    12

1  summaries.  And you know, at the time, first of all, the

2  Government did delay for some 21 months or so, and then at the

3  time they continued to assert that it's not *Brady* and that

4  they're producing it in abundance of caution.  And while we do

5  appreciate the summaries that were produced and the effort

6  that went into it, the -- we do -- the process has engendered

7  concerns that are, you know, even broader than the materials

8  that are currently here today as to how the Government is

9  approaching its *Brady* obligations.  We happened to have known

10  about these materials through some disclosures made in the

11  public record.  We were able to chase and follow up, et

12  cetera, several times.  So you know, more broadly, we have

13  broader concerns about things that we don't know about.

14          But be that as it may, I know we're here to focus on

15  the particular materials that we've brought before the Court

16  and prepared to address each of those, in-turn.  With respect

17  to the other *Brady*, we'll continue to meet and confer with the

18  Government, and we hope to resolve other issues.  But we may

19  be back here again.

20          As to the three categories, first, the monitor

21  reports.  Those, we believe, are subject to discovery, both

22  under Rule 16 and under *Brady*.  I think it's not a closed

23  question under Rule 16.  These are clearly materials of the

24  defense that the Government doesn't really contest that.  They

25  say, well --

SEALED BY ORDER OF THE COURT                    13

1        (Court reporter clarification.)

2        MR. AXEL:  It's our position that these are

3   evidentiary, and it's a report that is admissible against the

4   Government.  The Government says, well, we may have objections

5   to that.  It expresses opinions of the monitor not

6   sufficiently factual, and there may be 403 objections, and we

7   should get to litigate those evidentiary objections without

8   the defendant's having the reports to be able to offer the

9   defendant's views about admissibility, and then only what the

10   Court rules in that ex parte process to be admissible, should

11   the defense then get the materials.  I'm not aware of any

12   Court that has endorsed that process.

13        Obviously, we need them in order to be able to

14   prepare our defense, to consider whether to seek the admission

15   of them to be able to participate meaningfully in any hearing

16   regarding the admissibility.  Rule 16(a)(1)(E) is clear, if

17   it's material to the defense, the Government must permit the

18   defendant to inspect and copy the documents.  It does not

19   authorizes summaries.  Also, in Rule 16, there are

20   authorizations for, you know, process by which the Government

21   can provide summaries, but not (a)(1)(E).  And we cited one

22   District Court decision, you know, holding that.  So I think

23   that's pretty clear.

24        And then even under *Brady*, I think summaries are

25   insufficient.  A lot of the *Brady* decisions, I think, have to

SEALED BY ORDER OF THE COURT                    14

1   do with what must be provided with respect to information

2   that's known to the Government.  But here, we have documents

3   that are, again, evidentiary, and in that circumstance, we

4   don't think *Brady* authorizes, you know, a summary of the

5   documents.  *Brady* requires the production of the evidence.

6   And so we think that under *Brady*, just as a sort of

7   categorical matter, when you're talking about documentary

8   materials such as this, the materials themselves must be

9   produced, and then even as theoretically or as a matter of

10   law, it's possible that, you know, summaries could be

11   sufficient.

12          We also submit that here, ██████████ are

13   incomplete.  This is, as the Court I'm sure is aware, is a

14   complex case.  It's a corporate defendant -- defendants.  The

15   alleged victim is also a large multinational corporation, and

16   the knowledge and intent of these corporate entities, over

17   different lengthy periods of time, is of critical importance

18   in connection with these fraud charges.  There's hundreds of

19   witnesses, many of whom are overseas.  And given that

20   background with the complexity, you know, ████████that

21   appears to us to not provide ████████████████████████

22   ████████████████████████████████████████████████████

23   ████████████████████████████████████████████████████

24   ████████████████████████████████████████████████████

25   ████████████████████████████████          The

SEALED BY ORDER OF THE COURT                    15

1   Government would know that information.  And that's critical

2   for us to be able to prepare our defense, as well.

3           You know, the Government, I think in response to

4   what is known around ████████knowledge, has asserted that its

5   low-level employees for██████ and therefore, sort of discounts

6   what would be a defense showing undermining both intention to

7   fraud and materiality.  And, you know, obviously, that's an

8   assertion that we need to explore to challenge.  And so all of

9   the details around ███████knowledge, actions, intentions,

10  statements, with respect to, you know, Huawei and Skycom are

11  critical,████████████ appear to us to not include what we

12  believe, you know, should have been ████████████  You know,

13  and obviously not having access, you know, we don't know for

14  sure what's there.

15          Then finally, just on this point -- and I'll pause,

16  Your Honor, and would welcome questions on the monitor report,

17  and then I know we have two other categories.  █████████████

18  ███████████████████████████████████████████████████████

19  ██████████████████████████████████████████████████████

20  ████████████████████████████████████████████████

21  ████████████  we submit that the ex parte process that the

22  Government has proffered is not the right way to go here.

23  We -- it does not seem plausible to the defense that the

24  ███████████████████████████████████████████████████████

25  █████████████████████████████████████████████████████

SEALED BY ORDER OF THE COURT

1 ████████████████████████████████████████████████

2 ████████████████████████████████████████

3 ████████████████████████████████████████████

4 ████████████████████

5      We submit that there is no reason to believe that

6 ████████████████████████████████████████

7 ████████████████████████████████████████████████

8 ██████████    ████████████████████████████

9 ██████████    If there's some specific questions there, we'd be

10 happy to address them.  But we're confident that defense

11 counsel can work to, you know, avoid any concerns or problems,

12 have access to the monitor reports ████████ and then be

13 able to assess whether in Court, you know, what is exculpatory

14 material to the defense, and then be able to address these

15 issues further if that was the way the Court wanted to go.

16      So that's an overview of, you know, our positions on

17 the monitor report.  Happy to take questions on that or to go

18 to the other two categories of the Court's preference.

19      THE COURT:  Well, I think what I would prefer to do,

20 frankly, at this point, is to hear from the Government on your

21 arguments related to the monitor reports before we address the

22 other issues that you raised in your motion.  I think, you

23 know, I have reviewed ████████    I do think your concerns

24 are somewhat mistaken.  But let me hear from the Government on

25 the issue.

1          First of all, I'd like you to address the argument

2    that was just made with respect to Rule 16, the argument that

3    this is actually evidence, these are documents, so summaries

4    are not sufficient.  I don't think that was addressed in your

5    papers, but maybe I missed it.  So if you wouldn't mind

6    starting with that, and then we can also address the *Brady*

7    question which I feel I have a better handle on.

8          But who would like to address this from the

9    Government's perspective?

10          MS. NESTOR:  Sure, Your Honor.  Julia Nestor, for

11    the record.  I'll address that.  Thank you.

12          In terms of the Rule 16 argument, the defendants

13    have the information that is the Rule 16 information, Your

14    Honor.  And I think that would be evident from the ▮▮▮▮▮▮▮

15    the Government has made in camera to the Court.  The

16    defendant's points to no persuasive authority that the

17    Government has an obligation to provide more than the Rule 16

18    information.  For instance, Your Honor, if there was some

19    other document out there where there was both Rule 16 and

20    irrelevant information, I don't think there's any case law

21    that's been decided, except for one, I think, case in May

22    where the Government could not provide the information to

23    allow the defendants to prepare the defense.

24          Now, I understand the Rule 803 issue.  The

25    Government's position is that for purposes of today, Rule 803

SEALED BY ORDER OF THE COURT                    18

1   does not provide the defendants with greater access to Rule

2   16.  In other words, at some point, there may need to be

3   litigation, and the Government has never taken a position

4   that, at that point, they would not be entitled to the reports

5   ████████████    The Government has put on the record -- in the

6   records, their concern about ████████████████████████████

7   ████████████████████████████    And the Government has

8   articulated those concerns.  So from our perspective, you

9   know, down the road, if there is a Rule 803 issue that the

10  Court has to litigate at that point in time, there may be

11  legitimate reasons for defendants to have the reports, and we

12  can cross that bridge when we get there.

13            (Court reporter clarification.)

14            MS. NESTOR:  If there is a Rule 803 issue, at some

15  point in advance of trial, in the Government's view, that is

16  for the District Court to address.

17            And Your Honor, I think you might have already

18  addressed this, but obviously, any complaints about

19  inconsistency ████████████████████████████████

20  ████████████████████    That is not a Rule 16 issue, and as the

21  Court already alluded, that is not a *Brady* issue either

22  because the Government has provided the necessary information

23  under *Brady*.  And I'm happy to address that next, unless the

24  Court has questions.

25            THE COURT:  So I just want to make sure I understand

*AVERY N. ARMSTRONG, RPR*
*OFFICIAL COURT REPORTER*

SEALED BY ORDER OF THE COURT                    19

1    you.  Your position is that contrary to what I think the

2    defendant was arguing is that your obligation under Rule 16 is

3    to provide the information, as opposed to the actual document,

4    that by providing the information, that satisfies your

5    obligation under Rule 16?

6              MS. NESTOR:  That is the Government's position, Your

7    Honor.  And that they have the relevant information.

8              THE COURT:  Right.  I understand that your position

9    is they have the relevant information.  But I think the issue

10   that counsel brought up in his argument was that that's not

11   enough, that the document itself is the actual evidence, and

12   that is what they're entitled to receive.

13             Okay.  So why don't you address the *Brady* issue as

14   well on the monitor reports.

15             MS. NESTOR:  Yes, Your Honor.  So the Government's

16   obligations under *Brady*, I think, have been adequately met.  I

17   actually do not think it is the case law that under *Brady*, the

18   ███████████ have to be disclosed.  ███████████████

19   ███████████  It is the standard practice of the office

20   and under Second Circuit case law to produce summaries for

21   *Brady* purposes.  It is not a theoretical issue, as counsel

22   identified.  It's a reality that there's case law that

23   indicates that summaries are perfectly fine.  ███████████

24   ████████████████████████████████

25   ███████  So I think *Brady*, in terms of the ███████████

AVERY N. ARMSTRONG, RPR
OFFICIAL COURT REPORTER

1    has been more than satisfied and the essential facts are

2    available to the defendant.

3           THE COURT:  So Ms. Nestor, in your letter to me

4    which I believe was ex parte -- I don't know for sure -- you

5    listed several redactions, changes, that the Government made

6    ████████████████████████████████████████████████████████

7    ████████████████████████

8           Can you or are you willing to share with the defense

9    what it is exactly that you did? ██████████████████████████

10   ██████████████████████████████████████████████████

11   ██████████████████████████████████████████████████

12   ████████████████████████████████████████████████████

13   ████████████████████████████████

14          ██████████████████████████████████████████

15   ██████████████  ████████████████████████████████████████

16   █████████████████████████████████████████████████████████

17   ██████████████████████████████████

18          MS. NESTOR:  Your Honor, the Government has no

19   objection in doing that.  I can't say for sure sitting here

20   right now -- I thought we already did that, but we'll do that

21   again.  We have no objection to doing that.

22          THE COURT:  Okay.  I mean, I don't know if the

23   defendants are aware of what they claim they've done, but I do

24   think it's important that you understand that, so I'm going to

25   ask Ms. Nestor just to put those on record.

SEALED BY ORDER OF THE COURT

21

1    MS. NESTOR:  Sure.  I can do it in broad categories,

2    Your Honor.

3          THE COURT:  That's fine.

4          MS. NESTOR: 

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25          THE COURT:



1 ██████████████████████████████████████

2 ██████████████████████████████████

3 █████████████████████████   ███████████████

4 ██████████████████████████████   ████████

5 ████████████████████████████████████████

6 ████████████████   ███████████████

7 ██████████████████████████████████████

8 ████████████████████████████████████

9 ████████████████   Correct?

10        MS. NESTOR:  That's correct.

11        THE COURT:  ██████   ████████████████████

12 █████████████████   ██████████████████████

13 █████████████████

14        And I guess my question is why did you do that?

15        MS. NESTOR:  Your Honor, we didn't -- sure.

16        Your Honor, so I think a few things.  ████████

17 ████████████████████████████████████████

18 ██████████████████████████████   █

19 ██████████████████████████████

20 ████████████████████████████████████████

21 ████████████████   ██████████████████

22 ██████████████████████████████████████

23 ████████████████   ██████████████████████

24 ████████████████████████████████████

25 ██████████████████

1    THE COURT:  Okay.  And now finally, the one query

2   that does concern me is the ▮▮▮▮▮▮  So I'd like to address

3   that for a minute.

4   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6   ▮▮▮▮▮▮▮  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

10  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

11  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

12  ▮▮▮▮▮▮▮  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

13  ▮▮▮▮▮▮▮▮▮▮▮▮  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

14  ▮▮▮▮▮▮▮▮▮▮▮  But aren't you under an

15  obligation to the defendant to provide, at least, the

16  information that they could then follow up on to determine

17  whether or not there are ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18  that could be considered exculpatory?

19       MS. NESTOR:  So Your Honor, I think in the first

20  instance, obviously, the defendants can subpoena ▮▮▮▮▮

21  ▮▮▮▮▮▮▮▮▮  But we take the Court's point, and to

22  the extent, you know, Your Honor is asking, we are happy to

23  re-review the ▮▮▮▮▮ and consider which ▮▮▮▮▮ we can

24  provide to the defendants, especially ones that reference

25        To the extent the defendants want to try to go

1   speak to those ███████████ we could consider that and obviously

2   take the Court's cue on that.

3           THE COURT:  Okay.  I mean, just to be clear, the

4   ████████████████████████████████████████████  ██████████

5   ████████████████████████████████████████████████████████

6   ████████████████████████████████  ████████████████████████

7   ██████████   ███████████████████████████████████

8   ████████████████████

9           MS. NESTOR:  Your Honor, I think that's also the

10  problem.  We didn't want to guess.  You know, we just didn't

11  know.  ████████████████████  And ultimately, Your Honor, it

12  would be somewhat guessing on our part.  But we're happy to go

13  through the ████████████████████████████  If the

14  ██████████ are the concern, the Government can address that.

15          THE COURT:  All right.  Let me turn it back to

16  Mr. Axel.  And now that you've gotten, perhaps, a better

17  understanding of ████████████████████████████████

18  ██████████ perhaps you want to address some of these points.

19  As I said, the one that concerned me the most was the

20  ██████████ but I leave it to you to say whatever else you

21  would like to add to that.

22          MR. AXEL:  Thank you very much, Your Honor.

23  Appreciate it.

24          Just as to Rule 16, I mean, the legal authority,

25  plain language of Rule 16 requires the Government to permit

AVERY N. ARMSTRONG, RPR
OFFICIAL COURT REPORTER

SEALED BY ORDER OF THE COURT                            25

1    the defendants to inspect and copy documents that are material

2    in preparing their defense.   I think without question, the

3    Government doesn't contest these are material to preparing the

4    defense.

5                (Court Reporter clarification.)

6                MR. AXEL:   The plain language of Rule 16 requires

7    the production of documents that are material to preparing the

8    defense.   The Government, I don't hear them disputing that

9    these are material to preparing the defense, and so the

10   documents must be provided.   There's nothing in Rule 16 to

11   authorize ███████████    The only case cited by the Government on

12   this question in their brief, is the Stein case.   And in that

13   case, that was the KPMG Stein case, Judge Kaplan did order the

14   production of relevant portions of KPMG's white paper that had

15   been submitted to the Department of Justice.   So I'm not aware

16   of any authority that would authorizes, you know, ████████████

17   ████████████████████████████

18                And then, you know, similarly in *Brady,* the

19   Government cited Leroy or Laroy, and that also had to do with

20   information, not documentary evidence, such as this.   And so I

21   know it's the practice and recognized for some kind

22   information, but again, not with underlying documentary

23   evidence.   ██████████████████████████████████████

24   ██████████████████████████████████   The

25   ████████████████████ are evidentiary, as we'd indicated, and

*AVERY N. ARMSTRONG, RPR*
*OFFICIAL COURT REPORTER*

1    you know, so I just wanted to touch on that, as well, as a

2    legal matter.

3            I don't know if the Court has any other questions on

4    that legal issue.

5            THE COURT:  No.  That's fine.  I'm good.

6            MR. AXEL:  And then as to, you know, what may be

7    differences, we do appreciate, obviously, you know, visibility

8    into what the differences may be.  We haven't had that kind of

9    visibility.  We do think that the ███████ are critical and

10   they may not have, you know, all the answers in terms of

11   ████████████████████████████████████████████████

12   ██████████  but they have information that is certainly

13   material and necessary to help, you know, prepare our defense.

14   And not only do we need to know what the content of the

15   ████████  which is the sort of collection of documents, but we

16   need to know how they tie out, you know.  And this gets in a

17   little bit to the next category.  ███████████████████

18   ████████████████████████████     ██████████████

19   ████████████████████████████████████████████████

20   ████████████████████████████████████████████████

21   ██████████████████

22           You know, I would submit that the Court had

23   indicated that there is also ██████████  I would submit, having

24   not seen them, certainly ██████████ would be material and

25   something we would want to see and believe we should be able

1   to see.  Beyond those two categories, ███████████████████

2   ████████████████████████████████████████████  ██

3   ████████████████████████████████████████████  ██

4   ████████████████████████████████████████████████

5   ███████████████  ██████████████  ████████  ██████████

6   ████████████████████  ██████████████████████████

7   ████████████████████████████████████████

8              ███████████████████████████████████████

9   ███████████████████████████████████████████████

10  ███████████████████████████████████████████████

11  ███████████████████████████████████████████████

12  ████████████████████████████  ████████████████

13  ███████████████████████████████████████████

14  ███████████████████████████████████████████

15  ██████████████████████████████████████████████████

16  ████        So you know, inculpatory information or information

17  that the Government would characterize as derogatory or

18  inculpatory of Huawei is exculpatory on the subject of whether

19  ██████was defrauded.  And that's just one example where it's

20  very hard for, you know, the Government, I know, to put on the

21  defense hat and assess things.  And obviously, defense counsel

22  is in the best position.

23              ███████████████████████████████████████████

24  ██████████████        Rule 16 requires it, number one, and

25  number two, regardless, what could be the interest if there

1  are really no differences.  So with that Your Honor --

2           THE COURT:  So let me direct that question to

3  Ms. Nestor.

4           If, in fact, as we've been discussing, ▮▮▮▮▮▮▮

5  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8           Can you explain to me the concern?

9           MS. NESTOR:  Yes.  Sure, your Honor.

10           So Your Honor, obviously we cannot go into the ex

11  parte submission that we provided to the Court.  But we have

12  laid out the concerns that the Government has with the

13  provision of the reports to the defense and even defense

14  counsel.  I think we've laid that out very clearly in our

15  submissions.

16           So the other thing I would just point out, the

17  question really isn't whether viewing ▮▮▮▮▮▮▮▮▮▮▮▮▮

18  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  The question is whether it affords

19  anything beyond the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ right.  In our

20  view, there's been a ▮▮▮▮▮▮▮▮▮▮▮▮  I mean, it's very

21  evident from Mr. Axel's recitation that the Government has

22  satisfied *Brady*.  The Government has produced ▮▮▮▮▮▮▮

23  ▮▮▮▮▮▮  We believe we've satisfied Rule 16.  ▮▮

24  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

25  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

SEALED BY ORDER OF THE COURT 29

1   ██████████████████████████████████████   I think the point here

2   is the Government has serious concerns.  We feel like we've

3   addressed Rule 16 and *Brady*.  We're willing and able to,

4   obviously, provide the ████████████   I -- you know, in my view,

5   without having reviewed ████████████again moments before we

6   got on here, I just -- I don't think it's going to provide

7   much more.  But Your Honor, obviously, we're happy to provide

8   the ████████████   We're happy to identify this for them.  Of

9   course, to the extent we provide the ████████████   they will be

10  keyed to the entries themselves.  Meaning, they'll know which

11  entries they're keyed to.

12          THE COURT:  Okay.  All right.  All right.

13          MR. GREEN:  May I make a comment, Your Honor?

14          It's Mr. Green.

15          May I, with your indulgence?

16          THE COURT:  You're here.  Of course you can make a

17  comment.

18          Go ahead.

19          MR. GREEN:  Well, I don't think she answered your

20  question.  I mean, basically what she said to you was, you

21  know, we filed an ex parte document in which, presumably,

22  there are some reasons why they can't just give us the report.

23  And you know, that's a tremendous handicap for us to be

24  tilting at an ex parte document.  You know, I can't imagine

25  what the risk is in -- unless, you know, she thinks we're bad

SEALED BY ORDER OF THE COURT                        30

1   people, or you know, that we've somehow can't be trusted, what

2   conceivably could be the reason that the Government would

3   resist disclosure to counsel.  And beyond that, I mean, I just

4   have to believe that some of what they told you with respect

5   to the risk or the concern that they have is just fanciful.

6   And you know, we keep knocking at this strawman, because they

7   use it a lot in this case.  We can't tell them, this we can't

8   tell them that.  We can't do this, because this may happen.

9   They may obstruct our case.  I mean, it's all just, you know,

10  in the ether there somewhere.  I don't think they've come up

11  with one-- I mean, I'm betting, because I haven't seen it.

12  But I suspect they haven't come up with one concrete risk, you

13  know, that they can identify based on, you know, a set of

14  observable or identifiable circumstances that would cause the

15  government, you know, to be concerned here.

16          And somehow, we've got to get through it.  If not

17  just for this motion here, I mean, you know, for this case in

18  general in discovery.  So I mean, I think your question to

19  Ms. Nestor was right on point, and it's what Mr. Axel has

20  said.  I mean, you know, if they want to claim that what

21  they've given to us is ███████████████████████████████

22  ███████████████████ you know, and then say, well, because we've

23  done that, there's really no cause for them to be concerned

24  that there might be ████████████████████████████████████████

25  ████████████████████████████████████████████ but that

1    doesn't pass the laugh test.  I think we're entitled to see

2    the report.

3            And I'm going to be quiet here in one second.  I'm

4    just concerned that even the revelation of this material to

5    the defense team is deemed by the Government to be so risky

6    that it just simply can't be done.  And I -- you know, I wish

7    I could see their ex parte filing.  Thank you, Your Honor.

8            THE COURT:  All right.  Well, let me go back for a

9    moment and ask this question, is there any way that we could

10   fashion a protective order that would allow the attorneys or a

11   subgroup, a subset of attorneys to see, you know, ████

12   ████████████████████████████████  that would satisfy the

13   Government and the Government's concerns as expressed in your

14   submission so that we could protect it?

15           In other words, assuming for a moment that one

16   concern is that the reports could be leaked, if the reports

17   were provided to a limited subset of defense attorneys, we

18   could, I think, fairly easily identify the supposed leakers.

19   Not that I would anticipate that any of you who are present

20   here today would do that.  But I guess, Ms. Nestor, I would

21   ask that the Government think about that.  Maybe you haven't,

22   maybe you have.

23           But you know, I hear what Mr. Green has to say, and

24   he makes a good point that without seeing your letter, he

25   doesn't understand what the problem is.  By the same token,

1   all of these attorneys are officers of the Court, and should

2   they violate a protective order issued by the Court, they

3   would not only face sanctions, but possibly disciplinary

4   action and removal from the bar of the Eastern District and

5   maybe even worse.

6           So I would ask you to think about that as a possible

7   resolution and maybe you could confer with defendant's counsel

8   on that proposal, okay.

9           MS. NESTOR:  Yes, Your Honor.  We understand.  We

10  will do so.

11          I'm not prepared to answer that question right now,

12  but we will, of course, do so and we understand.

13          THE COURT:  Okay.  All right.  Thank you.

14          Okay.  So I guess, let me get back to Mr. Axel.  We

15  had two other categories in your motion.

16          Would you like to address them at this point?

17          MR. AXEL:  Yes, Your Honor.  And I guess before I

18  do, if I may just give one nudge.  I mean, I hope to be able

19  to see the reports, you know, under the protective order that

20  we negotiate, but in the event the Court is not inclined to

21  otherwise rule that it be produced under Rule 16, the

22  ██████████  if I may give one nudge on the ██████████  if we could

23  get those as well.

24          THE COURT:  Okay.  Yes, I understood you wanted

25  those.  I'm not sure about those.

SEALED BY ORDER OF THE COURT                    33

1           But let's proceed.

2           MR. AXEL:  Very well, Your Honor.  As to the second

3    category that's, you know, the files, the monitor files, the

4    monitor documents underlying the reports.  Two basic issues

5    here.  One is to get confirmation from the Government that

6    they've provided us all the monitor files and records in its

7    possession.  They indicate yes, but then they qualify it.  So

8    we would like confirmation on that.  And then second, and this

9    is related to the ███████ point, but perhaps different in

10   sort of all the more necessary, I think, in light of

11   potentially the █████████████████ So you know, it's

12   important for us to be able to also know which of the many

13   many materials relating to ████ the Government has produced,

14   relate to the monitor, and provided by the monitor, relate to

15   the monitor's reports.  To the extent the Government --

16           THE COURT:  Okay.  I'm not -- maybe the Government

17   understands what your argument is, but I'm not quite -- I'm

18   not quite following what it is that you're saying or what it

19   is you want the Government to do with respect to this issue.

20           MR. AXEL:  The Government asserts that anything that

21   it obtained from the monitor, monitor files, has been produced

22   to us.  But we don't know what has been produced to us

23   originating from the monitor.  It's, you know, the citations,

24   the case law, you can't hide a *Brady* needle in a discovery

25   haystack.  And so to the extent there are monitor files that

SEALED BY ORDER OF THE COURT                          34

1    have been produced to us, we would like them identified as

2    such.  They relate to the report.  They certainly relate to

3    what the Government has suggested will be potential litigation

4    over the report's admissibility, you know, whether it's

5    ████████████████████████████████████████████████████████ can

6    you know, provide us leads, along with the other information

7    that we're going to be getting in order to be able to further

8    our defense.

9              So two things.  One, confirmation they've given us

10   anything from the monitor, number one.  Number two,

11   identification of what amongst the discovery they obtained

12   from the monitor.

13             THE COURT:  Okay.  Ms. Nestor, why don't you address

14   the first one.

15             Have you provided the files that the ██████████████

16   ████████████████████████████████████████████

17             MS. NESTOR:  Your Honor, as our briefing indicated

18   in this case, the monitor did not provide the Government with

19   ██████████████████████████████████  I think we said that a number of

20   times, but I just want to make that clear.  What we do have is

21   something the monitors did provide us.  Those things have been

22   turned over.  Of course this is a sprawling case, Your Honor,

23   with extensive discovery, and to extent the Government hedges

24   in any way when they make representations to defense counsel

25   it is for the fear that there might have been a document that

SEALED BY ORDER OF THE COURT                35

1    has been missed.  The Government has been extremely diligent

2    in this case in providing documents.  The discovery is still

3    ongoing.  There's no trial date set, Your Honor.  So I think

4    addressing the first point, the Government has made every

5    attempt to provide to defense counsel, the discovery that's

6    relevant in this case.  It has provided the documents that the

7    monitor has provided.

8            THE COURT:  Okay.  But when you -- so you said the

9    monitor did not give you documents ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

10           Is that what you heard you say?

11           MS. NESTOR:  I think what I'm saying, Your Honor, is

12   that the monitors did not say, ▮▮▮▮▮▮▮▮▮ here's a

13   document.  The monitors did provide some documents to the

14   Government.  The Government is unable to tie those to the

15   ▮▮▮▮▮▮▮▮  We're not sure if that's the document the

16   monitor ▮▮▮▮▮▮▮▮▮▮  Defense counsel has the documents

17   the monitor provided to the Government.

18           THE COURT:  And have you identified them to the

19   defendant as these are the collection of documents that we

20   received from the monitor?

21           MS. NESTOR:  We have not, Your Honor.  We produced

22   them in regular discovery as ▮▮▮documents or as public

23   record documents, because many of them are public records.

24           And Your Honor, I'm not sure what citations Mr. Axel

25   is citing to but, in terms of us having to identify that for

SEALED BY ORDER OF THE COURT                                36

1    the defendants, we don't believe that is *Brady*, in and of

2    itself, and we don't believe that those documents really

3    underlie ███████████████████ as far as the Government knows.

4    But certainly when they get the ██████████ they will see what

5    documents the ██████████████████  They will not be able to

6    identify them, nor can the Government, ███████████████████

7    ████████  So they can certainly -- you know, that gives them

8    the ability under Rule 16 to go seek those documents in any

9    way or shape that they want.

10                THE COURT:  So I think Mr. Axel, perhaps, getting

11   the ██████████ first will provide you with a better basis to

12   try to figure out how to get through this mess.

13                I think that based on my review of what the

14   government provided in-camera, Ms. Nestor is correct that if

15   everything that was redacted was what ███████████████████

16   and the Government doesn't have it, I don't know that that's

17   going to help you at all in your search here, apart from going

18   back to the monitor and saying, you know, in ██████████████ you

19   ██████████████████████ can we get it.

20                But I think what I'd like to do is put this issue

21   aside for the moment and just wait until you get the

22   ███████████████████████████████████████████ in terms of the

23   ██████████████ depending on how we work this out.  Okay.

24                MR. AXEL:  Yes, Your Honor.  And I think it's --

25   sorry I missed that, Your Honor.

SEALED BY ORDER OF THE COURT                               37

1          THE COURT:  I said we'll hold this one in reserve.

2          MR. AXEL:  Okay.  Very well.  And just to be

3    clear -- I think it's clear, but just to make sure -- it

4    sounds like the only missing piece is, you know, what, of the

5    materials originated from the monitor, and you know, that

6    could be helpful as we try to, you know, undue the Rubik's

7    Cube here.  But I understand the Court saying that we should

8    wait and see what we get in the ████████ and then hold this

9    one in reserve.

10          THE COURT:  Okay.  And then the last issue is the

11   Latham PowerPoints.

12          If you would like to address that one, Mr. Axel, or

13   someone else can address that one.

14          MR. AXEL:  Sorry to say it's me again and I will try

15   to speak slowly enough here for the court reporter on this

16   one.

17          You know, just quick background on this, you know,

18   we had much less visibility into the Latham presentations.  We

19   had a little bit from public records.  And then, until the

20   opposition, I don't believe there was confirmation about that

21   we'd even have copies of the presentations.

22          What do we know about these, we on the defense side?

23   Based on the Government's opposition and the public record

24   materials that we've seen, you know, ████ hired Latham &

25   Watkins specifically to conduct a review relating to Skycom

SEALED BY ORDER OF THE COURT                                    38

1   and its relationship to Huawei in response to the monitor's

2   work.

3          Latham conducted, according to press reports, more

4   than 100 interviews, reviewed more than 292,000 e-mails, and

5   analyzed years of financial transactions and press reports.

6   Latham made, at least, four presentations to the department

7   between February and July of 2017.  We understand those to

8   have been oral presentations, aided, perhaps, by PowerPoint

9   decks.  Presumably, the Government has, to my understanding,

10  as its practice, took extensive notes of these meetings.  We

11  understand that these were in the context of the DPA.  And

12  under that, the DOJ had the authority to obtain information

13  from ███ and ███ was, at that time, seeking the eventual

14  termination of its monitorship at the end of the term.

15         And we understand that based on access to ███

16  internal information, both documents and witnesses, Latham was

17  able to ascertain facts regarding, you know, details about

18  Huawei's relationship with Skycom and Canicula business in

19  Iran, those facts and the knowledge within ███ where that

20  knowledge lies and when, is material and exculpatory to Huawei

21  for all the reasons explained in our brief.

22         I don't understand -- it doesn't appear in the

23  papers that the Government disputes that the substance of

24  these presentations is material and exculpatory under *Brady*.

25  The Government contends that the information has already been

1    disclosed by producing ███ records.  But as we've indicated

2    and what it appears -- again, you know, we don't have direct

3    visibility, we have public reports -- it appears that the

4    presentations were based on more than 100 interviews, as well

5    as extensive documents, you know, some of which may or may not

6    have been -- not all of which may have been produced to us.

7    And there's good reason to believe that the documents that

8    have been produced relating to ███ do not capture all of the

9    information that Latham had reported to DOJ based on this

10   extensive investigation that involved extensive interviews, as

11   well as documents.  The Government, again, cites to Leroy

12   decision and also to a more recent case of Vasquez.  I'll just

13   point out that in Vasquez, the Court noted that the

14   defendant's already had all of the documents, as well as

15   testimony from an earlier trial explaining the documents.  And

16   the Court also noted that if the presentations contained

17   information or conclusions based on the proponent's special

18   knowledge, that such information may be material.  And here,

19   it appears to us, based on limited visibility we do have, that

20   the Latham presentations to the Department, you know, were

21   based on special knowledge including this access to 100

22   witnesses that we don't have.  And for that reason, we view

23   those materials, which would take the form of the PowerPoints

24   and they also take here the form of information, recorded in

25   the Government's notes, that are for the same reasons as the

1   monitor reports, you know, exculpatory, material, and subject

2   to production under *Brady*.

3          THE COURT:  So now, if I understand what you just

4   said, you're not just seeking the PowerPoints, you're also

5   seeking production of the attorney's notes.  That's a

6   different issue that wasn't briefed that seems to be your

7   product question.  But I don't recall seeing that in your

8   papers.

9          MR. AXEL:  Sorry, Your Honor.  Well, information --

10  you know, this would be an area, right, if it's information

11  verbally communicated from Latham to the Government.  I think

12  that is a scenario in which a Government summary of

13  information learned is standard practice and could satisfy

14  *Brady*.  I don't know what's in the PowerPoint.  I don't know

15  if the PowerPoints would be inclusive of whatever exculpatory

16  information that's communicated.  But it's really the

17  presentations themselves and the exculpatory information in

18  the presentations is what we're after.

19         THE COURT:  At this point, do you actually know that

20  there's exculpatory information in the PowerPoints?

21         MR. AXEL:  Well, we do know, Your Honor, that this

22  was in response to or connected to, you know, the monitor's

23  questions about ████ and its potential violations of the

24  deferred prosecution agreement based on its banking services

25  provided in connection with, you know, Huawei and Skycom.  And

1  we do know that -- we believe that the role of Latham would

2  have been to thoroughly investigate ███████knowledge, ███████

3  intent and participation in any of these activities.  And

4  again, our point is that, with respect to these fraud charges

5  that allege ██████ was a victim that was deceived, any

6  information produced that establishes ███████ knowledge of

7  Huawei's relationship with Skycom, its business in Iran, its

8  business in Canicula, all of which were subject to what Latham

9  was investigating, is exculpatory and material.

10                (Court Reporter clarification.)

11           MR. AXEL:  So that's the reason we -- without much

12  visibility, we -- you know, and having sort of just projected

13  what that role may have been of Latham and what the work they

14  would have done, we believe that it is highly likely, at

15  least, that Latham uncovered significant evidence of ███████

16  knowledge and awareness, the very facts that the Government

17  now claims ██████was deceived about.  And therefore, we believe

18  that that information is subject to production under *Brady*.

19           THE COURT:  Okay.  Ms. Nestor.

20           MS. NESTOR:  Yes, Your Honor.

21           I think just to start with, the issues that were

22  briefed before the Court are the -- whether the PowerPoint

23  presentations that were made by Latham to the Government are

24  *Brady* and Rule 16.  To start with, the Government has

25  acknowledged that *Brady* and specific facts included in the

1  presentations would be provided to defendants and has already

2  said that they have the underlying documents, the defendants

3  have the underlying documents, that were relied on by ▮▮▮

4  The Government has cited to case law including Vasquez that

5  indicates that defendants are not entitled to the

6  presentations themselves, but the facts --

7                 (Court Reporter clarification.)

8             MS. NESTOR:  Your Honor, just to put a final point

9  on it, in terms of *Brady*, the defendants have articulated

10 their *Brady* concerns numerous times in this litigation based

11 on documents they have obtained from the Government.  And so,

12 in the Government's view, the defendants are fully aware of

13 the *Brady*, they've articulated it, they're on notice of it,

14 and nothing more is required in that they have the underlying

15 documents to support the presentations.

16            THE COURT:  So when you say they have the underlying

17 documents supporting the presentations, Mr. Axel just stated

18 and obviously this is based on a press release or press

19 report, that that they reviewed -- that Latham reviewed

20 292,000 e-mails, are you telling me that those 292,000 e-mails

21 have been provided to defendants?

22            MS. NESTOR:  Your Honor, that's a very good

23 question.  We do not have every single document, obviously,

24 that Latham reviewed.  We have what has been provided to the

25 Government by ▮▮▮   That has been provided to defense

SEALED BY ORDER OF THE COURT                    43

1  counsel.  What we have done is looked at the presentations to

2  determine whether the underlying documents have been provided.

3          Your Honor, I cannot sit here and tell you that

4  every single nitty little thing in the presentations has an

5  underlying document that has been provided.  I can tell you

6  the relevant information has been provided.  As the Government

7  also articulated in its letter, the Government will re-review

8  the presentations and ensure that any *Brady* or Rule 16

9  information not already provided, is either provided in letter

10 form or in some other form.

11         THE COURT:  Okay.  And when Mr. Axel asks for the

12 notes or whoever from the Government attended the Latham

13 presentation, have you reviewed those as well? because now I

14 gather the defendants are saying those should be produced, if,

15 in fact, they contain exculpatory information that has not

16 already been provided to the defendants in some other format.

17         MS. NESTOR:  Your Honor, with all due respect to the

18 defendants, that issue is not before the Court. It was never

19 briefed.  And so, you know, I ask that we focus on what has

20 been briefed before the Court.

21         THE COURT:  Okay.  Well, I didn't see it briefed.

22 So I guess if they want to raise it, they can certainly do so,

23 obviously.

24         But at this point, you're going to review the

25 PowerPoint and see what's in there, make sure that everything

1    has been disclosed.

2              MS. NESTOR:  That's correct, Your Honor.  That is

3    something the Government will do.  We've already done it.  I

4    don't want the Court to think we haven't already done it.  We

5    have done that.  But clearly, given the complexities and

6    frankly, the allegations by the defendants here, we want to be

7    very thorough, and we're going to do it again.

8              THE COURT:  All right.  Mr. Axel, anything you want

9    to add at this point?

10             MR. AXEL:  We're happy to continue the discussion on

11   the, you know, the Latham presentations for information that

12   was, you know, not maybe in the PowerPoint, but recorded

13   somewhere.  I do point out, you know, the motion asked for

14   exculpatory information presented to the Government by Latham

15   or some other representative about ██████ and you know, I don't

16   know how that information was order recorded.  You know, I do

17   think it's at issue and we would, you know, welcome the

18   opportunity.  We've been asking for the Latham presentations.

19   I'm a little surprised that there hasn't already been, you

20   know, a review of the Government's notes of what was presented

21   for *Brady* materials, because it's clearly within the scope of

22   the request we have made and it's been a long time now.  But

23   if there's, you know, more work to do on the Government's part

24   to review that, we'll obvious continue to engage with them on

25   it.

SEALED BY ORDER OF THE COURT                                45

1            THE COURT:  All right.  Well, my suggestion -- when

2    I read the letter that you submitted, that the defense

3    submitted, I thought the only thing being asked for was the

4    specific PowerPoint, which in my mind, is a specific document

5    or series of documents.  I gathered that the Latham

6    investigation did not produce a formal report such as the ones

7    provided by the monitor.  But that the presentation was, in

8    fact, as Mr. Axel has suggested, an oral presentation in which

9    the PowerPoint was used to assist in the oral presentation.

10           Am I correct about that?

11           MS. NESTOR:  That's correct, Your Honor.

12           THE COURT:  Okay.  All right.  Well, I'm going to

13   ask you to meet and confer on this issue of whether or not the

14   Government's notes are subject to disclosure.

15           Again, I don't know that the notes themselves would

16   be subject to disclosure if, in fact, the Government provided

17   you with information.  This is not a Rule 16 document in my

18   mind.  If you disagree with me, obviously, you're free to

19   submit something to let me know that I'm wrong.  But I would

20   suggest that may be you talk to the Government after they've

21   had a chance to, again, review the PowerPoint and their notes,

22   and if this is still an issue, separate and apart from the

23   request for the PowerPoint, you'll let me know, I'm sure.

24           MR. AXEL:  Very well, Your Honor.  Thank you.

25           THE COURT:  All right.  Is there anything else we

AVERY N. ARMSTRONG, RPR
OFFICIAL COURT REPORTER

SEALED BY ORDER OF THE COURT                         46

1    need to address today?

2              In terms of -- oh, Mr. Green, I think is rasing his

3    hand.

4              Did I see you raise your hand?

5              MR. ATTY3:  Sorry, I was on mute.

6              THE COURT:  That's okay.

7              MR. ATTY3:  Thank you.  Could you ask the Government

8    to clarify whether they know if the -- if Latham produced a

9    written report which they gave to the monitor.

10             THE COURT:  Do you know, Ms. Nestor?

11             MS. NESTOR:  Your Honor, I'm confused as to what is

12   being asked of the Government.

13             THE COURT:  Mr. Green wants to know if, even if you

14   didn't get a written report, do you know if they've provided,

15   Latham provided a written report to the monitor in response to

16   the issues that were raised in the monitor's report.

17             MS. NESTOR:  I can't be sure one way or the other,

18   Your Honor, because we wouldn't have necessarily been privy to

19   that.  I certainly don't know sitting here right now.  I would

20   hate to misrepresent something on the record, Your Honor.

21             THE COURT:  That's fine.  Your answer is sufficient

22   to address Mr. Green's question, I think.  Okay.

23             I mean, obviously, you're free to go to Latham and

24   ask them if they've produced a report, right?

25             MR. ATTY3:  Yes.  I will do that.  Thank you, Your

SEALED BY ORDER OF THE COURT                                47

1    Honor.

2              THE COURT:  All right.  In terms of scheduling, I

3    think, Ms. Nestor, there are a number of things that are in

4    your court.  Reviewing the ███████ right, getting back to

5    me on the issue of whether or not there's a way to provide a

6    sufficient protective order that would satisfy the

7    Government's concerns.  You're going to meet and confer with

8    defendant's counsel on this last issue of the Latham notes.

9    I'll designate it as the attorney's notes.  And maybe you can

10   talk amongst yourselves, again, on what documents were

11   provided by the monitor just to ensure that we've -- they've

12   all been provided.  I mean, obviously publicly available

13   documents are, you know, publicly available and they can get

14   them.  So with that in mind, when can I get a report back from

15   you all?

16             MS. NESTOR:  Your Honor, given the amount of, kind

17   of, to-dos here, I would ask for a month.

18             THE COURT:  And in terms of a response, I assume

19   Mr. Axel, Mr. Green, do you want a response to their letter?

20   I don't know what they're going to say.

21             MR. AXEL:  We, obviously, don't want to, you know,

22   burden the Court with anything unnecessary, but depending on

23   what they say, we may certainly want a response.

24             THE COURT:  Okay.  So I will let you notify me once

25   they've provided you with their letter.  Just say, you know,

SEALED BY ORDER OF THE COURT                48

1   Judge, we would like to provide a response, can we have, you

2   know, two weeks, whatever.  Okay.

3            MR. AXEL:  Very well, Your Honor.

4            THE COURT:  All right.

5            MR. AXEL:  So I just wanted to let Your Honor just

6   know that we -- there's one other issue connected to this

7   motion that's a  little bit ancillary, but we have been

8   meeting and conferring.  It's somewhat related to the closure

9   motion and that's concerns the redactions that have been made

10  on the letter briefs themselves.  We hope -- we're in the

11  process of meeting and conferring on that.  And just so the

12  Court knows, if we do come back to the Court and seek guidance

13  on redactions and what's appropriate or not, it's mindful not

14  only for these particular motions, but also we're trying, from

15  our perspective, to establish workable parameters that we can

16  sort of use going forward, you know, for future -- for future

17  filings in the case.  We've been struggling with and having a

18  lot of discussions with the Government about what needs to be

19  redacted and what's not.  So I hope --

20           THE COURT:  These are the redactions you're

21  referring to in the Government's July 21 letter?

22           Is that what you're talking about?

23           MR. AXEL:  And ours, as well.  We put imposed

24  redactions at the request of the Government.  We didn't

25  necessarily agree with, but we agreed to, you know, redact and

SEALED BY ORDER OF THE COURT                          49

1    then discuss, and then, you know, sort of work out what the

2    appropriate limitations are on what should be redacted and

3    what shouldn't be.  And those discussions are ongoing with the

4    Government.

5              THE COURT:  Okay.  All right.  Well, that's fine.

6              You know, if you can't reach an agreement, you'll

7    let me know.  All right.  Okay.

8              All right.  So I'm going to reserve decision on the

9    motion to compel until after I hear from you all with respect

10   to the open issues, and hopefully you can resolve a lot of

11   them so I don't have to do so much work.  All right.

12             All right, everyone.  Have a nice evening.

13

14             (Whereupon, the matter was concluded.)

15

16                  *    *    *    *    *

17

18   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.
19

20   s/ Avery N. Armstrong              September 10, 2021

21   AVERY N. ARMSTRONG

22

23

24

25