UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

        - v. -                                        18 CR 457 (S-3) (AMD)

HUAWEI TECHNOLOGIES CO.,                  **REDACTED VERSION**
LTD., *et al*.,                                            **FILED PUBLICLY**

                    Defendants.           **ORAL ARGUMENT**
                                                                    **REQUESTED**
_____


**DEFENDANTS HUAWEI TECHNOLOGIES CO., LTD., HUAWEI DEVICE CO., LTD., HUAWEI DEVICE USA INC., AND FUTUREWEI TECHNOLOGIES, INC.'S <u>MOTION TO SUPPRESS</u>**

| | | |
|---|---|---|
| David Bitkower | Douglas A. Axel | Brian M. Heberlig |
| Matthew S. Hellman | Michael A. Levy | Ryan P. Poscablo |
| JENNER & BLOCK LLP | Ellyce R. Cooper | Jessica I. Rothschild |
| 1099 New York Avenue, NW | Frank R. Volpe | STEPTOE LLP |
| Washington, D.C. 20001 | Melissa Colón-Bosolet | 1114 Avenue of the Americas |
| (202) 639-6048 | Daniel J. Hay | New York, NY 10036 |
| dbitkower@jenner.com | SIDLEY AUSTIN LLP | (212) 506-3900 |
| | 787 7th Avenue | rposcablo@steptoe.com |
| | New York, NY 10019 | |
| | (212) 839-5300 | |
| | daxel@sidley.com | |

*Counsel for Huawei Technologies Co., Ltd., Huawei Device Co., Ltd.,
Huawei Device USA Inc., and Futurewei Technologies, Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................................... 1

BACKGROUND ................................................................................................................................. 2

I.      Warrantless Searches of the Devices ........................................................................................ 2

II.     Warrantless ▇▇▇▇▇▇▇▇▇▇▇ ...................................................................................................... 3

III.    Post-S3 Indictment ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇ ........................................................... 3

ARGUMENT ...................................................................................................................................... 5

I.      The Court Should Suppress the Fruits of the Warrantless Searches of the Devices ............... 5

      A.    The Government Was Required to Obtain a Warrant to Search the Devices ............... 5

      B.    The Government Has Not Established by a Preponderance of the Evidence that the Border Search Exception Justified Its Search of the Devices ...................................................................................................................... 6

      C.    The Government Was Required to Obtain a Warrant to Search the Devices Even If It Searched Them at the Border ................................................................... 8

II.     The Court Should Suppress the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ................................................ 10

III.    The Court Should Suppress the ▇▇▇▇▇▇▇▇▇ ..................................................................... 11

CONCLUSION ................................................................................................................................ 14

## **TABLE OF AUTHORITIES**

**CASES**

*Brigham City v. Stuart*, 547 U.S. 398 (2006)..................................................................................5

*Dowd v. City of New York*, No. 11-cv-9333 (KBF), 2012 WL 5462666 (S.D.N.Y. Nov. 5, 2012) ...............................................................................................................10

*Lonegan v. Hasty*, 436 F. Supp. 2d 419 (E.D.N.Y. 2006) .............................................................10

*Massiah v. United States*, 377 U.S. 201 (1964)............................................................................11

*Miano v. AC & R Advertising, Inc.*, 148 F.R.D. 68 (S.D.N.Y.), *adopted*, 834 F. Supp. 632 (S.D.N.Y. 1993)...............................................................................................12

*Riley v. California*, 573 U.S. 373 (2014) .......................................................................................5

*United States v. Arboleda*, 633 F.2d 985 (2d Cir. 1980) ...........................................................6, 10

*United States v. Bhutani*, 914 F. Supp. 1539 (N.D. Ill. 1995) ......................................................12

*United States v. Cotterman*, No. 07-cr-1207 (RCC), 2009 WL 465028 (D. Ariz. Feb. 24, 2009), *rev'd on other grounds*, 709 F.3d 952 (9th Cir. 2013) ....................................7

*United States v. Delva*, 858 F.3d 135 (2d Cir. 2017)................................................................5, 10

*United States v. Edwards*, 342 F.3d 168 (2d Cir. 2003) ...............................................................11

*United States v. Flores-Montano*, 541 U.S. 149 (2004) ................................................................6

*United States v. Fox*, No. 23-cr-227 (NGG), 2024 WL 3520767 (E.D.N.Y. July 24, 2024) .......................................................................................................................6, 7

*United States v. Ganias*, 824 F.3d 199 (2d Cir. 2016) (en banc).....................................................9

*United States v. Henry*, 447 U.S. 264 (1980)................................................................................11

*United States v. House of Raeford Farms, Inc.*, No. 12-cr-248–1 (JAB), 2012 WL 3283396 (M.D.N.C. Aug. 10, 2012).................................................................................12

*United States v. Kamaldoss*, No. 19-cr-543 (ARR), 2022 WL 1200776 (E.D.N.Y. Apr. 22, 2022) .................................................................................................................8

*United States v. Ramsey*, 431 U.S. 606 (1977) ...............................................................................6

*United States v. Robinson*, No. 23-cr-192 (NRM), 2025 WL 1359352 (E.D.N.Y. May 9, 2025), *appeal docketed*, No. 25-1428 (2d Cir. June 5, 2025) .....................5, 6, 8, 9, 10

*United States v. Rosa*, 11 F.3d 315 (2d Cir. 1993) ..........................................................................11

*United States v. Smith*, 967 F.3d 198 (2d Cir. 2020) .........................................................................9

*United States v. Stevens*, 83 F.3d 60 (2d Cir. 1996) ........................................................................11

*United States v. Ulbricht*, 858 F.3d 71 (2d Cir. 2017), *rev'd on other grounds, Carpenter v. United States*, 585 U.S. 296 (2018) ......................................................................9

*United States v. Workman*, 80 F.3d 688 (2d Cir. 1996) ...................................................................10

*United States v. Yudong Zhu*, 41 F. Supp. 3d 341 (S.D.N.Y. 2014) .................................................8

*Vernonia School District 47J v. Acton*, 515 U.S. 646 (1995) ..........................................................5

**STATUTES**

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510 *et seq.* ........................................................................................................................1

18 U.S.C. § 2515 ................................................................................................................................10

**OTHER AUTHORITIES**

*Sixth Amendment Implications of Law Enforcement Contact with Corporate Executives*, Op. O.L.C. (Apr. 15, 1994), https://www.justice.gov/file/147261/dl ..................................................................................................................................12

Pursuant to Fed. R. Crim. P. 12(b)(3)(C), Defendants Huawei Technologies Co., Ltd. ("Huawei Tech"), Huawei Device Co., Ltd., Huawei Device USA Inc., and Futurewei Technologies, Inc. (collectively, "Huawei") respectfully move to suppress the evidence referenced below, and any additional evidence derived from those sources, under the Fourth and Sixth Amendments to the U.S. Constitution, as well as Title III of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. §§ 2510 *et seq.* ("Title III").

## PRELIMINARY STATEMENT

Huawei respectfully moves to suppress the following three categories of evidence that the government obtained unlawfully. *First*, Huawei moves to suppress all evidence obtained as a result of the warrantless searches of four Huawei devices that were seized from Huawei employees ▮▮▮▮▮ (the "Devices"). Although the Devices may have been initially *seized* at the border, the government has not demonstrated that the Devices were *searched* pursuant to the border search exception to the warrant requirement rather than at a different time or place. Absent that showing, any evidence obtained from the Devices should be suppressed. Moreover, even if the government did search the Devices at the border, it was still required to obtain a warrant before doing so. As courts in this Circuit have recognized, the border search exception does not extend to forensic searches of cell phones because of the enhanced privacy considerations those devices implicate. The ▮▮▮ at issue here present those same considerations, and the Court should thus suppress the evidence obtained without a warrant from them regardless of where the government carried out its underlying forensic searches.

*Second*, Huawei moves to suppress the warrantless ▮▮▮▮▮▮▮▮▮▮▮▮▮▮. The government has neither produced a warrant under Title III nor demonstrated any exception to the warrant requirement that would justify interception of this ▮. If the ▮ was intercepted without legal authority, it must be suppressed.

1

*Third*, Huawei moves to suppress an ▮▮▮▮▮ and any other evidence of a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. The government intends to offer this ▮▮▮▮▮ as evidence of one of the recently disclosed RICO predicates that the government claims Huawei committed as part of the charged RICO conspiracy. But the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ the government indicted Huawei for that alleged RICO conspiracy, and ▮▮▮▮ Huawei's Sixth Amendment right to counsel had attached with respect to that offense. The government therefore could not lawfully use a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ outside the presence of counsel. This ▮▮▮▮ shows that the government did exactly that. The Court should therefore suppress the ▮▮▮▮ because the government carried it out in violation of Huawei's Sixth Amendment rights.

Accordingly, and for the reasons stated below, the Court should suppress the Devices, the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, the ▮▮▮▮▮▮▮▮ (and any other evidence of the underlying ▮▮▮▮), and any evidence derived from these sources.

## BACKGROUND

### I. Warrantless Searches of the Devices

As relevant to this Motion, the government has produced in discovery four electronic devices seized from two Huawei employees, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. At the relevant times, ▮▮▮▮ and ▮▮▮ were employed by Huawei Tech. *See* Ex. 1 – Affidavit of Jiang

2

Benhong ("Ex. 1") ¶ 6. ███ responsibilities included working as an engineer, and ███ responsibilities included working as an accountant. *See id.* Their seized devices include:

- Three devices seized from ███ ███[1] seized at ███; a ███[2] seized at ███; and a second ███[3] seized at ███.
- A Dell Latitude laptop[4] seized from ███ at DFW on June 16, 2018.

At the time of the seizures, Huawei or its wholly owned subsidiary, Huawei Technologies USA, owned each of these devices. *See* Ex. 1 ¶¶ 4–7. Huawei required and expected ███ and ███ to use their respective devices for Huawei business purposes and keep the contents confidential. *See id.* The government has stated that it has produced all search warrants related to work-related electronic devices seized from Huawei personnel. It has not produced warrants relating to any of the Devices.

## II. Warrantless ███

The government has produced an ███ ███.[5] The government has not produced a warrant or any Title III notice that would reflect a purported legal basis for interception of this ███.

## III. Post-S3 Indictment ███

The government has produced ███ ███.

---

[1] *See* Jan. 30, 2025 government production.
[2] *See id.*
[3] *See* DOJ_HUAWEI_A_0124781759–DOJ_HUAWEI_A_0124862852.
[4] *See* DOJ_HUAWEI_B_0000015565–DOJ_HUAWEI_B_0000015587. The government also seized an ███. *See* DOJ_HUAWEI_A_SDM_0124193857. ███ *See* DOJ_HUAWEI_A_SDM_0124676628. The government chose not to seek a warrant to search the ███.
[5] *See* DOJ_HUAWEI_A_SDM_0125107952.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████[6]

At least one of these ███████████ occurred after the Third Superseding Indictment ("S3 Indictment") was returned on February 13, 2020. ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████[10]

---

[6] *See* Feb. 28, 2025 & Mar. 19, 2025 government productions.
[7] *See* Mar. 19, 2025 government production.
[8] *See id.*
[9] *See id.*
[10] *See id.*

## **ARGUMENT**

**I.     The Court Should Suppress the Fruits of the Warrantless Searches of the Devices.**

The Court should suppress evidence obtained from the warrantless searches of the Devices. When the government conducts a warrantless search, it "has the burden of showing that the search was lawful because it fell within one of the exceptions to the warrant requirement." *United States v. Delva*, 858 F.3d 135, 148 (2d Cir. 2017); *see also United States v. Robinson*, No. 23-cr-192 (NRM), 2025 WL 1359352, at *5 (E.D.N.Y. May 9, 2025) (government "bears the burden of justifying an exception to the warrant requirement by a preponderance of the evidence" (citations omitted)). The government cannot meet that burden. The only plausible exception to the warrant requirement here would be the "border search" exception, because the Devices were seized from international travelers at airports. But the government has produced no evidence that the Devices were *searched* at—or even near—the border, as the border search exception requires. And even if the government did search the Devices at the border, suppression is still warranted. As other courts in this Circuit have held, the border search exception does not apply here in light of the heightened privacy concerns that devices like ▮▮▮▮ implicate. Evidence obtained from the Devices should thus be suppressed.

**A.     The Government Was Required to Obtain a Warrant to Search the Devices.**

"[T]he ultimate touchstone of the Fourth Amendment is reasonableness." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (citation omitted). "Where a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing, . . . reasonableness generally requires the obtaining of a judicial warrant." *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995). "In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement." *Riley v. California*, 573 U.S. 373, 382 (2014). The

5

government bears the burden of demonstrating by a preponderance of the evidence that an exception applies. *See United States v. Arboleda*, 633 F.2d 985, 989 (2d Cir. 1980) ("The movant can shift the burden of persuasion to the Government and require it to justify its search, however, when the search was conducted without a warrant."); *Robinson*, 2025 WL 1359352, at *5 ("Where the defendant's motion is premised on a Fourth Amendment violation, the Government bears the burden of justifying an exception to the warrant requirement by a preponderance of the evidence." (internal quotation marks and citation omitted)). The government cannot meet its burden here.

### B. The Government Has Not Established by a Preponderance of the Evidence that the Border Search Exception Justified Its Search of the Devices.

We anticipate that the government may invoke the border search exception as its basis for searching the Devices without warrants, but the government has not carried its burden to show that the exception applies.

The border search exception is a "longstanding, historically recognized exception to the Fourth Amendment's general principle that a warrant be obtained." *United States v. Ramsey*, 431 U.S. 606, 621 (1977). It is rooted in the "right of the sovereign to protect itself by stopping and examining persons and property crossing into this country." *Id.* at 616. And it has historically been grounded in the government's need "to regulate the collection of duties and to prevent the introduction of contraband into this country." *United States v. Flores-Montano*, 541 U.S. 149, 153 (2004) (citation omitted).

It appears that the Devices may have been *seized* at the border. But the fact that a device was seized at the border does not give the government *carte blanche* to search the device in perpetuity. "[T]he ability of officers to conduct warrantless searches once an individual has left a border area is more limited than the ability to conduct a search at the actual border." *United States v. Fox*, No. 23-cr-227 (NGG), 2024 WL 3520767, at *7 (E.D.N.Y. July 24, 2024) (citing *United*

6

*States v. Glaziou*, 402 F.2d 8, 13 n.3 (2d Cir. 1968)); *see also United States v. Cotterman*, No. 07-cr-1207 (RCC), 2009 WL 465028, at *6 (D. Ariz. Feb. 24, 2009) ("At some point, the discrepancy in time and distance will become so great that [a search] is no longer an extended border search, thus requiring probable cause and a warrant"), *rev'd on other grounds*, 709 F.3d 952 (9th Cir. 2013). Were it otherwise, the government could seize a traveler's electronic devices at the airport, then continually "subject [those devices] to search without probable cause no matter where [the traveler] was in the United States and no matter how long" it had been since their devices were seized. *Fox*, 2024 WL 3520767, at *7 (quoting *Glaziou*, 402 F.2d at 13 n.3).

Judge Garaufis's decision in *United States v. Fox* illustrates the narrowness of the border search exception. In *Fox*, the court held that the exception was inapplicable where the government seized the defendant's phone and laptop at Miami International Airport and then searched the phone without a warrant three days later. 2024 WL 3520767, at *1–3. The court rejected the government's argument that the border search exception permitted the search—which it found was "entirely untethered from the purposes of th[e] [border search] exception and fell outside of its authorized uses," *id.* at *6—because, *inter alia*, "the search was conducted over one thousand miles from where [the defendant] entered the country" and "not . . . until days" after entry, *id.* at *9. The court accordingly suppressed the contents of the phone, denying the government's "attempt[] to use the border-search exception to shirk the warrant requirement." *Id.* at *17; *see also id.* at *10 ("[J]ust because one 'has diminished privacy interests does not mean that the Fourth Amendment falls out of the picture entirely.'" (quoting *Riley*, 573 U.S. at 392)).

The Court should do the same here. The searches of the Devices were indisputably warrantless, and the government has not shown that any exception—border search or otherwise—applies. Accordingly, any fruits of the illegal searches of the Devices should be suppressed.

7

### C. The Government Was Required to Obtain a Warrant to Search the Devices Even If It Searched Them at the Border.

The Court should in any event suppress evidence from the warrantless searches of the Devices for an independent reason: as a court in this District recently confirmed, even "at the border," "the government must have a warrant and probable cause to search a cell phone." *Robinson*, 2025 WL 1359352, at *9. By extension, the government must also have a warrant and probable cause to search similar electronic devices, including ▮▮▮▮, which raise functionally identical privacy considerations as cell phones. *See, e.g.*, *United States v. Yudong Zhu*, 41 F. Supp. 3d 341, 343 (S.D.N.Y. 2014) ("A defendant's privacy interests in the information on a laptop implicate the same interests as that stored on a cell phone."); *United States v. Kamaldoss*, No. 19-cr-543 (ARR), 2022 WL 1200776, at *12 n.12 (E.D.N.Y. Apr. 22, 2022) ("[T]here is 'no basis to distinguish a forensic cell phone search from a forensic laptop search.'" (quoting *United States v. Cano*, 934 F.3d 1002, 1015 (9th Cir. 2019)).

In *Robinson*, the court suppressed the contents of a cell phone that was seized at the border without a search warrant. Specifically, a Customs and Border Patrol agent detained the defendant for secondary screening at JFK, directed him to unlock his phone, and manually searched his phone in the secondary screening area. 2025 WL 1359352, at *1. Then, relying on the results of the manual search, a Homeland Security Investigations agent "seized all of [the defendant]'s devices and thereafter applied for a warrant to conduct a forensic search." *Id.* The court ruled that the initial airport search of the cell phone was not justified by the border search exception, and that the illegality of that first search tainted the subsequently obtained search warrant and required suppression of the "fruits" of that search as well. *Id.* at *9. The court reasoned that, given the "various factors that bear on the Fourth Amendment's touchstone of 'reasonableness'—including a person's heightened privacy interest in the vast contents of her cell phone, the remarkable speed

8

at which a warrant can be obtained in modern times, [and] the interest in preventing the flow of contraband that grounds the border-search exception, . . . the government must have a warrant and probable cause to search a cell phone," even at the border. *Id.*

Although *Robinson*'s holding concerns cell phones, *Robinson*'s reasoning applies equally to forensic searches of other electronic devices like ▮ that store large amounts of personal information and therefore create the same "heightened privacy interest" as the modern cell phone. *Id*. Many courts in this Circuit, including the Second Circuit itself, have recognized that ▮ and other digital storage devices present the same privacy concerns as cell phones. *See United States v. Smith*, 967 F.3d 198, 208 (2d Cir. 2020) (explaining that "the search and seizure of personal electronic devices like a modern cell phone *or tablet computer* implicates different privacy and possessory concerns than the search and seizure of a person's ordinary personal effects" (emphasis added)). Indeed, as the Second Circuit recognized in *United States v. Ulbricht*, "a general search of electronic data is an especially potent threat to privacy because hard drives and email accounts may be akin to a residence in terms of the scope and quantity of private information [they] may contain." 858 F.3d 71, 99 (2d Cir. 2017) (citation omitted), *rev'd on other grounds*, *Carpenter v. United States*, 585 U.S. 296 (2018); *see also United States v. Ganias*, 824 F.3d 199, 217 (2d Cir. 2016) (en banc) (The "seizure of a computer hard drive, and its subsequent retention by the government, can [therefore] give the government possession of a vast trove of personal information about the person to whom the drive belongs[.]").

So too here: the government was required, but failed, to obtain a warrant to search the Devices. The government therefore violated the Fourth Amendment, and the fruits of its searches should be suppressed accordingly.

9

II. **The Court Should Suppress the** ███████████████████████
███████.

As with the searches of the Devices, the government has failed to provide any legal ground for ███████████████████████████████████████. The government has neither produced a Title III warrant for the ███ nor demonstrated any other exception to the warrant requirement as mandated by Title III and the Fourth Amendment.

"Title III generally forbids the intentional interception of wire communications, such as telephone calls, when done without court-ordered authorization." *United States v. Workman*, 80 F.3d 688, 692 (2d Cir. 1996); *see also* 18 U.S.C. § 2515 ("[N]o part of the contents of [a phone conversation intercepted in violation of Title III] and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court[.]"); *Lonegan v. Hasty*, 436 F. Supp. 2d 419, 426, 436 (E.D.N.Y. 2006) (observing that "[s]ubject to certain specified exceptions . . . the Wiretap Act prohibits the intentional interception of wire, oral, and electronic communications unless specifically authorized by a court order" and that "in the absence of a constitutionally sound warrant, electronic eavesdropping is prohibited by the Fourth Amendment" (citing *Berger v. New York*, 388 U.S. 41, 45–63 (1967))); *Dowd v. City of New York*, No. 11-cv-9333 (KBF), 2012 WL 5462666, at *2 (S.D.N.Y. Nov. 5, 2012) (discussing the application of the Fourth Amendment to non-consensual recordings of conversations (citing *Katz v. United States*, 389 U.S. 347 (1967))). Absent a warrant, the burden rests on the government to establish that some exception to the warrant requirement justified its ███████████████
███████████████████████. *Delva*, 858 F.3d at 148; *Arboleda*, 633 F.2d at 989; *Robinson*, 2025 WL 1359352, at *5.

Because the government has not made such a showing (or produced a valid warrant), this ███████ should be suppressed.

### III. The Court Should Suppress the ███████████████.

Finally, the Court should suppress the ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████, as well as any other evidence of those ████████. The government now seeks to use the ██████████████████████████████████ as evidence against Huawei in violation of the Sixth Amendment.

"The Sixth Amendment right to counsel attaches at the initiation of adversary judicial proceedings, such as arraignment or filing of an indictment." *United States v. Edwards*, 342 F.3d 168, 182 (2d Cir. 2003) (internal quotations and citations omitted). Once the right has attached, the government has an "affirmative obligation not to solicit incriminating statements from the defendant in the absence of his counsel." *United States v. Rosa*, 11 F.3d 315, 329 (2d Cir. 1993). This affirmative obligation applies in equal force to confidential informants. *Edwards*, 342 F.3d at 182; *see also Massiah v. United States*, 377 U.S. 201, 206 (1964) (stating that if the Sixth Amendment "is to have any efficacy it must apply to indirect and surreptitious interrogations as well as those conducted in the jailhouse" (citation omitted)); *United States v. Henry*, 447 U.S. 264, 273 (1980) (same); *United States v. Stevens*, 83 F.3d 60, 64 (2d Cir. 1996) (when an informant who is working for the government "deliberately elicits . . . evidence from an accused, the materials gotten after such government contact are properly excluded" under the Sixth Amendment). "[S]tatements elicited by the government outside the presence of a defendant's counsel are inadmissible in the government's case-in-chief unless accompanied by a valid waiver of this right." *Edwards*, 342 F.3d at 182 (internal citations omitted).

11

Where the defendant is a corporation, the rule barring the government from obtaining uncounseled incriminating statements applies to the corporation's managers. "[G]overnment interviews of managerial employees for the purpose of eliciting statements that would be independently admissible" against a corporation implicate the corporation's Sixth Amendment right to counsel. *United States v. House of Raeford Farms, Inc.*, Nos. 1:12-cr-248–1 (JAB), 2012 WL 3283396, at *7 (M.D.N.C. Aug. 10, 2012); *see also United States v. Bhutani*, 914 F. Supp. 1539, 1541 (N.D. Ill. 1995) ("The court agrees with [the defendant corporation] that government interviews of managerial employees for the purpose of eliciting statements that would be independently admissible against [the defendant corporation] would implicate the Sixth Amendment."); *Sixth Amendment Implications of Law Enforcement Contact with Corporate Executives*, Op. O.L.C. (Apr. 15, 1994), https://www.justice.gov/file/147261/dl ("[C]ontact with corporate executives outside of the presence of counsel is impermissible after the initiation of criminal proceedings against a corporation[.]"); *cf. Miano v. AC & R Advert., Inc.*, 148 F.R.D. 68, 77 (S.D.N.Y.), *adopted*, 834 F. Supp. 632 (S.D.N.Y. 1993) (managerial employees were parties for the purposes of a lawsuit between two corporations).

Here, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

---

[11] As the government itself recently told this Court, the alleged ████████████ scheme is "within the sphere of the charged [RICO] conspiracy." Oral Arg. Tr. May 14, 2015, 66:18-19; *see also* Gov't Response to Bill of Particulars Requests (Dec. 31, 2024) (identifying the alleged ████████████ scheme as a "predicate act[] relating to Count 1 of the Indictment").

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████ was a "deliberate" attempt to obtain incriminating evidence against Huawei ████████████████████████████ ███████████████████████████████████.

The government now contends that it may offer ████████████ against Huawei to prove it is guilty of the charged RICO conspiracy. The government may not do so. Because █ ████████████████████████████████████████, Huawei's Sixth Amendment right had attached. Using ████████████████████████████████████████ ██████████████████████████████ violated that right. Accordingly, the █████ ██████ (and any other evidence of the underlying ██████████) must be suppressed.

## CONCLUSION

For the foregoing reasons, Huawei respectfully requests that the Court suppress the above-described evidence and its fruits.

Respectfully submitted,

/s/ Douglas A. Axel

| | | |
|---|---|---|
| David Bitkower | Douglas A. Axel | Brian M. Heberlig |
| Matthew S. Hellman | Michael A. Levy | Ryan P. Poscablo |
| JENNER & BLOCK LLP | Ellyce R. Cooper | Jessica I. Rothschild |
| 1099 New York Avenue, NW | Frank R. Volpe | STEPTOE LLP |
| Washington, D.C. 20001 | Melissa Colón-Bosolet | 1114 Avenue of the Americas |
| (202) 639-6048 | Daniel J. Hay | New York, NY 10036 |
| dbitkower@jenner.com | SIDLEY AUSTIN LLP | (212) 506-3900 |
| | 787 7th Avenue | rposcablo@steptoe.com |
| | New York, NY 10019 | |
| | (212) 839-5300 | |
| | daxel@sidley.com | |

*Counsel for Huawei Technologies Co., Ltd., Huawei Device Co. Ltd., Huawei Device USA Inc., and Futurewei Technologies, Inc.*