UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

- v. -

HUAWEI TECHNOLOGIES CO.,
LTD., *et al*.,

                     Defendants.

_____

18 CR 457 (S-3) (AMD)

**REDACTED VERSION
FILED PUBLICLY**

## DEFENDANTS HUAWEI TECHNOLOGIES CO., LTD., HUAWEI DEVICE CO., LTD., HUAWEI DEVICE USA INC., AND FUTUREWEI TECHNOLOGIES, INC.'S REPLY IN SUPPORT OF THEIR MOTION TO SUPPRESS

David Bitkower
Matthew S. Hellman
JENNER & BLOCK LLP
1099 New York Avenue, NW
Washington, D.C. 20001
(202) 639-6048
dbitkower@jenner.com

Douglas A. Axel
Michael A. Levy
Ellyce R. Cooper
Frank R. Volpe
Melissa Colón-Bosolet
Daniel J. Hay
SIDLEY AUSTIN LLP
787 7th Avenue
New York, NY 10019
(212) 839-5300
daxel@sidley.com

Brian M. Heberlig
Ryan P. Poscablo
William L. Drake
Jessica I. Rothschild
STEPTOE LLP
1114 Avenue of the Americas
New York, NY 10036
(212) 506-3900
rposcablo@steptoe.com

*Counsel for Huawei Technologies Co., Ltd., Huawei Device Co., Ltd.,
Huawei Device USA Inc., and Futurewei Technologies, Inc.*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

ARGUMENT ............................................................................................................................1

I.    ▇▇▇▇▇▇ Had Neither Actual nor Apparent Authority to Consent to Government Searches of Huawei Property. .......................................................................................................1

    A.    ▇▇▇▇▇▇ Had No Authority to Consent to the February 2018 and April 2018 Laptop Searches. ...........................................................................................2

    B.    The Government Cannot Show that It Reasonably Believed ▇▇▇▇▇▇ Had Authority to Consent to the February 2018 and April 2018 Laptop Searches. ...........................................................................................................5

    C.    Even If ▇▇▇▇▇▇ Had Had Authority to Consent to the Search of the April 2018 Laptop, He Consented Only to a Search for ▇▇▇▇▇▇ ▇▇▇▇▇▇. ....................................................................................................8

II.   The Government Should Not Be Allowed to Defend Its Searches, Including the January 2013 Laptop Search, Through Ex Parte Proceedings. ............................................8

CONCLUSION ........................................................................................................................10

# **TABLE OF AUTHORITIES**

**CASES**

*Moore v. Andreno*, 505 F.3d 203 (2d Cir. 2007) ....................................................................5, 6

*United States v. Bin Laden*, 126 F. Supp. 2d 264 (S.D.N.Y. 2000), *aff'd sub nom. United States v. Sadeek Odeh (In re Terrorist Bombings of United States Embassies in East Africa)*, 552 F.3d 157 (2d Cir. 2008) ......................................................9

*United States v. Daskal*, 676 F. Supp. 3d 153 (E.D.N.Y. 2023)...................................................10

*United States v. Delva*, 858 F.3d 135 (2d Cir. 2017)....................................................................9

*United States v. Galpin*, 720 F.3d 436, 451 (2d Cir. 2013) .........................................................8

*United States v. Gandia*, 424 F.3d 255, 265 (2d Cir. 2005) .......................................................8

*United States v. Graziano*, 558 F. Supp. 2d 304 (E.D.N.Y. 2008) .............................................10

*United States v. Jenkins*, 46 F.3d 447 (5th Cir. 1995) ..................................................................4

*United States v. Jones*, 335 F.3d 527 (6th Cir. 2003) ..................................................................4

*United States v. McGee*, 564 F.3d 136 (2d Cir. 2009)..................................................................3

*United States v. Metter*, 860 F. Supp. 2d 205 (E.D.N.Y. 2012) .................................................10

*United States v. Miller*, 800 F.2d 129 (7th Cir. 1986) .............................................................3, 4

*United States v. Murphy*, 506 F.2d 529 (9th Cir. 1974) (per curiam).............................................4

*United States v. Nayyar*, 221 F. Supp. 3d 454 (S.D.N.Y. 2016), *aff'd sub nom. United States v. Mulholland*, 702 F. App'x 7 (2d Cir. 2017) .......................................6

*United States v. Rechnitz*, 75 F.4th 131, 146 (2d Cir. 2023) .......................................................9

*United States v. Yudong Zhu*, 23 F. Supp. 3d 234 (S.D.N.Y. 2014)..........................................4, 5

# ARGUMENT

**I.** ███████ **Had Neither Actual nor Apparent Authority to Consent to Government Searches of Huawei Property.**

In February and April of 2018, the government conducted warrantless searches of Huawei property by imaging, among other devices, laptops assigned by Huawei to one of its employees, ███████. The sole legal justification the government offers for these searches is that ███████ consented to them on Huawei's behalf, including after ███████████████████ ███████████████████████████████████.[1]

The government's consent justification is meritless because the devices belonged to Huawei, and ███████ had no authority to consent on Huawei's behalf.[2] Like other companies, Huawei expressly prohibits its employees from disclosing confidential corporate information to outsiders without express supervisory permission or permission from Huawei's Legal Affairs Department. ███████ therefore lacked authority to consent to the searches when confronted by government agents. Although the government contends that it reasonably believed ███████ had such authority, no officer could have reasonably concluded without further inquiry that ███████ was authorized to consent on Huawei's behalf given the ubiquity of information security policies prohibiting employees from sharing confidential corporate information, as well as the specific circumstances of the government's then-ongoing investigation of Huawei. The government's appeal to "apparent authority" is all the more unreasonable where, as here, the employee offered access to corporate information ███████████████████████. Moreover, even if ███████

---

[1] This Reply uses the same terms employed by the government in its Response to refer to the various searches and devices at issue. *See* ECF No. 561 at 2.

[2] The government has produced only a written consent form for the February 2018 search, *see* ECF No. 561-1, but offers no other competent evidence regarding the circumstances of that search. The government produced an audio recording for the April 2018 search, *see* ECF No. 561-2, but has told Huawei it is unable to locate the written consent form for that search, even though it relies on that written consent in its opposition brief, *see* ECF No. 561 at 3.

had had authority to consent to the searches (which he did not), the government would have been constrained by the scope of any such consent: At most, ▊▊▊▊ assented to a search of the April 2018 Laptop for ▊▊▊▊▊▊. The government offers no explanation or evidence to justify its search and seizure of unrelated Huawei business records.

The government's cases, which involve roommates consenting to apartment searches and similar fact patterns, do not come close to justifying the government's conduct here. Moreover, the government's position has significant implications stretching well beyond this case. If the government were correct, any organization—a company, a university, or a political advocacy group—that issues laptops or otherwise provides data access to its employees would have no meaningful Fourth Amendment protections for its data. So long as law enforcement can identify and target an individual employee and procure their assent to a search—for example, by leveraging that employee's personal misconduct, immigration status, or mere lack of sophistication—the government is free to rummage through the organization's confidential information without a warrant. In an age when nearly every employee has a work device with access to the employer's cloud, ratifying this position would grant the government unprecedented access to private information. Neither Second Circuit law nor common sense permits that outcome. The evidence from the February 2018 and April 2018 Laptops should thus be suppressed.

### A. ▊▊▊▊ Had No Authority to Consent to the February 2018 and April 2018 Laptop Searches.

▊▊▊▊ had no authority to consent to searches of his Huawei-issued laptops. Huawei owned the laptops and the confidential business information on those laptops, *see* ECF No. 541-1, and Huawei policies expressly forbade ▊▊▊▊ from granting access to them, *see* Ex. A (Affidavit of Zeng Liang) ¶¶ 8–12, 14–15. Specifically, Huawei policies that were in place throughout 2018 explicitly prohibited employees from sharing company property, including

2

tangible and intangible assets, intellectual property, and business information, with third parties absent express permission from Huawei. *Id.* ¶¶ 10, 14. Those information security policies specifically addressed law enforcement requests for Huawei information and directed Huawei employees to refer such requests to Huawei's Legal Affairs Department. *Id.* ¶ 10. Huawei conditioned access to company property on agreement to these rules. *See id.* ¶¶ 8, 17. Indeed, ▋ ▋ attested in his employment contract that he would "strictly abide" by Huawei's policies not to disclose Huawei information and data without prior written permission from Huawei, *id.* ¶ 17, and he reaffirmed in writing on an annual basis that he was aware of, and would abide by, Huawei's information security policies, *see id.* ¶¶ 13, 16. And each time ▋ logged onto the February 2018 Laptop, he was required to indicate his acknowledgment of a disclaimer stating that ▋ ▋ ▋ Ex. B (Affidavit of Andrew Tappeto ("Tappeto Aff.")) ¶ 14; *see also id.* ¶¶ 15–16. ▋ thus lacked authority to consent to searches of these devices on Huawei's behalf.

The government contends that because Huawei provided ▋ with laptops in order to do his job, Huawei implicitly authorized him to expose the laptops to the government notwithstanding Huawei's express information security policies to the contrary. That is wrong. Abundant Fourth Amendment case law establishes that employers may grant their employees limited access to company property. Organizations could hardly function otherwise. "An employer who allows his employee access to his files does not have an all-or-nothing choice: access for one purpose does not mean access for all purposes." *United States v. Miller*, 800 F.2d 129, 135 (7th Cir. 1986); *see also United States v. McGee*, 564 F.3d 136, 140 (2d Cir. 2009) ("[A]ccess" is not just a question of physical access, but "depends on the understandings

3

communicated by the titular owner to that person."). Thus, "the owner of documents can protect his privacy interests by limiting the power of his agent." *Miller*, 800 F.2d at 135; *see also United States v. Jones*, 335 F.3d 527, 531 (6th Cir. 2003) (an employee's access rights are derivative of and can be overridden by the owner). That is precisely what happened here. By authorizing ▇▇ to use his company-issued laptops for work—but barring him from exposing them to third parties or voluntarily handing them over to law enforcement—Huawei protected its privacy interests in information stored on company property. ▇▇▇'s unilateral decision to violate those policies ▇▇▇▇▇▇▇▇▇▇▇▇ does not establish Huawei's consent.

The government's cases involve the *opposite* scenario: employees who had *unrestricted* authority over their company's property, and consented to law enforcement searches of that property. In *United States v. Jenkins*, for example, the court's decision rested on the fact that the employee had "absolute dominion and control" over the company property, as well as "no direct supervision." 46 F.3d 447, 456 (5th Cir. 1995). Likewise, in *United States v. Murphy*, the court relied on the fact that the owner "put the premises under the immediate and complete control" of the employee, and that there was no evidence that the owner had placed any restrictions on that control. 506 F.2d 529, 530 (9th Cir. 1974) (per curiam). In both cases, employees were granted unrestricted control—which, in those courts' views, established that those employees were authorized to allow the government onto the property. Here, by contrast, ▇▇▇'s access to his laptops was expressly restricted by Huawei's information security policies, which in turn precluded him from sharing them with third parties absent additional authorization.

The government's only laptop case, *United States v. Zhu*, involved an inverse fact pattern that cuts against the government's position. In *Zhu*, the *employee* objected to a search of a laptop consented to by his *employer*. 23 F. Supp. 3d 234, 236–37 (S.D.N.Y. 2014). Rejecting the

4

employee's argument that the employer lacked consent to authorize the search, the court held that the employer's policy governing access to the laptop controlled, and the employee's personal interests did not: "In essence, enabling Zhu to withhold the passwords to the computer would grant him a unilateral means to avoid performing an obligation mutually and consensually agreed to, thus violating an employer policy by which he undertook to be bound, and rendering the employer's security measures, and the expectation it has of its employees' compliance with them, entirely meaningless." *Id.* at 241. That same principle requires ruling against the government here. Just as an employee cannot withhold consent when the employer gives it, he cannot give consent when his employer withholds it.

### B. The Government Cannot Show that It Reasonably Believed ▮▮▮ Had Authority to Consent to the February 2018 and April 2018 Laptop Searches.

The government briefly argues that, even if ▮▮▮ lacked actual authority, the searches were justified based on "apparent authority." To prevail on this basis, the government must show that the "facts available to the officers would warrant [men] of reasonable caution in the belief that [▮▮▮] had authority" to consent to the searches. *Moore v. Andreno*, 505 F.3d 203, 209 (2d. Cir. 2007) (cleaned up) (quoting *Illinois v. Rodriguez*, 497 U.S. 177, 188 (1990)). Here, no FBI agent could have reasonably concluded without further inquiry that Huawei had authorized ▮▮▮ to consent.

First, the government was aware at the time that these laptops belonged to Huawei, not ▮▮▮. The ▮▮▮ on the February 2018 Laptop, for example, stated that ▮▮▮ ▮▮▮. Tappeto Aff. ¶ 14. In the recording of ▮▮▮'s interview from when the April 2018 Laptop was seized, ▮▮▮

5

██████████████████████████████████████████████.[3]  *See* ECF No. 561-2 at 13:32–13:55.  The government has made no showing that it was reasonable to assume that Huawei had permitted its employees to voluntarily share work devices with third parties.  To the contrary, any assumption to that effect would be self-serving and far from the norm.  *See* Ex. C (Affidavit of Gautam Sachdev) ¶¶ 12, 14, 17–18.

Even if an agent could have reasonably thought that ████ might have had authority to consent to a search of his Huawei-issued devices, Second Circuit law required the government to use "reasonable caution" and do something to check.  *Moore*, 505 F.3d at 209.  As one Southern District of New York case put it, "[i]n the event of ambiguity as to the scope of authority over the laptop, the agents were required to ask further questions regarding the scope of her purported authority to consent before relying on it."  *United States v. Nayyar*, 221 F. Supp. 3d 454, 464–65 (S.D.N.Y. 2016).  "Given the unusually intrusive nature of computer searches," the court explained, the "confirmation of the validity of third-party consent is worth the additional time and effort even during the pressures of arrest and investigation."  *Id.* at 465 (collecting cases).  The agents here took no such steps: ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.  *See* ECF No. 561-2 at 13:32–15:26; 22:45–25:46.  That conduct was not reasonably calculated to ascertain the scope of ████'s authority.  And the government offers no evidence that it took any confirmatory steps at all in February 2018.

---

[3] Because of the format in which the government produced the April 2018 Laptop, Huawei was unable to access the log-in screen of that device.  *See* Tappeto Aff. ¶ 18.

6

In any event, the pretense that the investigators were acting on a reasonable belief that Huawei consented to the searches via its employee is utterly belied by the record. By the time of these searches (early 2018), the government had already launched multiple investigations into Huawei and its affiliates, including the one that led to this Indictment. *See, e.g.*, Ex. D ███████; Ex. E ███████; Ex. F ███████; Ex. G ███████. The government was aware that Huawei had retained counsel to represent it in those investigations, and that counsel was negotiating with government attorneys about the production of information. *See, e.g.*, Ex. H ███████. The government has made no effort to show that the agents involved in the searches were acting independently of those investigations; to the contrary, at least for the April 2018 search, ███████. *See* ECF No. 561-2 at 50:40–51:00; 54:37–55:30; 1:08:38–1:10:59; 1:26:34–1:42:02; 1:47:44–1:47:55. The searches were thus not performed based on a reasonable belief that Huawei had authorized its employees to hand over to agents any information in their possession; rather, the searches were a deliberate attempt to circumvent Huawei's choice to respond to the federal government through counsel.

\*\*\*

The Court should not issue a ruling that would grant the government authority to access any organization's private data whenever it can pressure an employee by threatening prosecution, deportation, or worse. The government needed a warrant to search Huawei's devices, or it needed valid consent. Because it lacked both, the Court should suppress the devices.

7

C. **Even If ▮▮▮ Had Had Authority to Consent to the Search of the April 2018 Laptop, He Consented Only to a Search for ▮▮▮.**

Even if ▮▮▮ had had authority to consent to the search of the April 2018 Laptop, the record makes clear that his consent was limited to a search for ▮▮▮. In assessing the scope of a person's consent, courts must assess what "the typical reasonable person [would] have understood" the scope to be based on "the exchange between the officer and the suspect." *United States v. Gandia*, 424 F.3d 255, 265 (2d Cir. 2005). The government asked ▮▮▮ for permission to ▮▮▮. *See* ECF No. 561-2 at 13:32–15:26; 22:45–25:46. Although ▮▮▮, *see id.* at 13:32–14:32; 19:37–21:14, the government represents that he signed a consent form encompassing all of his personal and work devices, *see* ECF No. 561 at 3. Even if that were the case, ▮▮▮'s acquiescence was plainly ▮▮▮. *See* ECF No. 561-2 at 13:32–15:26; 22:45–25:46. Accordingly, the government could not search for (or seize) other materials absent additional justification that it has made no attempt to provide.[4]

II. **The Government Should Not Be Allowed to Defend Its Searches, Including the January 2013 Laptop Search, Through Ex Parte Proceedings.**

The Court should not permit the government to justify its search of the January 2013 Laptop and the recorded conversation between two Huawei employees ex parte. Ex parte briefing

---

[4] The government's brief makes no reference to the plain view doctrine, and any such argument is thus waived. In any event, the Second Circuit applies a strict standard for plain view in the context of digital searches that the government cannot meet. As the Circuit explained in the context of a search pursuant to a warrant, "the plain view exception is not available" to the extent the government's "digital search protocols target information outside the scope of the valid portion of the warrant." *United States v. Galpin*, 720 F.3d 436, 451 (2d Cir. 2013). Similarly, if an employee consents to a search ▮▮▮, the government may review files only to the extent they would illuminate whether ▮▮▮. Search protocols that involve analyzing business documents would impermissibly "target information" outside the scope of consent, and their fruits must thus be suppressed. *Id.*

8



is an extraordinary remedy that should "only be used where necessary," *United States v. Bin Laden*, 126 F. Supp. 2d 264, 287 (S.D.N.Y. 2000), and that is "particularly [disfavored] in the criminal context" where there are "heightened due process concerns," *see United States v. Rechnitz*, 75 F.4th 131, 146 (2d Cir. 2023).  No extraordinary circumstances require proceeding ex parte here, and due process counsels against doing so.  In response to Huawei's suppression motion, the government must prove that each search falls into an exception to the warrant requirement, *United States v. Delva*, 858 F.3d 135, 148 (2d Cir. 2017), which requires a careful analysis of the facts surrounding each search—facts that Huawei is entitled to dispute.



The interrogation recorded in April 2018 makes clear that ███████████ ███████████ ███████████ . *See* ECF No. 561-2 at 5:16–6:25; 13:14–13:32; 18:49–19:35; 21:13–25:09.  That means ███ ███████████ — ███████████ ███ —or even when he was stopped by agents at Dallas-Fort Worth Airport in February 2018. *Id.*  Two possible options remain:  First, that the government ███████████ ███████████ but nonetheless permitted him to ███████ and travel in and out of the United States for years.  Or second, that in 2018, the government recognized ███ ███ 's possible utility to the Huawei investigation, finally searched the devices it had previously

9

seized in 2013, and .

The more likely option is the latter, which suggests that the government cannot rely on any 2013 legal authorization because it only searched the January 2013 Laptop years later.

If that is the case, the search of the January 2013 Laptop violated the Fourth Amendment.

 Further, the Fourth Amendment requires the government to complete its review, *i.e.*, execute the search, within a "reasonable" amount of time. *United States v. Metter*, 860 F. Supp. 2d 205, 215 (E.D.N.Y. 2012); *see also United States v. Graziano*, 558 F. Supp. 2d 304, 316 (E.D.N.Y. 2008). A five-year gap between seizure and search is not "reasonable," as "[t]here can be no reasonably timely review where authorities hold electronics for years without even beginning to look at the ESI stored therein." *United States v. Daskal*, 676 F. Supp. 3d 153, 184 (E.D.N.Y. 2023). The government bears the burden of demonstrating it executed the search in a "reasonable" timeframe. It has not done so, and the search of the January 2013 Laptop should therefore be suppressed.

## CONCLUSION

For the foregoing reasons, Huawei respectfully requests that the Court grant Huawei's Motion to Suppress.[5]

---

[5] In its opposition brief, the government states that it does not intend to introduce the ▓▓ Recording in its case-in-chief, ECF No. 561 at 11, and the government subsequently confirmed to Huawei that it does not intend to offer any evidence about ▓▓▓▓▓▓ (including other evidence of the interrogation captured in the ▓▓▓ Recording) in its case-in-chief. Huawei accordingly agrees with the government that "the Court need not reach" the underlying Sixth Amendment question at this time. *See id*. Like the government, Huawei reserves the right to object on Sixth Amendment grounds should the government seek to introduce such evidence in the future.

Respectfully submitted,

/s/ David Bitkower

| | | |
|---|---|---|
| David Bitkower | Douglas A. Axel | Brian M. Heberlig |
| Matthew S. Hellman | Michael A. Levy | Ryan P. Poscablo |
| JENNER & BLOCK LLP | Ellyce R. Cooper | William L. Drake |
| 1099 New York Avenue, NW | Frank R. Volpe | Jessica I. Rothschild |
| Washington, D.C. 20001 | Melissa Colón-Bosolet | STEPTOE LLP |
| (202) 639-6048 | Daniel J. Hay | 1114 Avenue of the Americas |
| dbitkower@jenner.com | SIDLEY AUSTIN LLP | New York, NY 10036 |
| | 787 7th Avenue | (212) 506-3900 |
| | New York, NY 10019 | rposcablo@steptoe.com |
| | (212) 839-5300 | |
| | daxel@sidley.com | |

*Counsel for Huawei Technologies Co., Ltd., Huawei Device Co., Ltd., Huawei Device USA Inc., and Futurewei Technologies, Inc.*

11