NJM:AAS/MAA/TGS/MJC
F. #2017R05903

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA                                    ██████████

    - against -                                           18-CR-457 (S-3) (AMD)

HUAWEI TECHNOLOGIES CO., LTD., ET AL.,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

MEMORANDUM OF LAW IN SUPPORT OF THE
GOVERNMENT'S PRELIMINARY MOTIONS *IN LIMINE*
TO ADMIT CERTAIN EVIDENCE AND PRECLUDE CERTAIN EVIDENCE AT TRIAL

| | | |
|---|---|---|
| JOSEPH NOCELLA, JR.<br>United States Attorney<br>Eastern District of New York | MARGARET A. MOESER<br>Chief<br>Money Laundering, Narcotics<br>and Forfeiture Section<br>Criminal Division<br>U.S. Department of Justice | SCOTT M. LARA<br>Acting Chief<br>Counterintelligence and<br>Export Control Section<br>National Security Division<br>U.S. Department of Justice |
| ALEXANDER A. SOLOMON<br>MEREDITH A. ARFA<br>ROBERT M. POLLACK<br>MATTHEW SKURNIK<br>Assistant U.S. Attorneys<br>     (Of Counsel) | TAYLOR G. STOUT<br>MORGAN J. COHEN<br>JASMIN SALEHI FASHAMI<br>Trial Attorneys | SEAN O'DOWD<br>Trial Attorney |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

RELEVANT BACKGROUND ............................................................................................... 1

ARGUMENT ....................................................................................................................... 3

I.    The Court Should Preclude Cross-Examination and Evidence Regarding the
      Victim Banks' Prior Enforcement Proceedings and Related Evidence ............................ 3

      A. Background ............................................................................................................ 3

      B. Applicable Law ..................................................................................................... 7

      C. Argument ............................................................................................................... 7

II.   The Court Should Admit the Statement of Facts ........................................................... 11

      A. Background .......................................................................................................... 11

      B. Applicable Law ................................................................................................... 17

      C. Argument ............................................................................................................. 17

III.  The Court Should Set a Discovery Schedule as to the Corporate Defendants ............... 34

      A. Applicable Law ................................................................................................... 34

      B. Argument ............................................................................................................. 35

IV.   Request for Sealing ..................................................................................................... 38

CONCLUSION ................................................................................................................... 39

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bruton v. United States*,
391 U.S. 123 (1968)..................................................................................... 32

*Crawford v. Washington*,
541 U.S. 36 (2004)................................................................................. 30, 31

*Experience Hendrix, LLC v. Chalpin*,
461 F. Supp. 2d 165 (S.D.N.Y. 2006) .................................................... 24

*Figueroa v. Mann*,
No. 90-CV-1965 (PKL), 1992 WL 51542 (S.D.N.Y. Mar. 10, 1992).................................. 30

*Hempstead Video, Inc. v. Incorporated Village of Valley Stream*,
409 F.3d 127 (2d Cir. 2005)........................................................................ 21

*Holloway v. Arkansas*,
435 U.S. 475 (1978).................................................................................... 21

*Lugosch v. Pyramid Co.*,
435 F.3d 110 (2d Cir. 2006)........................................................................ 38

*Pappas v. Middle Earth Condo. Ass'n*,
963 F.2d 534 (2d Cir. 1992).................................................................. 18, 19

*People v. Roldan*,
35 Cal.4th 646 (Cal. 2005)......................................................................... 31

*Reed v. May*,
134 F.4th 455 (6th Cir. 2025) ..................................................................... 31

*Richardson v. Marsh*,
481 U.S. 200 (1987).................................................................................... 32

*Salinas v. United States*,
522 U.S. 52 (1997)...................................................................................... 33

*Sanchez v. Dexter*,
No. 05-CV-795, 2008 WL 1766729 (C.D. Cal. Apr. 14, 2008) ............................... 31

*Secs. Ex. Comm'n v. Geon Indus., Inc.*,
531 F.2d 39 (2d Cir. 1976)..................................................................... 19, 23

*Smith v. Arizona*,
    602 U.S. 779 (2024) ................................................................................ 30

*United States v. Aiello*,
    814 F.2d 109 (2d Cir. 1987) ................................................................... 21

*United States v. Amodeo*,
    44 F.3d 141 (2d Cir. 1995) ..................................................................... 38

*United States v. Aponte*,
    31 F.3d 86 (2d Cir. 1994) ....................................................................... 24

*United States v. Aref*,
    533 F.3d 72 (2d Cir. 2008) ..................................................................... 38

*United States v. Barrow*,
    400 F.3d 109 (2d Cir. 2005) ................................................................... 28

*United States v. Bhimani*,
    492 F. Supp. 3d 376 (M.D. Pa. 2020) .............................................. 20, 31

*United States v. Brothers Const. of Ohio*,
    219 F.3d 300 (4th Cir. 2000) ............................................................ 19, 20

*United States v. Flecha*,
    539 F.2d 874 (2d Cir. 1976) ........................................................ 23, 24, 25

*United States v. Hsia*,
    No. 98-CR-57, 2000 WL 195067 (D.D.C. Jan. 21, 2000) ...................... 34

*United States v. Jass*,
    569 F.3d 47 (2d Cir. 2009) ................................................................ 30, 32

*United States v. King*,
    134 F.3d 1173 (2d Cir. 1998) ...................................................... 19, 20, 31

*United States v. Miller*,
    800 F. App'x 39 (2d Cir. 2020) ............................................................ 9, 11

*United States v. Napout*,
    No. 15-CR-252 (PKC), 2017 WL 6375729 (E.D.N.Y. Dec. 12, 2017) ................... 35

*United States v. Orellana*,
    341 F. App'x 501 (11th Cir. 2009) ................................................... 30, 31

*United States v. Petraia Maritime Ltd.*,
    489 F. Supp. 2d 90 (D. Me. 2007) ...................................................................... 19

*United States v. Saks*,
    964 F.2d 1514 (5th Cir. 1992) ........................................................................... 31

*United States v. Shulman*,
    624 F.2d 384 (2d Cir. 1980) ...................................................................... 23, 24

*United States v. Slocum*,
    695 F.2d 650 (2d Cir. 1982) ............................................................................. 32

*United States v. Smothers*,
    652 F. Supp. 3d 271 (E.D.N.Y. 2023) ............................................................... 35

*United States v. Stein*,
    410 F. Supp. 2d 316 (S.D.N.Y. 2006) ............................................................... 21

*United States v. Summers*,
    598 F.2d 450 (5th Cir. 1979) ........................................................................... 19

*United States v. Thomas*,
    377 F.3d 232 (2d Cir. 2004) ............................................................................. 11

*United States v. Tocco*,
    135 F.3d 116 (2d Cir. 1998) ............................................................................. 24

*United States v. Tyrell*,
    840 F. App'x 617 (2d Cir. 2021) ...................................................................... 23

*United States v. West*,
    No. 08-CR-669, 2010 WL 2698300 (N.D. Ill. July 6, 2010) ............................. 19

*United States v. Yannotti*,
    541 F.3d 112 (2d Cir. 2008) ............................................................................. 33

*United States v. Yi*,
    460 F.3d 623 (5th Cir. 2006) ........................................................................... 31

**Rules**

Federal Rule of Criminal Procedure 6 ...................................................................... 38

Federal Rule of Criminal Procedure 16 .................................................................... 34

Federal Rule of Criminal Procedure 26.2 ........................................................... 34, 37

Federal Rule of Evidence 401 ................................................................................ passim

Federal Rule of Evidence 402 ....................................................................................... 7

Federal Rule of Evidence 403 ................................................................................ passim

Federal Rule of Evidence 410 ..................................................................................... 28

Federal Rule of Evidence 801 ................................................................................ passim

**Regulations**

22 N.Y.C.R.R. § 1200 .................................................................................................. 21

PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in support of its motions *in limine* seeking: (1) to preclude the defendants from cross-examining victim-bank witnesses and introducing evidence about the victim banks' prior enforcement proceedings and purported related compliance failures; and (2) to admit the statement of facts incorporated in the deferred prosecution agreement of co-defendant Wanzhou Meng, also known as Sabrina Meng and Cathy Meng. The government also respectfully requests that the Court set a discovery schedule as to the defendants.

For the reasons below, the Court should grant the government's motions *in limine*.[1]

RELEVANT BACKGROUND

The Third Superseding Indictment variously charges defendants Huawei Technologies Co., Ltd. ("Huawei Tech"), Huawei Device Co., Ltd. ("Huawei Device"), Huawei Device USA Inc. ("Huawei Device USA"), and Futurewei Technologies, Inc. ("Futurewei," and together with Huawei Tech, Huawei Device, and Huawei Device USA, the "Corporate Defendants") with racketeering conspiracy, in violation of 18 U.S.C. § 1962(d); conspiracy to steal trade secrets, in violation of 18 U.S.C. § 1832(5); wire fraud and wire fraud conspiracy, in violation of 18 U.S.C. §§ 1343 and 1349; bank fraud and bank fraud conspiracy, in violation of 18 U.S.C. §§ 1344 and 1349; conspiracy to defraud the United States, in violation of 18 U.S.C. § 371; conspiracy to violate and violations of the International Emergency Economic Powers Act ("IEEPA"), in violation of 50 U.S.C. § 1705(a); money laundering conspiracy, in violation of 18

---

[1] Pursuant to the Court's October 2, 2025 scheduling order, the instant motion includes only preliminary motions *in limine*. The government anticipates filing additional motions *in limine* as appropriate.

1

U.S.C. § 1956(h); and conspiracy to obstruct justice, in violation of 18 U.S.C. § 1512(k).   ECF No. 126.

As relevant to the instant motion, the government alleges—and expects to prove at trial—that Huawei Tech engaged in a long-running scheme to deceive numerous global financial institutions regarding Huawei Tech's business activities in Iran.   Specifically, beginning in 2007, Huawei Tech employees falsely represented that Skycom Tech Co. Ltd. ("Skycom"), a company in Iran, was not an affiliate of Huawei Tech.   In fact, Skycom was wholly controlled by Huawei Tech and functioned as its Iran-based subsidiary.   Huawei Tech also falsely claimed that it did not violate U.S. or other laws or regulations related to Iran.

Huawei Tech further relied on its global banking relationships for banking services that included processing U.S.-dollar transactions through the United States.   U.S. laws and regulations generally prohibited these financial institutions from processing transactions related to Iran through the United States, and consequently, these financial institutions could have faced civil or criminal penalties for processing such transactions.   Relying on the repeated misrepresentations by Huawei Tech, these financial institutions nevertheless continued their banking relationships with Huawei Tech, with one financial institution clearing more than $100 million worth of Skycom-related transactions through the United States between 2010 and 2014.

Trial is scheduled to begin on May 4, 2026.

<u>ARGUMENT</u>

For the reasons below, the government respectfully submits that the Court should

grant the government's motions *in limine*.

I.     The Court Should Preclude Cross-Examination and Evidence Regarding the Victim Banks'
       <u>Prior Enforcement Proceedings and Related Evidence</u>

The government respectfully moves *in limine* to preclude the Corporate Defendants

from: (1) cross-examining victim-bank witnesses about the victim banks' prior enforcement

proceedings and purported related compliance failures, and (2) introducing extrinsic evidence of

those prior enforcement proceedings, including, but not limited to, statements of fact incorporated

into publicly filed deferred prosecution and plea agreements, and other resolution-related

documents, to which the victim banks were parties.   Magistrate Judge Cheryl L. Pollak has

already denied the Corporate Defendants' motion to compel production of evidence in the

government's possession relating to these topics, and this Court subsequently affirmed that

decision.   Cross-examination and extrinsic evidence regarding the prior enforcement proceedings

should be precluded pursuant to Federal Rule of Evidence 401 because they are irrelevant to any

disputed factual issue in this case.   Alternatively, such cross-examination and extrinsic evidence

should be precluded pursuant to Federal Rule of Evidence 403 because any probative value—and

there is none, as Judge Pollak's decision reflects—is substantially outweighed by the risk of

confusing and misleading the jury, wasting time, and unduly prejudicing the government.

A.     <u>Background</u>

1.     <u>The Order</u>

The Corporate Defendants previously moved to compel production of case files

associated with prior, unrelated enforcement proceedings against ███████████████████

███████████████████████████ (collectively, the "Victim Banks" or "Banks")—

3

the same banks they subsequently defrauded, as alleged in the bank and wire fraud counts of the Third Superseding Indictment.[2]   The Corporate Defendants claimed that these materials were discoverable because the Victim Banks' past compliance failures purportedly undermine the materiality of the misstatements at issue in the instant case.   *See* ECF No. 536.   Judge Pollak denied the motion, reasoning that, because materiality is assessed from the objective perspective of a reasonable decisionmaker, the prior enforcement proceedings against the Victim Banks (collectively, the "Prior Enforcement Proceedings") do not bear on the materiality of the Corporate Defendants' misstatements in this case.   *See* ECF Nos. 558, 559 (the "Order") at 11-26.

This Court subsequently affirmed Judge Pollak's decision.   *See* Minute Order (Sept. 30, 2025).

2.   The Prior Enforcement Proceedings

As relevant to this motion, the Prior Enforcement Proceedings are described below.

a.   



---

[2]        Huawei Tech is charged in all of the bank and wire fraud counts, whereas Huawei Device, Huawei Device USA, and Futurewei (the "Subsidiary Corporate Defendants") are charged only in one of the conspiracy to commit wire fraud counts (Count Three), which relates to the theft of trade secrets, not the fraud on the Victim Banks.



b. ▮



c. ████

████

d. 

B.     Applicable Law

Under Federal Rule of Evidence 401(b), evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."   Fed. R. Evid. 401(b).   If evidence is not relevant, it is not admissible.   *See* Fed. R. Evid. 402.   Moreover, under Federal Rule of Evidence 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."   Fed. R. Evid. 403.

C.     Argument

*First*, the Court should preclude cross-examination and evidence regarding the Prior Enforcement Proceedings because they are irrelevant to any disputed issue in this case, including the materiality of the Corporate Defendants' misstatements.   Noting that "the Court has not found case law where a court actually holds that past enforcement proceedings against the

7

alleged victims go to materiality under an objective standard," Judge Pollak explained that it was not "immediately clear" why documents that "do not involve [the Corporate Defendants] but are related to past enforcement actions against the Banks based on their dealings with other entities would be relevant to the defense in this case."    Order at 21-22.    Such reasoning applies with equal force to cross-examination and extrinsic evidence regarding the Prior Enforcement Proceedings, which involved customers, country-specific sanctions (*e.g.*, Cuba, Libya, Sudan, and Burma), and conduct that are not relevant here.

As Judge Pollak explained, the Victim Banks are not "monolithic entities that considered discernable, consistent factors across their different customers," let alone across time, place, and affiliate office.    *Id.* at 24.    Judge Pollak accordingly rejected the Corporate Defendants' claim that the Victim Banks' decision-making practices at other times with respect to other customers operating in other high-risk countries were "relevant to determining the objective materiality of [the Corporate Defendants'] alleged misrepresentations" regarding Iran during the relevant time period in this case.    *Id.*    As she explained, assuming that "the factors related to customers other than [the Corporate Defendants] would be factors employed by the Victim Banks in their dealings with [the Corporate Defendants]" is "little more than speculation."    *Id.*

Indeed, by the time [the Corporate Defendants] made the misstatements on which the bank and wire fraud counts are premised, the policies, practices, and personnel of the Victim Banks had undergone significant changes.    The primary misstatements at issue in the bank and wire fraud counts occurred in December 2012, August 2013, and in 2017.    *See* ECF No. 126 ¶¶ 74-75, 83.    By those times, ██████████████████████████████

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

8



In sum, cross-examination and evidence regarding the Prior Enforcement Proceedings should be precluded because they are factually and legally irrelevant to the jury's assessment of the materiality of the Corporate Defendants' fraudulent statements, or any other element of the bank and wire fraud charges. *See* Fed R. Evid. 401; *see also United States v. Miller*, 800 F. App'x 39, 41 (2d Cir. 2020) (affirming district court's refusal to admit evidence that Wells Fargo had entered into a settlement with DOJ in connection with civil mortgage fraud claims arising from its lax underwriting standards where defendant was charged with mortgage fraud against Wells Fargo, and finding "no connection" between the misconduct in the settlement and the conduct at issue). Even if cross-examination of Victim-Bank witnesses regarding the Prior Enforcement Proceedings would enable the Corporate Defendants to elicit that the Victim Banks' then-existing sanctions-related policies "existed only on paper"—as the Corporate Defendants previously claimed—"the case law does not support a finding that this would assist in determining materiality under an objective standard or would otherwise be material to the defense." Order at 24. That is especially true here, where, as described above, the policies, practices, and personnel

9

at the Victim Banks underwent significant changes in the years prior to the Corporate Defendants' primary fraudulent statements.

       *Second*, to the extent there is any probative value to cross-examination or evidence regarding the Prior Enforcement Proceedings—and there is not—it is substantially outweighed by the risk of confusing and misleading the jury, wasting time, and unduly prejudicing the government.  *See* Fed. R. Evid. 403.  Introduction of evidence regarding the Prior Enforcement Proceedings would require introduction of considerable additional evidence to provide context, which would be needlessly confusing and would needlessly lengthen the trial.  For example, introduction of the Prior Enforcement Proceedings would require the government, or the Court, to explain U.S. sanctions laws applicable to countries that are irrelevant to the facts of this case (*e.g.*, ███████████████████) during time periods that preceded the Corporate Defendants' offense conduct, as well as the differences between a guilty plea, a deferred prosecution agreement, and a civil consent order with a bank regulator.   Moreover, because corporate criminal conduct is distinct from individual criminal liability and the law permits the government to charge corporations criminally for the actions of its employees (even when concealed from the corporation), permitting cross-examination or evidence regarding the Prior Enforcement Proceedings only heightens the risk of confusion.

       Finally, cross-examination or evidence regarding the Prior Enforcement Proceedings will expose the jury to the fact that the Victim Banks previously facilitated billions of dollars of U.S. dollar-denominated transactions for entities associated with sanctioned countries, which threatens to unduly prejudice the jury's perception of the Victim Banks and Victim-Bank witnesses.   Permitting cross-examination or evidence concerning the Prior Enforcement Proceedings thus presents significant risk of putting the Victim Banks themselves on trial—

precisely the type of risk that Rule 403 is designed to prevent.  *See Miller*, 800 F. App'x at 41 (affirming district court's refusal to admit, in a mortgage fraud prosecution, evidence of Wells Fargo's settlement with DOJ because the probative value of the settlement, "if it existed, was substantially outweighed by the risk of unfair prejudice . . . given the scale of the misconduct to which Wells Fargo admitted"); *see also United States v. Thomas*, 377 F.3d 232, 240-44 (2d Cir. 2004) (negligence of the victim is not a defense to fraud).

Accordingly, the Court should preclude the Corporate Defendants from cross-examining the government's Victim-Bank witnesses or introducing extrinsic evidence about the Prior Enforcement Proceedings.

## II.    The Court Should Admit the Statement of Facts

The government respectfully moves *in limine* to admit the statement of facts attached to and incorporated in Meng's deferred prosecution agreement dated September 22, 2021 (the "Statement of Facts").  *See* Ex. A (Statement of Facts).  The Statement of Facts is admissible because it is highly relevant evidence, it is not hearsay or otherwise precluded by the Federal Rules of Evidence, and its admission does not violate the Confrontation Clause.

### A.    Background

#### 1.    Charges Against Meng

Meng is the longstanding Chief Financial Officer ("CFO") of Huawei Tech and the daughter of Huawei Tech's founder.  *See* Ex. A at 1.  In August 2018, a grand jury sitting in the Eastern District of New York returned an indictment charging Meng, Huawei Tech, and Skycom with conspiracy to commit bank fraud, conspiracy to commit wire fraud, bank fraud, and wire fraud.  *See* ECF No. 25.  The charges related to Meng's participation in the above-described conspiracy to misrepresent to the Victim Banks the nature of Huawei Tech's business in Iran, including Huawei Tech's control of Skycom, which functioned as Huawei Tech's Iran-based

11

subsidiary.   As part of that conspiracy, Meng made false statements to a senior ███ executive in August 2013 in order to deceive ███ and ensure that ███ would continue its banking relationship with Huawei Tech and its subsidiaries and affiliates.   *See id.* ¶¶ 21-23.

On or about December 6, 2018, pursuant to a request from the United States, Canadian authorities arrested Meng in connection with the indictment, and the United States subsequently sought Meng's extradition from Canada.   In February 2020, a grand jury in the Eastern District of New York returned the Third Superseding Indictment, charging Meng with the same crimes with which the original indictment charged her.   *See* ECF No. 126 ¶¶ 76-79.   The Third Superseding Indictment also charges Huawei Tech and Skycom with the same financial fraud crimes as the original indictment.   *See generally id.*

On or about September 22, 2021, Meng entered into a proposed deferred prosecution agreement with the government, which incorporated, as Attachment A, the Statement of Facts.   *See* ECF No. 323-1.   The agreement was signed by Meng, a translator, Meng's counsel, and the government.   *See id.* at 4.

On September 24, 2021, Meng appeared virtually at a hearing in the instant case, during which this Court approved the proposed deferred prosecution agreement.   During the hearing, Meng, with her counsel present, swore an oath to provide truthful answers to the Court's questions.   *See* Ex. B at 4 (plea hearing transcript).   Under oath, Meng confirmed that the Statement of Facts had been translated into Mandarin, *id.* at 13, that "every statement of fact that is in the Statement of Facts [is] true and accurate," *id.* at 14, and that she did not "disagree with any statement of facts that is in the Statement of Facts," *id.*

In the Statement of Facts, Meng admitted, among other things:

- Both Meng and Huawei Tech made multiple material misrepresentations to global financial institutions that provided international banking services to Huawei Tech.

- For example, in 2013, while acting as Huawei Tech's CFO, Meng made numerous material misrepresentations to an executive of ███[3] regarding Huawei Tech's business operations in Iran. Meng made many of these misrepresentations during a meeting with the executive that was also attended by Huawei Tech's Treasurer. The Treasurer did not correct any of Meng's false statements.

- During the meeting, Meng delivered a PowerPoint presentation written in Chinese, which was translated by an interpreter in English to enable Meng to be precise in her language.

- In her presentation, Meng falsely characterized Skycom as a "business partner" and a "third party" working with Huawei Tech. Those statements were false because Huawei Tech controlled Skycom, and Skycom employees were actually Huawei Tech employees. It would have been material to ███ to know that Huawei Tech controlled Skycom.

- Meng also told the ███ executive that Huawei Tech had "sold all its shares in Skycom." That statement was false because Huawei Tech had "sold" its shares to an entity that Huawei Tech controlled. It would have been material to ███ to know that Skycom was transferred from one Huawei Tech-controlled entity to another.

- In addition, Meng falsely stated that Huawei Tech "operates in Iran in strict compliance with applicable laws, regulations and sanctions" and that "there has been no violation of export control regulations" by Huawei Tech or any third party with which Huawei Tech worked. Those statements were false because Huawei Tech's operation of Skycom—which caused the Victim Banks to provide prohibited services, including banking services, for Huawei Tech's Iran-based business while Huawei Tech concealed Skycom's link to Huawei Tech—was in violation of sanctions regulations. Moreover, Huawei Tech caused Skycom to conduct approximately $100 million worth of U.S.-dollar transactions through ███ that cleared the United States, at least some of which supported its work in violation of U.S. law.

- Following the meeting, at ███'s request, Meng prepared an English version of the PowerPoint presentation and provided a hard copy to ███. The representations in the English version of the PowerPoint presentation closely tracked the ones Meng gave during the meeting.

---

[3] ███ is referenced in the Statement of Facts as "Financial Institution 1."

- After the meeting and receiving the PowerPoint presentation, ██████ decided to continue its relationship with Huawei Tech.  The other Victim Banks similarly continued their respective relationships with Huawei Tech.

*See* Ex. A.

Meng's admissions in the Statement of Facts are highly relevant to the issues at trial.  Indeed, standing alone, they satisfy the core elements of the related financial fraud charges—*i.e.*, Counts Four through Nine, *see* ECF No. 126—against Huawei Tech, and also are relevant to the elements of Counts Ten through Sixteen.[4]  At bottom, Meng, while acting as Huawei Tech's principal, deceived ██████ about Huawei Tech's longstanding control over Skycom.  Meng did so to preserve Huawei Tech's existing banking relationships, including access to the banks' funds in U.S. dollar-clearing transactions.  Further, Meng's admissions acknowledge the materiality of the misrepresentations to ████, as well as that other Huawei Tech personnel similarly deceived other financial institutions about Huawei Tech's relationship with Skycom.

2.    Meng's Subsequent Promotion at Huawei Tech

After this Court accepted the deferred prosecution agreement, Meng returned to the People's Republic of China (the "PRC"), where, according to public reporting, employees at Huawei Tech's offices in the PRC gave her a "hero's welcome."[5]  According to Huawei Tech's

---

[4]    Only Huawei Tech—and not any of the Subsidiary Corporate Defendants—is charged in the financial fraud charges against Meng.  The Subsidiary Corporate Defendants are each named defendants in the racketeering conspiracy charge (Count One), which encompasses, among other matters, the financial fraud charges against Meng and Huawei Tech.  However, as discussed *infra*, in describing the Skycom scheme, the Third Superseding Indictment references only conduct by Huawei Tech.

[5]    *See, e.g.*, "*South China Morning Post*, "Hero's Welcome for Meng Wanzhou at Huawei Offices in China After Extradition Battle and Quarantine," YouTube (Oct. 27, 2021), https://www.youtube.com/watch?v=4bYlTKfb2Rs (last accessed Dec. 1, 2025).

website, Meng continues to work for Huawei Tech, where her current title is "Deputy Chairwoman, Rotating Chairwoman, CFO."[6]   A notice on Huawei Tech's website explains that Meng will serve as Rotating and Acting Chair of Huawei Tech from October 1, 2025 through March 31, 2026, during which period she will "head the Board of Directors and its Executive Committee."[7]   Previously, from October 1, 2024 through March 31, 2025 and April 1, 2023 to September 30, 2023, Meng similarly held the position of "Rotating and Acting Chair of Huawei," during which period she "serve[d] in the company's top leadership position and head[ed] the Board of Directors and its Executive Committee."[8]   Based on information available on Huawei Tech's website and the background information in the Statement of Facts, it does not appear that Meng served as a Rotating or Acting Chairwoman prior to April 1, 2023.   That is, after Meng admitted under oath that she committed criminal conduct in her capacity as Huawei Tech's CFO, Huawei Tech promoted her.

The government is not aware of any public information suggesting that Huawei Tech took any disciplinary measures against Meng after she acknowledged in sworn testimony before this Court that she deceived ▓▓▓▓ as to Skycom's activities in Iran and the relationship

---

[6]      "Ms. Meng Wanzhou (Sabrina Meng)," Huawei Tech, https://www.huawei.com/en/executives/board-of-directors/meng-wanzhou (last accessed Dec. 1, 2025).

[7]      "Notice on Rotating Chair Tenure" (Sept. 30, 2025), Huawei Tech, https://www.huawei.com/en/news/2025/9/rotating-chair-tenure; *see also* "Be Meticulous, Remain Dedicated, and Stay Persistent for a Bright Future" (Mar. 2025), Sabrina Meng, Deputy Chairwoman, Rotating Chairwoman, and CFO, Huawei Tech, https://www.huawei.com/en/huaweitech/publication/202501/graduation-ceremony-postgraduate-students (identifying Meng as "Deputy Chairwoman, Rotating Chairwoman, and CFO, Huawei").

[8]      "Notice on Rotating Chair Tenure" (Sept. 30, 2024), Huawei Tech, https://www.huawei.com/en/news/2024/9/Rotating-Chair-Tenure; "Notice on Rotating Chair Tenure" (Mar. 31, 2023), Huawei Tech, https://www.huawei.com/en/news/2023/3/rotating-chair-tenure.

15

between Huawei Tech and Skycom.   Nor, to the government's knowledge, has Huawei Tech ever publicly disavowed the Statement of Facts or Meng's admissions therein.

> 3.    Meng's Legal Representation

During the instant prosecution, Meng's attorneys have also represented the Corporate Defendants, and the Corporate Defendants' attorneys acted to further Meng's interests.

As context, Meng was represented by the law firm Steptoe & Johnson LLP, which subsequently became Steptoe LLP (together with Steptoe & Johnson LLP, "Steptoe"). Throughout the instant prosecution, Steptoe has also represented the Corporate Defendants. Beginning no later than 2019, in the instant prosecution, different teams at Steptoe represented Meng, on the one hand, and Huawei Tech and Huawei Device USA,[9] on the other hand; Steptoe purportedly imposed a "wall" between the two Steptoe criminal defense teams.   *See* Ex. C (September 10, 2019 emails).   In early December 2019, the Steptoe team representing Huawei Tech and Huawei Device USA executed the protective order in the instant case, which at the time governed the production of discovery to Huawei Tech and Huawei Device USA (and later to all of the Corporate Defendants); Meng was not a party to that protective order.   *See* ECF Nos. 110 (letter from Huawei Tech's and Huawei Device USA's attorneys at Sidley Austin LLP ("Sidley") and Jenner & Block LLP ("Jenner") providing notice to the Court that Steptoe would "serve as additional Defense Counsel pursuant to the Protective Order"), 110-1 (protective order signature page executed by Steptoe).   The Steptoe attorney who executed the protective order did so in his capacity as counsel for Huawei Tech and Huawei Device USA, as expressly stated in his signature block.   *See* ECF No. 110-1.

---

[9]    Defendants Huawei Device and Futurewei at that point had not been charged.

Steptoe also, since 2019, has represented two of the Corporate Defendants charged in the related prosecution in the Western District of Washington (the "WDWA Prosecution").[10] *See* ███████████████████████████████ And prior to that, Steptoe represented one of those corporate defendants in related civil litigation in the Western District of Washington.  *See* ████████████████████████████████████ ███

B.    Applicable Law

Although an out-of-court statement is generally inadmissible hearsay where offered for the truth of the matter asserted in the statement, under Federal Rule of Evidence 801(d)(2), a party's own statement—including adoptive admissions under Rule 801(d)(2)(B) and statements of agents or employees under Rule 801(d)(2)(D)—is not hearsay if offered against that party.

C.    Argument

This Court should admit the Statement of Facts against Huawei Tech because it is admissible under the Federal Rules of Evidence, and its admission does not violate any of the Corporate Defendants' Confrontation Clause rights.

1.    The Statement of Facts Is Admissible Under the Federal Rules of Evidence

The Statement of Facts is relevant and not hearsay under the Federal Rules of Evidence.

a.    The Statement of Facts Is Relevant

As set forth above, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in

---

[10]    The facts underlying the theft of trade secrets charges in the WDWA Prosecution form a component of the racketeering and theft of trade secrets conspiracy charges in the instant prosecution.

determining the action." Fed. R. Evid. 401. It is beyond dispute that the Statement of Facts—in which a senior Huawei Tech principal admits to certain of the very crimes charged in the Third Superseding Indictment—is highly relevant evidence.

> b. The Statement of Facts Is Not Hearsay

The Statement of Facts is not hearsay because it is admissible pursuant to both Rule 801(d)(2)(D) as a statement of an agent or employee and Rule 801(d)(2)(B) as an adoptive admission.

> i. The Statement of Facts Is Not Hearsay Because It
> Is a Statement of an Opposing Party's Agent or Employee

> a) Legal Standard

Under Rule 801(d)(2)(D), an out-of-court statement is not hearsay if it is "offered against an opposing party and . . . was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(D). A party seeking to admit a statement under Rule 801(d)(2)(D) must establish: "(1) the existence of the agency relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency." *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 537-38 (2d Cir. 1992) (internal citations omitted). "The authority granted in the agency relationship need not include authority to make damaging statements, but simply the authority to take action about which the statements relate." *Id.* at 538.

Courts addressing the admissibility of agent or employee statements under Rule 801(d)(2)(D) have focused on whether the statement relates to the agent's or employee's responsibilities and whether the interests of the employer and the agent or employee diverged at the time of the statement. For example, the Second Circuit has explained that "Section 801(d)(2)(D) broadens the prior definition of admissible statements of agents from statements

18

'made by the agent acting in the scope of his employment' to statements 'related to a matter within the scope of the agency or employment.'"   *United States v. King*, 134 F.3d 1173, 1174 n.1 (2d Cir. 1998).   The Second Circuit also has recognized that Rule 801(d)(2)(D) does not permit an agent's or employee's statements to be imputed to the principal if the parties have conflicting litigation positions.   *Id.* at 1176.[11]

Notably, the Second Circuit has explained that "admissibility under this rule should be granted freely."   *Pappas*, 963 F.2d at 537; *see also* Fed. R. Evid. 801(d)(2), advisory comm. notes (Federal Rules of Evidence call for "generous treatment of this avenue to admissibility" for admissions in general).

b)  Analysis

The Statement of Facts is admissible against Huawei Tech under Rule 801(d)(2)(D) because the requisite employee or agency relationship existed between Meng and Huawei Tech, the Statement of Facts relates to Meng's responsibilities at and conduct taken on behalf of Huawei Tech, and because her interests at the time of the deferred prosecution agreement in which she made the statements in no way diverged from Huawei Tech's.

---

[11]      *See also United States v. Brothers Const. of Ohio*, 219 F.3d 300, 311 (4th Cir. 2000) ("The corporation's agent need not have authority to make the statement at issue, but rather the subject of the statement must relate to the employee's area of authority."); *Secs. Ex. Comm'n v. Geon Indus., Inc.*, 531 F.2d 39, 43 n.3 (2d Cir. 1976) (finding district court properly excluded employee's testimony before SEC against his former employer where, at the time of the testimony, he had been suspended and had "conflicting litigating positions"); *United States v. Summers*, 598 F.2d 450, 459 (5th Cir. 1979) (district court erred in admitting statements made by agent after agent began to cooperate with law enforcement, thus terminating the agency relationship); *United States v. West*, No. 08-CR-669, 2010 WL 2698300, at *2 (N.D. Ill. July 6, 2010) ("[C]ourts have found that intervening events can terminate the agency relationship, despite the continued employment of the declarant, such that statements made afterwards constitute hearsay under Rule 801.") (internal citations omitted); *United States v. Petraia Maritime Ltd.*, 489 F. Supp. 2d 90, 96-98 (D. Me. 2007) (agency relationship terminated after employees entered into immunity or cooperation agreements with government).

*First*, an agency (and employee) relationship existed—and, indeed, continues to exist—between Meng and Huawei Tech. During the pendency of the prosecution against her, Meng served as Huawei Tech's CFO. At the time she entered into the deferred prosecution agreement, as Meng herself admitted in the Statement of Facts, she was serving not only as Huawei Tech's CFO, but also as Deputy Chairwoman of Huawei Tech's Board of Directors—two of the senior-most positions at the company. *See* Ex A at 1.

*Second*, the substance of the Statement of Facts directly relates to Meng's service as Huawei Tech's CFO. It details her service on Skycom's board of directors, the nature of the relationship between Skycom and Huawei Tech, the inquiries about such relationship by various banks that worked with Huawei Tech, and Meng's role in assuaging the concerns of one such bank, ███, by directly meeting with a senior ███ employee and providing false information regarding Huawei Tech's role in Skycom. *See Brothers Const. of Ohio*, 219 F.3d at 311; *United States v. Bhimani*, 492 F. Supp. 3d 376, 386-90 (M.D. Pa. 2020) (admitting confession of hotel general manager against co-defendant hotels under Rule 801(d)(2)(D)). As explained above, the question is not whether Meng's statements themselves were made within the scope of the agency relationship or employment, but instead whether those statements *related to* a matter within the scope of the agency relationship or employment. *See King*, 134 F.3d at 1174 n.1. Meng's statement, relating to the work that she and her subordinates did on behalf of Huawei Tech, clearly was about—and thus related to—her employment.

*Third*, the record before the Court establishes that Meng and Huawei Tech have never had divergent interests during the pendency of the instant prosecution. Indeed, Steptoe

represented both Meng and Huawei Tech in this prosecution at the same time.[12]   And Meng never

cooperated with the U.S. government or suffered adverse employment action by Huawei Tech.

Rather, as detailed above, after Meng entered into the deferred prosecution agreement, which

incorporated the Statement of Facts, she remained a senior Huawei Tech executive and Huawei

Tech promoted her.

> Moreover, during Meng's prosecution, Huawei Tech attorneys directly sought to

advance her interests.   For example, on April 8, 2021, counsel for the Corporate Defendants

provided the government with a thirteen-page letter seeking disclosure to Meng and the Canadian

authorities of discovery materials in connection with the government's request to extradite Meng

from Canada to face the charges in the instant case.[13]   *See* Ex. D (April 8, 2021 letter) (filed under

---

[12]     Notwithstanding Steptoe's representation to the government that it implemented a "wall" between the Steptoe defense teams, had Meng's interests diverged from those of the Corporate Defendants, Steptoe would have been obligated to notify the Court of such potential conflict.  *See, e.g.*, *Holloway v. Arkansas*, 435 U.S. 475, 485-86 (1978) (observing that "defense attorneys have the obligation, upon discovering a conflict of interest, to advise the court at once of the problem" and that an "attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial") (internal quotations omitted); *United States v. Aiello*, 814 F.2d 109, 110 (2d Cir. 1987) ("Because defense counsel are best positioned to know when a conflict exists or will likely develop during the course of trial, the initial responsibility for preventing the erosion of a client's rights rests on the lawyer's shoulders."); *see also* 22 N.Y.C.R.R. § 1200 (N.Y. Rule of Professional Conduct 1.7 generally precludes, except in limited circumstances, the concurrent representation of clients with conflicting interests); *United States v. Stein*, 410 F. Supp. 2d 316, 325 (S.D.N.Y. 2006) ("The Second Circuit has made clear that an attorney's conflicts are ordinarily imputed to his firm based on the presumption that associated attorneys share client confidences.  This presumption may be rebutted in some cases where the firm has instituted 'practices and structures . . . sufficient to avoid disqualifying taint, including 'the intentional construction of a '[] Wall,' or other *de facto* separation that effectively protects against any sharing of confidential information.") (quoting *Hempstead Video, Inc. v. Incorporated Village of Valley Stream,* 409 F.3d 127, 133, 137-28 (2d Cir. 2005)) (alterations in original omitted; internal quotations omitted).

[13]     Although Steptoe did not sign the letter, as indicated above, Steptoe was at that time representing the Corporate Defendants in this prosecution, along with Sidley and Jenner.

seal). In doing so, the Corporate Defendants directly sought to advance the interests of their senior-level employee. Notably, counsel for the Corporate Defendants proffered parallel arguments to those advanced in the Canadian proceeding by Meng regarding the validity of the financial fraud charges.[14] Counsel also contended, *inter alia*, that the discovery at issue "tend[ed] to undermine Ms. Meng's guilt" and that the record of the case the government provided to the Canadian government in support of its extradition request was misleading. *See id.* The incontrovertible purpose of Huawei Tech's request was to benefit Meng and advance her interests.

Nor did the identicality of Meng's and Huawei Tech's interests diverge when Meng accepted a deferred prosecution agreement. Indeed, events following the approval of Meng's deferred prosecution agreement confirm that her interests aligned with Huawei Tech's at the time she agreed to the Statement of Facts. After this Court approved the deferred prosecution agreement, the United States withdrew its extradition request and Meng was permitted to leave Canada and return to the PRC. There, she not only retained her position at Huawei Tech, but moved up the corporate ladder via further promotion. From Huawei Tech's perspective, by entering in the deferred prosecution agreement and its incorporated Statement of Facts, Meng— its star senior executive[15]—was able to reprise her role at Huawei Tech. Huawei Tech's interests were thus entirely aligned with Meng's: both wanted Meng to resolve her case, return to the PRC,

---

[14]    For example, as in the Corporate Defendants' April 8, 2021 letter to the government, Meng repeatedly argued in extradition proceedings that senior ███ executives were made aware of the relationship between Huawei Tech and Skycom. *See, e.g.*, ████████████████████████████████████████████████████ (last accessed Dec. 1, 2025).

[15]    *See, e.g.*, Helen Davidson, *et al.*, "Meng Wanzhou: 'Princess of Huawei' Who Became the Face of a High-Stakes Dispute," Huawei (Aug. 19, 2021), https://consumer.huawei.com/ph/community/details/topicId-145500/ (posting Guardian article) (last accessed Dec. 1, 2025).

and continue her senior position at the company. Thus, there have never been "conflicting litigating positions" in this prosecution between Meng and Huawei Tech.[16]  *See Geon*, 531 F.2d at 43 n.3.

Put simply, this Court should find that statements by Meng, made while she was Huawei Tech's CFO and Deputy Chairwoman of the Board of Directors, regarding actions she took in her capacity as CFO and made while her interests with Huawei Tech were aligned, should be attributable to Huawei Tech. Accordingly, this Court should admit the Statement of Facts pursuant to Rule 801(d)(2)(D).

   ii.   The Statement of Facts Is Not Hearsay Because
         It Is an Adoptive Admission by Huawei Tech

        a)   Legal Standard

Under Rule 801(d)(2)(B), an out-of-court statement is not hearsay if it is "offered against an opposing party and . . . is one the party manifested that it adopted." Fed. R. Evid. 801(d)(2)(B). A party may adopt a statement either through "unambiguously manifest[ing] adoption" of the statement or through silence or other ambiguous conduct. *United States v. Shulman*, 624 F.2d 384, 390 (2d Cir. 1980); *see also United States v. Tyrell*, 840 F. App'x 617, 623 (2d Cir. 2021) ("An individual can manifest an intent to adopt an admission through silence."). With respect to the latter, silence or failure to deny a statement can constitute an adoptive admission if the circumstances suggest that a denial would be expected or reasonable. *See United*

---

[16]    The government recognizes that, under different circumstances, the fact that a principal at a company entered into a deferred prosecution agreement admitting to her guilt while the corporate defendant maintained the legal position that it was not guilty of the same conduct likely could constitute "conflicting litigating positions." However, in this case, there were no such conflicting litigation positions given the relationship between Huawei Tech and Meng, including Huawei Tech's role in negotiating Meng's deferred prosecution agreement and Statement of Facts, discussed *infra*.

*States v. Flecha*, 539 F.2d 874, 877 (2d Cir. 1976) (silence is evidence of an admission where "there are circumstances which render it more reasonably probable that a man would answer the charge made against him than that he would not"); *see also Experience Hendrix, LLC v. Chalpin*, 461 F. Supp. 2d 165, 171-72 (S.D.N.Y. 2006) ("[A] failure of a witness to deny an accusation in circumstances in which such a denial reasonably would be expected constitutes an adoptive admission."). Accordingly, as the Second Circuit has explained:

> Where the defendant's adoption of another person's statement purportedly is manifested by silence, or other ambiguous conduct, courts will consider the incriminatory content of the statement in order to determine whether the defendant actually has adopted the statement by his silence. The rationale of such cases is that a person ordinarily will respond to an incriminatory or defamatory statement with a denial, or at least with some indication that he objects to the statement as untrue.

*Shulman*, 624 F.2d at 390 (citing *Flecha*, 539 F.2d at 876-77; McCormick, Law of Evidence § 270 (2d ed. 1972)); *see also United States v. Tocco*, 135 F.3d 116, 128-29 (2d Cir. 1998) ("Absent circumstances that render it more probable that a person would not respond to an accusation against him than that he would, such person's silence or other ambiguous conduct is admissible as an adoptive admission under Fed. R. Evid. 801(d)(2)(B).") (citing *Flecha*, 539 F.2d at 877); *United States v. Aponte*, 31 F.3d 86, 87 (2d Cir. 1994) (finding it was within district court's discretion to conclude it was reasonably probable that defendant would have responded in some way if cohort's incriminatory statement was false).

As explained above, the Federal Rules of Evidence call for "generous treatment" of the admissibility of admissions broadly. *See* Fed. R. Evid. 801(d)(2), advisory comm. notes.

b) <u>Argument</u>

The Statement of Facts is admissible against Huawei Tech under Rule 801(d)(2)(B) because Huawei Tech did not deny the substance of the statement—which directly inculpates

24

Huawei Tech in the charged conduct—under circumstances where a denial would be expected or reasonable. *See Flecha*, 539 F.2d at 877.

As a threshold matter, there can be no serious dispute that Huawei Tech was aware of the contents of the Statement of Facts. The deferred prosecution agreement, which incorporated the Statement of Facts, was publicly filed on the docket in the instant case, such that Huawei Tech's counsel at three different law firms received notice of the filing. It is inconceivable that those attorneys did not share the Statement of Facts with Huawei Tech. That is particularly true given that Meng remained Huawei Tech's CFO and Deputy Chairwoman of the Board at the time she entered into the deferred prosecution agreement. *See* Ex. A at 1. The admissions in the Statement of Facts also were widely reported in the media.[17] In fact, as described below, Huawei Tech issued a statement regarding Meng's deferred prosecution agreement, neither accepting nor refuting the Statement of Facts, and simply announcing that Huawei Tech would continue to "defend itself" against the pending criminal charges. Under these circumstances, Huawei Tech's failure to deny the inculpatory Statement of Facts constitutes an adoptive admission.

*First*, Huawei Tech's conduct since the inception of the instant prosecution underscores that, given the incriminatory substance of the Statement of Facts, a denial would be expected or reasonable. In 2019, following announcement of the original indictment in this case, Huawei Tech posted on its LinkedIn page (and provided to various media outlets) a statement

---

[17]    *See, e.g.,* ████████████████████████████

asserting: "The Company denies that it or its subsidiary or affiliate have committed any of the asserted violations of U.S. law set forth in each of the [EDNY and WDWA] indictments, is not aware of any wrongdoing by Ms. Meng, and believes the U.S. courts will ultimately reach the same conclusion."[18]  In response to the Third Superseding Indictment, Huawei Tech issued a lengthy media statement attacking both the charges and the government's motivation.[19]  Huawei Tech also responded to that indictment on Twitter (now X), stating, in part, "[t]hese new charges are without merit."[20]

In stark contrast to those vehement and public denials, after this Court accepted Meng's deferred prosecution agreement, Huawei Tech issued the following media statement, titled "Media Statement on Meng Wanzhou's DPA with the US DOJ": "We look forward to seeing Meng Wanzhou returning home safely to be reunited with her family.  Huawei will continue to defend itself against the allegations in the US District Court for the Eastern District of New York."[21]  Notably, this media release by Huawei Tech did not deny the accuracy of the Statement

---

[18]    Huawei Tech, LinkedIn (2019), https://www.linkedin.com/posts/huawei_huawei-is-disappointed-to-learn-of-the-charges-activity-6495922432136835072-uQKy (last accessed Dec. 1, 2025); *see also, e.g.*, Everett Rosenfeld, "China Says US Indictment Against Huawei Is 'Unfair' and 'Immoral,'" CNBC (Jan 29, 2019), https://www.cnbc.com/2019/01/29/china-responds-to-us-indictment-against-huawei.html (last accessed Dec. 1, 2025); Isobel Asher Hamilton, "The US Has Formally Requested to Extradite Huawei CFO Meng Wanzhou from Canada," Business Insider (Jan. 30, 2019), https://www.businessinsider.com/huawei-us-requests-extradition-of-cfo-meng-wanzhou-from-canada-2019-1 (last accessed Dec. 1, 2025).

[19]    Press Release, "Huawei Statement on US Justice Department Indictment," Huawei Tech (Feb. 14, 2020), https://www.huawei.com/en/news/2020/2/huawei-statement-on-us-justice-department-indictment (last accessed Dec. 1, 2025).

[20]    Huawei Tech (@Huawei), X (Feb. 13, 2020), https://x.com/huawei/status/122812 7888710389760 (last accessed Dec. 1, 2025).

[21]    Media Statement, "Media Statement on Meng Wanzhou's DPA with the US DOJ," Huawei Tech (Sept. 25, 2021), https://www.huawei.com/jp/facts/voices-of-huawei/media-statement (last accessed Dec. 1, 2025).

of Facts or Meng's admissions therein.   And to the government's knowledge, Huawei Tech has never done so.   Given its prior denials in response to allegations by the government, a denial by Huawei Tech of the substance of Meng's incriminating Statement of Facts would be expected or reasonable.   The absence of such denial is precisely the type of silence that constitutes an adoptive admission.

*Second*, Meng's relationship with Huawei Tech both during the pendency of her prosecution in the instant case and after she entered into the deferred prosecution agreement further underscores that, given the incriminatory substance of the Statement of Facts, a denial would be expected or reasonable.   As noted above, at the time Meng entered into the deferred prosecution agreement, she was Huawei Tech's CFO and Deputy Chairwoman of the Board of Directors.   *See* Ex. A at 1.   After she entered into the deferred prosecution agreement, she was promoted within Huawei Tech.   If Huawei Tech believed that its CFO and Deputy Chairwoman of the Board had made false statements inculpating the company, it would be expected or reasonable for Huawei Tech to deny those statements, terminate Meng's employment, or, at the very least, distance itself from Meng.   Huawei Tech did none of that.   Instead, it remained silent on the Statement of Facts, retained Meng as a senior executive, and promoted her.   Under the circumstances, this conduct—and absence thereof—establishes that Huawei Tech adopted the admissions in the Statement of Facts.

Those grounds alone constitute sufficient bases on which to find that Huawei Tech adopted the admissions in the Statement of Facts, and thus to admit the Statement of Facts pursuant to Rule 801(d)(2)(B).

However, the Court also may consider the circumstances of Meng's plea negotiations, which further confirm that Huawei Tech adopted the Statement of Facts.

27

Specifically, during plea negotiation meetings, Huawei Tech principal Vincent Peng[22] and Huawei Tech counsel from Sidley emphasized that Huawei Tech's priority was to resolve Meng's case, and discussed her entering into a deferred prosecution agreement with a statement of facts.[23] *See generally* Exs. E, F (Declaration of Eleanor Fitzgerald), G (Declaration of Jacqueline Prim). Indeed, during an October 6, 2020 meeting—attended by Meng's counsel, Huawei Tech's counsel, Peng, and the government—Peng stated, in sum and substance, that Huawei Tech's "priority" was resolving the case against Meng, and later reiterated that Huawei Tech had "an interest to prioritize Ms. Meng's case separately." *See* Ex. E ¶¶ 3, 5. Huawei Tech's counsel similarly stated, in sum and substance, that Huawei Tech wanted to prioritize Meng's status. *See id.* ¶ 6. During that same meeting, Meng's counsel raised a deferred prosecution agreement for Meng as one option, to which the government responded, in sum and substance, that it would consider a substantive deferred prosecution agreement with a statement of facts that included an admission of guilt. *See id.* ¶ 7. Peng subsequently stated, in sum and substance, that "we"—referring to Huawei Tech—

---

[22] According to Huawei Tech's webpage, Peng serves on the Huawei Board of Directors as "Director, President of the Global Procurement Qualification Mgmt Dept." *See* "Mr. Peng Bo (Vincent Peng), Huawei Tech, https://www.huawei.com/en/executives/board-of-directors/peng-bo (last accessed Dec. 1, 2025). According to Peng, he also was a member of the Board at the time of the plea negotiations. *See* Ex. E (Declaration of Andrew Del Vecchio) ¶ 4.

[23] The Court may consider this information consistent with Federal Rule of Evidence 410(a) because the government is not seeking to admit it at trial, but only citing it for the limited purpose of establishing the admissibility of the Statement of Facts. *See* Fed. R. Evid. 410(a)(4) (precluding admissibility of a "statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or they resulted in a later-withdrawn guilty plea"); *United States v. Barrow*, 400 F.3d 109, 116 (2d Cir. 2005) ("Rule 410 is an exception to the general principle that all relevant evidence is *admissible at trial*") (emphasis added). Moreover, the "[t]he underlying purpose of Rule 410 is to promote plea negotiations by permitting defendants to talk to prosecutors without sacrificing their ability to defend themselves if no disposition agreement is reached." *Id.* That objective is not undermined by the Court's consideration of evidence that counsel for Huawei Tech expressed in plea negotiations that its priority was resolving Meng's, rather than the company's, case.

would discuss and engage with the government regarding a potential deferred prosecution agreement. *See id.* During a June 2, 2021 meeting, the meeting participants—again including Meng's counsel, Huawei Tech's counsel, Peng, and the government—similarly discussed a potential deferred prosecution agreement for Meng. *See* Ex. F ¶¶ 3, 4. Meng's counsel stated he would send the draft deferred prosecution agreement, with a statement of facts, to the government. *See id.* ¶ 4. Comments by Huawei Tech's counsel made clear that Huawei Tech had reviewed and endorsed the draft agreement. *See id.* During a July 8, 2021 meeting—again attended by Meng's counsel, Huawei Tech's counsel, Peng, and the government—the participants discussed a draft deferred prosecution agreement for Meng with a statement of facts, which had been circulated in advance of the meeting. *See* Ex. G ¶¶ 3, 4. Huawei Tech's counsel commented on the statement of facts and how it might affect Huawei Tech, including stating, in sum and substance, that what the government was asking for would be, in practical terms, a guilty plea from Huawei Tech. *See id.* ¶ 5.

Huawei Tech thus was aware that Meng might make a statement of facts, and, indeed, discussed the potential contents of such a statement and how it might affect Huawei Tech. Huawei Tech's stated position on this issue, coupled with its silence on the Statement of Facts once it issued, further demonstrates that Huawei Tech tacitly adopted the Statement of Facts.

For the reasons above, this Court should find that, because it did not deny the substance of the Statement of Facts under circumstances where doing so would have been reasonable, Huawei Tech adopted the Statement of Facts. Accordingly, this Court should admit the Statement of Facts pursuant to Rule 801(d)(2)(B).

2.     Admission of the Statement of Facts Does
Not Violate the Confrontation Clause

Admission of the Statement of Facts against Huawei Tech does not violate any of
the Corporate Defendants' Confrontation Clause rights.   Huawei Tech's rights are not violated
because the statement is not hearsay, and therefore the Confrontation Clause is not implicated.
The rights of the other Corporate Defendants are not implicated because the statement is not
inculpatory as to them given that they are not even charged in the fraud counts, the only counts as
to which the Statement of Facts relates.

a.     Admission of the Statement of Facts Does Not
Violate Huawei Tech's Confrontation Clause Rights

"The crux of [the Confrontation Clause] is that the government cannot introduce at
trial statements containing accusations against the defendant unless the accuser takes the stand
against the defendant and is available for cross examination."   *United States v. Jass*, 569 F.3d 47,
55 (2d Cir. 2009).   Following the Supreme Court's seminal decision in *Crawford v. Washington*,
541 U.S. 36, 53 (2004), it has clarified that, "[t]o implicate the Confrontation Clause, a statement
must be hearsay ('for the truth') and it must be testimonial—and those two issues are separate
from each other."   *Smith v. Arizona*, 602 U.S. 779, 800 (2024).

"The Confrontation Clause prohibits *only* statements that constitute impermissible
hearsay."   *United States v. Orellana*, 341 F. App'x 501, 506 (11th Cir. 2009) (emphasis in
original; internal quotation marks and alteration omitted).   Statements admitted pursuant to Rule
801(d)(2)—including Rules 801(d)(2)(B) and 801(d)(2)(D), *i.e.*, adoptive admissions and
statements of agents or employees, respectively—are excluded from the hearsay rule and therefore
are not hearsay.   *See* Fed. R. Evid. 801(c) (defining hearsay); Fed. R. Evid. 801(d) (defining
statements that are not hearsay, including adoptive admissions and statements of agents or
employees); *see also Figueroa v. Mann*, No. 90-CV-1965 (PKL), 1992 WL 51542, at *5 (S.D.N.Y.

30

Mar. 10, 1992) ("It is well-established under traditional rules of evidence that a party's admission, including an adoptive admission, is not hearsay and is therefore not excluded under the hearsay rule."); *Orellana*, 341 F. App'x at 506 ("Statements made by a party's agent or servant are also excluded from the definition of hearsay.").

Accordingly, the admission of statements under Rule 801(d)(2) does not implicate the Confrontation Clause. *See, e.g.*, *Reed v. May*, 134 F.4th 455, 462 (6th Cir. 2025) (distinguishing between hearsay exceptions and non-hearsay, and explaining that "*Crawford* expressly disclaimed that the Confrontation Clause applied to non-hearsay statements") (citing *Crawford*, 541 U.S. at 60 n.9); *United States v. Saks*, 964 F.2d 1514, 1526 (5th Cir. 1992) ("We conclude that if statements meet the requirements of Rule 801(d)(2)(D), as they do here, the Confrontation Clause is satisfied.").[24]

Because the Statement of Facts is admissible under both Rule 801(d)(2)(B) and Rule 801(d)(2)(D), it is not hearsay.   Accordingly, its admission against Huawei Tech does not violate the Confrontation Clause.

---

[24]     *See also United States v. Yi*, 460 F.3d 623, 634 (5th Cir. 2006) (affirming district court's rejection of *Crawford* challenge and admission of law enforcement agent's testimony relating statements of defendant's employee, explaining that "[a]ssuming that Rule 801(d)(2)(D) survived *Crawford*, the district court did not abuse its discretion" in admitting agent's testimony relating statements of defendant's agent within the scope of her employment); *Sanchez v. Dexter*, No. 05-CV-795, 2008 WL 1766729, at *10-11 (C.D. Cal. Apr. 14, 2008) (citing *People v. Roldan*, 35 Cal.4th 646, 710 (Cal. 2005)) (finding admission of defendant's adoptive statements did not violate *Crawford*); *Bhimani*, 492 F. Supp. 3d at 386-90 (rejecting *Crawford* challenge and admitting testimonial post-*Miranda* confession of hotel general manager against co-defendant hotels under Fed. R. Evid. 801(d)(2)(D)).   *Cf. King*, 134 F.3d at 1175 ("[W]e conclude that the Confrontation Clause objection is not available where a corporation, owned entirely by one individual, seeks to preclude the use against it of that individual's testimony from a prior trial. For purposes of the Confrontation Clause, the corporation is the alter ego of its sole shareholder and has no valid complaint that it lacked the opportunity to conduct its own cross-examination of the witness . . . .").

b.  Admission of the Statement of Facts Does Not Violate the
Other Corporate Defendants' Confrontation Clause Rights

When the incriminatory statement of one defendant is admissible at trial against

that defendant but not other defendants, "a trial court's instruction to a jury to consider the

statements only in evaluating the guilt of the defendants against whom they are admissible is

generally sufficient to eliminate any Confrontation Clause concern with respect to other

defendants." *Jass*, 569 F.3d at 55.  As the Supreme Court explained in *Richardson v. Marsh*,

"[o]rdinarily, a witness whose testimony is introduced at a joint trial is not considered to be a

witness 'against' a defendant if the jury is instructed to consider that testimony only against a

codefendant."  481 U.S. 200, 206 (1987).  The law "almost invariabl[y] assum[es]" that jurors

follow such limiting instructions.  *Id.*

In *Bruton v. United States*, 391 U.S. 123 (1968), the Supreme Court identified an

exception.  In joint trials, the admission of a non-testifying co-defendant's statements violates the

defendant's rights under the Confrontation Clause if the statements are "powerfully incriminating"

or "devastating" to the defendant.  *United States v. Slocum*, 695 F.2d 650, 655 (2d Cir. 1982)

(quoting *Bruton*, 391 U.S. at 135-36); *see also Jass*, 569 F.3d at 55.  Under such circumstances,

merely instructing the jury that the statements are to be considered only against the declarant and

not against the co-defendant does not adequately safeguard the defendant's Confrontation Clause

rights.  *See Slocum*, 695 F.2d at 655 (citing *Bruton*, 391 U.S. at 135-36).  Notably, however,

*Bruton* is violated only where the statement "is both clearly inculpatory of the defendant and vitally

important to the prosecution's case."  *Id.* (citations and internal quotation marks omitted).  The

Second Circuit further requires that the co-defendant's statements must be "clearly inculpatory

*standing alone* for *Bruton* to apply."  *Id.* (emphasis in original; citations and internal quotation

marks omitted).

32

Admission of the Statement of Facts does not violate the Confrontation Clause rights of the Subsidiary Corporate Defendants.   The Statement of Facts does not refer to any of the Subsidiary Corporate Defendants, either directly or indirectly.   And critically, the Statement of Facts is not "clearly inculpatory" as to those defendants because they are not charged with the conduct at issue in the statement; Huawei Tech is the only trial defendant charged with that conduct.   Specifically, the substantive counts premised on Huawei Tech illegally operating a subsidiary in Iran, *i.e.*, Skycom, and defrauding its financial institutions with respect to operation of that subsidiary—Counts Four through Fifteen—charge only Huawei Tech, and not any of the Subsidiary Corporate Defendants.   *See* ECF No. 126 ¶¶ 99-126.

It is of no moment that the Subsidiary Corporate Defendants are charged in Count One, which is the racketeering conspiracy.   *See id.* ¶¶ 88-93.   Although the fraudulent Skycom scheme is a charged predicate act, the Third Superseding Indictment does not allege that the Subsidiary Corporate Defendants were involved in that predicate act.   Rather, in describing the Skycom scheme, the Third Superseding Indictment references only conduct by Huawei Tech. Notably, "the government need not prove that a defendant committed or agreed to commit any of the charged predicate acts as long as the government proves [the defendant] participated in some manner in the overall objective of the conspiracy."   *United States v. Yannotti*, 541 F.3d 112, 129 n.11 (2d Cir. 2008) (citing *Salinas v. United States*, 522 U.S. 52, 64 (1997)).   Similarly, although Huawei Device USA is charged in Count Sixteen, which charges obstruction of justice and which includes the scheme to obstruct the government's investigation regarding Huawei Tech's operation of Skycom, *see* ECF No. 126 ¶¶ 127-28, that scheme is not implicated by the Statement of Facts. Indeed, the Third Superseding Indictment does not allege that Meng was involved in that scheme (or even charge Meng in Count Sixteen), and the Statement of Facts does not address it.   Thus,

33

even with respect to Counts One and Sixteen, the Statement of Facts is not "clearly inculpatory" as to the Subsidiary Corporate Defendants.

Under these circumstances, a jury instruction directing that the Statement of Facts may be considered only against Huawei Tech more than adequately protects the Subsidiary Corporate Defendants' Confrontation Clause rights.

III.     The Court Should Set a Discovery Schedule as to the Corporate Defendants

The government respectfully requests that the Court set a schedule for the defendants' production to the government of reciprocal discovery.

A.     Applicable Law

Rule 16(b) of the Federal Rules of Criminal Procedure requires a defendant to provide the government with documents and records that the defendant "intends to use . . . in the defendant's case-in-chief at trial." Fed. R. Crim. P. 16(b)(1)(A)(ii). Moreover, Federal Rule of Criminal Procedure 26.2 requires, at the government's request, "the defendant and the defendant's attorney to produce, for the examination and use of the [government], any statement of the witness that is in their possession and that relates to the subject matter of the witness's testimony." Fed. R. Crim. P. 26.2(a).

With respect to Rule 16(b), a defendant may start making his case-in-chief during his cross-examination of the government's witnesses. *See United States v. Hsia*, No. 98-CR-57, 2000 WL 195067, at *2 (D.D.C. Jan. 21, 2000) ("Defendant's cross-examination of government witnesses, and the evidence introduced during that cross-examination, certainly may be used to support her defense."). Rule 16(b) therefore requires the production of any documents that the defendant plans to use as affirmative support of his theory of the case (as opposed to mere impeachment evidence) and that he seeks to admit while cross-examining a witness during the government's case-in-chief. *See id.* at *2 & *2 n.1.

34

Courts in this district have repeatedly held that the defendant must produce in advance "any exhibit that will not be used solely for impeachment purposes," even if the defendant intends to introduce such exhibit during cross-examination of a government witness. *United States v. Smothers*, 652 F. Supp. 3d 271, 308 (E.D.N.Y. 2023) (KAM); *see also United States v. Napout*, No. 15-CR-252 (PKC), 2017 WL 6375729, at *7 (E.D.N.Y. Dec. 12, 2017) ("Rule 16 requires Defendants to identify all non-impeachment exhibits they intend to use in their defense at trial, whether the exhibits will be introduced through a government witness or a witness called by a Defendant"). That obligation extends to material produced by the government in discovery that the defendant intends to use as an exhibit. *See Smothers*, 652 F. Supp. 3d at 308 (requiring advance production of defense exhibits "regardless of whether such an exhibit is in the defense's sole custody").

B.    Argument

The government respectfully requests that the Court direct the Corporate Defendants to produce reciprocal discovery in advance of the government's case-in-chief. To date, the Corporate Defendants have not disclosed any such materials, notwithstanding the government's repeated requests for reciprocal discovery since at least June 11, 2019—more than six years ago. *See, e.g.*, ECF No. 58.[25]    The Corporate Defendants' failure to produce such materials is noteworthy given that defense counsel have represented to the Court that they intend

---

[25]        *See also, e.g.*, ECF Nos. 64, 67, 71, 78, 88, 91, 96, 97, 98, 99, 103, 104, 109, 129, 133, 134, 136, 141, 148, 151, 152, 154, 163, 164, 165, 171, 187, 188, 189, 190, 191, 198, 200, 216, 221, 224, 231, 232, 233, 234, 235, 240, 242, 245, 247, 249, 250, 256, 263, 264, 265, 266, 267, 269, 279, 280, 281, 284, 292, 297, 298, 299, 306, 313, 328, 331, 337, 340, 344, 353, 358, 359, 361, 362, 364, 368, 370, 371, 386, 391, 392, 393, 394, 395, 396, 399, 401, 402, 404, 405, 406, 408, 410, 411, 412, 415, 416, 418, 420, 421, 422, 437, 444, 448, 452, 453, 468, 479, 480, 481, 484, 486, 487, 489, 499, 506, 508, and 511.   The government has also requested reciprocal discovery on other occasions, including on phone calls.

to present a substantial defense case, *see, e.g.*, ECF No. 456-1 at 20, such that they presumably possess and have identified such materials.

During the September 30, 2025 status conference, the Court directed the parties to confer regarding this issue. In response to the government's effort to do so, the Corporate Defendants declined to advise the government when they will produce discovery.

Moreover, an order directing production of reciprocal discovery is necessary because, to date, Huawei Tech has not



Counsel emphasized, however, that Huawei Tech might produce additional materials pursuant to Rule 16, but referred the government back to defense counsel, stating the government would need to discuss such productions with defense counsel.[26]

---

[26]

As indicated above, the government repeatedly has endeavored to do so, without success.   Huawei Tech should not be permitted to engage in gamesmanship, in which it ███████████████

████████████████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████████████████

      Accordingly, to avoid unfair surprise and ensure an efficient trial, the government respectfully requests under Rule 16(b) that the Court order the Corporate Defendants to produce any reciprocal discovery by February 9, 2026, which is one month after the government is scheduled to disclose its *Chalmers* roadmap.   To the extent the Corporate Defendants identify additional reciprocal discovery based upon discovery the government produces pursuant to the Court's prior Rule 12(d)(1) order, the government respectfully requests that the Court order the Corporate Defendants to produce such reciprocal discovery one month after the relevant government disclosure.

      The government also respectfully requests that, to avoid delay in the upcoming trial, the Court set a schedule for the Corporate Defendants' disclosure of statements of any defense witnesses other than the Corporate Defendants themselves.   *See* Fed. R. Crim. P. 26.2.   The

─────────────────

████████████████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████████████████

government requests that Rule 26.2 material should be provided no later than one week before a witness testifies.  This timing is more than reasonable given the case complexity and that the government will produce initial materials pursuant to 18 U.S.C. § 3500 by February 4, 2026, three months before trial.

IV.    Request for Sealing

The government respectfully requests leave to file this brief under seal, with a redacted version filed on the public docket.  The government is sensitive to the need to minimize the amount of information in a criminal case that is filed under seal.  *See, e.g.*, *United States v. Aref*, 533 F.3d 72, 83 (2d Cir. 2008) (noting "the requirement that district courts avoid sealing judicial documents in their entirety unless necessary"); *Lugosch v. Pyramid Co.*, 435 F.3d 110, 120 (2d Cir. 2006) (noting that sealing orders should be "narrowly tailored").  However, sealing is warranted in order to protect the privacy interests of third parties and because certain of the information contained herein relates to confidential grand jury proceedings.  *See* Fed. R. Crim. P. 6(e)(6); *United States v. Amodeo*, 44 F.3d 141, 147 (2d Cir. 1995).  Under the circumstances, the interest in safeguarding the privacy of these individuals and information about grand jury proceedings outweighs the public's qualified right to access such information.  Because the facts set forth herein provide a sufficient basis for the "specific, on the record findings" necessary to support sealing, *Lugosch*, 435 F.3d at 120, the government respectfully requests that the Court permit the government to file this brief under seal.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court grant

the government's motions *in limine*.

Dated:          Brooklyn, New York
                December 1, 2025


                                        JOSEPH NOCELLA, JR.
                                        United States Attorney
                                        Eastern District of New York

                        By:        /s/
                                        _____
                                        Alexander A. Solomon
                                        Meredith A. Arfa
                                        Robert Pollack
                                        Matthew Skurnik
                                        Assistant United States Attorneys
                                        (718) 254-7000


                                        MARGARET A. MOESER
                                        Chief, Money Laundering, Narcotics and
                                        Forfeiture Section,
                                        Criminal Division,
                                        U.S. Department of Justice

                                        Taylor G. Stout
                                        Morgan J. Cohen
                                        Jasmin Salehi Fashami
                                        Trial Attorneys


                                        SCOTT LARA
                                        Acting Chief, Counterintelligence and
                                        Export Control Section,
                                        National Security Division,
                                        U.S. Department of Justice

                                        Sean O'Dowd
                                        Trial Attorney