NJM:RMP
F. #2017R05903

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -                               18-CR-457 (S-3) (AMD)

HUAWEI TECHNOLOGIES CO., LTD., *et al.*,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## SUPPLEMENTAL BRIEF IN FURTHER
## OPPOSITION TO THE DEFENDANTS' MOTION TO SUPPRESS

JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York

MARGARET A. MOESER
Chief
Money Laundering, Narcotics
and Forfeiture Section
Criminal Division
U.S. Department of Justice

CHRISTIAN NAUVEL
Acting Chief
Counterintelligence and
Export Control Section
National Security Division,
U.S. Department of Justice

ALEXANDER A. SOLOMON
MEREDITH A. ARFA
ROBERT M. POLLACK
MATTHEW SKURNIK
Assistant U.S. Attorneys
    (Of Counsel)

TAYLOR G. STOUT
MORGAN J. COHEN
JASMIN SALEHI FASHAMI
Trial Attorneys

SEAN O'DOWD
CHRISTOPHER FENTON
Trial Attorneys

TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ................................................................................................................... 2

    I.    The Border Searches of Devices Were Supported by Reasonable Suspicion.................. 2

    II.   Discovery of the Contents of the Devices Was Inevitable................................................ 5

    III.  Suppression Would Be Inappropriate Because the Searches Were Conducted in Good Faith.................................................................................................................. 7

CONCLUSION.................................................................................................................. 10

## TABLE OF AUTHORITIES

**Cases**

*Abidor v. Napolitano,*
  990 F. Supp. 2d 260 (E.D.N.Y. 2013) ............................................................ 2, 3, 9

*In re Grand Jury Subpoena Issued June 18, 2009,*
  593 F.3d 155 (2d Cir. 2010) ................................................................................ 6

*Montoya de Hernandez,*
  473 U.S. 531 (1985) ......................................................................................... 3, 9

*Tabbaa v. Chertoff,*
  509 F.3d 89 (2d Cir. 2007) ................................................................................. 8

*Terry v. Ohio,*
  392 U.S. 1 (1968) ................................................................................................ 3

*United States v. Aguilar,*
  973 F.3d 445 (5th Cir. 2020) .............................................................................. 8

*United States v. Aigbekaen,*
  943 F.3d 713 (4th Cir. 2019) .............................................................................. 7

*United States v. Alisigwe,*
  No. 24-960 (2d Cir.) ........................................................................................... 1

*United States v. Asbury,*
  586 F.2d 973 (2d Cir. 1978) ............................................................................ 3, 4

*United States v. Cabassa,*
  62 F.3d 470 (2d Cir. 1995) ................................................................................. 5

*United States v. Castillo,*
  70 F.4th 894 (5th Cir. 2023) .............................................................................. 8

*United States v. Cortez,*
  449 U.S. 411 (1981) ............................................................................................ 3

*United States v. Cotterman,*
  709 F.3d 952 (9th Cir. 2013) .............................................................................. 8

ii

*United States v. Davis*,
   564 U.S. 229 (2011) ............................................................................................................ 7

*United States v. Eng*,
   971 F.2d 854 (2d Cir. 1992) ............................................................................................... 5

*United States v. Heath*,
   455 F.3d 52 (2d Cir. 2006) ................................................................................................. 5

*United States v. Irving*,
   452 F.3d 110 (2d Cir. 2006) ............................................................................................... 9

*United States v. Kamaldoss*,
   No. 24-824 (2d Cir.) ........................................................................................................... 1

*United States v. Levy*,
   803 F.3d 120 (2d Cir. 2015) ........................................................................................... 2, 9

*United States v. Molina-Isidoro*,
   884 F.3d 287 (5th Cir. 2018) ............................................................................................. 8

*United States v. Morton Salt Co.*,
   338 U.S. 632 (1950) ........................................................................................................... 6

*United States v. Ramsey*,
   431 U.S. 606 (1977) ........................................................................................................... 8

*United States v. Saboonchi*,
   990 F.Supp.2d 536 (D. Md. 2014) ..................................................................................... 8

*United States v. Singh*,
   No. 12-CR-121 (DLI), 2012 WL 2501032 (E.D.N.Y. June 27, 2012) ............................... 9

*United States v. Smith*,
   No. 24-1680 (2d Cir.) ......................................................................................................... 1

*United States v. Touset*,
   890 F.3d 1227 (11th Cir. 2018) ......................................................................................... 2

**Other Authorities**

James Durling, *The Intercircuit Exclusionary Rule*, 128 Yale L.J. 231 (2018) ............................ 7

iii

## PRELIMINARY STATEMENT

The government respectfully submits this supplemental memorandum pursuant to the Court's December 5, 2025 order directing the government to file a brief supplementing its opposition, ECF No. 561, to the defendants' motion to suppress, specifically addressing, with respect to the government's searches of Dell Latitude laptops seized from a Huawei employee on February 12, 2018, and April 27, 2018, "(1) whether the federal agents had reasonable suspicion to search the employee's devices at issue at the border and (2) whether discovery of the contents of those devices was inevitable."[1]

The answer to both questions is yes: (1) even if the constitutionality of forensic border searches of electronic devices requires reasonable suspicion, which remains unsettled even today nearly eight years after the searches in question, the February and April 2018 searches were supported by reasonable suspicion and were therefore lawful as border searches (irrespective of the validity of the employee's consent); and (2) the discovery of the contents of those devices was inevitable regardless. Moreover, even if the Court were to decline to reach one or both of those questions, the good-faith exception to the exclusionary rule clearly applies: at the time of the

---

[1]    The Court's December 5, 2025 order also directs that "[t]he parties should discuss *United States v. Smith*, No. 24-1680 (2d Cir.), if the Second Circuit publishes its decision in the interim." *Smith* is, to the government's knowledge, the third case pending in the Second Circuit on the constitutionality of warrantless border searches of electronic devices, and its resolution is likely to follow the other two. The first case in this series is *United States v. Alisigwe*, No. 24-960 (2d Cir.), which concerns only manual searches of electronic devices (*i.e.*, searches by hand without the use of forensic extraction tools), and which was argued on March 28, 2025. The second case is *United States v. Kamaldoss*, No. 24-824 (2d Cir.), which concerns forensic searches of electronic devices (*i.e.*, the use of tools to generate a forensic digital extraction of an electronic device to be searched more thoroughly over a longer period of time), and which was argued on March 31, 2025. *Smith*, like *Kamaldoss*, concerns a forensic search, and was argued on June 24, 2025. As of the date of this filing, the Second Circuit has not issued a decision in any of these cases.

1

searches at issue, no controlling authority had ruled that *any* border search of property required a warrant or *any* level of individualized suspicion. Indeed, even the reasonable-suspicion requirement had only ever been applied to invasive searches of the body in this Circuit. *See, e.g.*, *United States v. Levy*, 803 F.3d 120, 123 n.3 (2d Cir. 2015); *Abidor v. Napolitano*, 990 F. Supp. 2d 260, 270 n.8 (E.D.N.Y. 2013). Thus, even if the Second Circuit soon announces a different standard, agents nearly eight years ago were entitled to rely in good faith on the state of the law at the time, which they did.

For those reasons, as discussed further below, and for the additional reasons discussed in the government's opposition memorandum, the Court should deny the defendants' motion to suppress.

## **ARGUMENT**

I.  The Border Searches of Devices Were Supported by Reasonable Suspicion

As of the date of this filing—nearly eight years after the searches at issue—the Second Circuit has not held that a heightened level of suspicion is necessary to perform a border search of electronic devices; but even assuming, as some other courts have held, that reasonable suspicion is necessary,[2] that standard is met here.

---

[2]  *But see United States v. Touset*, 890 F.3d 1227, 1233-34 (11th Cir. 2018) (holding that even suspicionless forensic border searches of electronic devices are reasonable under the Fourth Amendment, reasoning that "[t]he Supreme Court has never required reasonable suspicion for a search of property at the border, however non-routine and intrusive, and neither have we," and that "[a]lthough in one decision the Supreme Court required reasonable suspicion for the prolonged detention of a *person* until she excreted the contraband that she was suspected of smuggling in her alimentary canal or submitted to an x-ray or rectal examination, it has never applied this requirement to property" (modifications and citation omitted)).

The Supreme Court has broadly defined reasonable suspicion as "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417-18 (1981). The standard is met when law enforcement can point to "specific and articulable facts" that lead to the inference that criminal activity "may be afoot." *Terry v. Ohio*, 392 U.S. 1, 30 (1968). In the border-search context specifically, "the issue is simply whether the border official has a reasonable basis on which to conduct the search," and "what is reasonable will depend on all the facts of a particular case." *United States v. Asbury*, 586 F.2d 973, 976 (2d Cir. 1978). "Reasonable suspicion is a relatively low standard and border officials are afforded deference due to their training and experience." *Abidor*, 990 F. Supp. 2d at 282 (citing *Montoya de Hernandez*, 473 U.S. 531, 542 (1985)).

That "relatively low" and deferential standard is abundantly satisfied by the specific and articulable facts underlying the investigations the defendants catalogued in their reply brief, ECF No. 576, in service of their (mistaken) argument that the investigators cannot have believed that the employee's consent was valid. Specifically, the defendants note that "[b]y the time of these searches (early 2018), the government had already launched multiple investigations into Huawei and its affiliates, including the one that led to this Indictment." ECF No. 576, at 7. Indeed, the defendants attach numerous exhibits demonstrating the breadth and scope of the government's investigations prior to that date, including a 2017 grand jury subpoena to Huawei Technologies USA in Texas—which is the subsidiary where the employee worked—demanding production of documents concerning, *inter alia*, business activities in Iran and work for specified Iranian telecommunications companies. *Id.* Defendants note that the agents who "confront[ed]" the employee at the airport in Dallas "were dispatched from New York (then the locus of the Huawei

3

investigation) . . . , indicated that they were in close contact with the prosecutors, and spent much of the interview asking [the employee] about Huawei's business in Iran." *Id.* (citing portions of an audio recording of an interview with the employee).   At least in broad outline, this description of the government's then-ongoing inquiries into crimes committed by Huawei and its employees are undisputed.   The facts developed during these investigations, which underlie and explain the specificity of the inquiries discussed in the defendants' reply brief and attached to that brief as exhibits, demonstrate that the agents had significantly more than a "reasonable basis," *Asbury*, 586 F.2d at 976, to suspect that the employee at issue was involved in an international criminal scheme, which at least potentially included border-related export-control violations.

> For example, among the facts already known before the 2018 border searches was that the fruits of a lawful 2013 search of the employee's laptop included dozens of files related to Huawei projects with telecommunications providers in Iran.   This provided ample support for reasonable suspicion that a similar search of materials in the possession of the same employee entering the United States in 2018 might yield evidence of criminal activity.   *See* Ex. A (under seal).[3]   Additionally, as described in the Third Superseding Indictment, between 2011 and 2013,

---

[3]       The government respectfully requests leave to file Exhibit A under seal, with a redacted version filed on the public docket.   The government is sensitive to the need to minimize the amount of information in a criminal case that is filed under seal.   *See, e.g.*, *United States v. Aref*, 533 F.3d 72, 83 (2d Cir. 2008) (noting "the requirement that district courts avoid sealing judicial documents in their entirety unless necessary"); *Lugosch v. Pyramid Co.*, 435 F.3d 110, 120 (2d Cir. 2006) (noting that sealing orders should be "narrowly tailored").   However, sealing is warranted in order to protect the privacy interests of a third party.   *See United States v. Amodeo*, 44 F.3d 141, 147 (2d Cir. 1995).   Under the circumstances, the interest in safeguarding the privacy of this third party outweighs the public's qualified right to access such information.   Because the facts set forth herein provide a sufficient basis for the "specific, on the record findings" necessary to support sealing, *Lugosch*, 435 F.3d at 120, the government respectfully requests that the Court permit the government to file Exhibit A under seal.

several major media outlets published articles reporting that Huawei violated U.S. law in Iran, including by selling and attempting to sell embargoed U.S.-origin goods to Iran. *See* ECF No. 126, ¶¶ 73-75. This public reporting, even as early as 2011, further supported reasonable suspicion that Huawei employees entering the United States (especially from the Middle East, as the employee was when he arrived from Egypt in February 2018) could be involved in international criminal activity. All of this is sufficient to justify a forensic border search of the employee's electronic devices even assuming that a "reasonable suspicion" standard applied, and even in the absence of valid consent.

## II.    Discovery of the Contents of the Devices Was Inevitable

Even if the searches of the employee's electronic devices were not lawful border searches (and they were), and even in the absence of consent, the inevitable-discovery doctrine is an exception to the exclusionary rule that allows the admission of unlawfully seized evidence when the government can show that it inevitably would have been discovered by lawful means. It would have been here.

The government must show inevitable discovery by a preponderance of the evidence. *See United States v. Cabassa*, 62 F.3d 470, 474 (2d Cir. 1995). "The exception requires the district court to determine, viewing affairs as they existed at the instant before the unlawful search, what would have happened had the unlawful search never occurred." *United States v. Eng*, 971 F.2d 854, 861 (2d Cir. 1992). The exception is properly applied when "a court can find, with a high level of confidence, that each of the contingencies necessary to the legal discovery of the contested evidence would be resolved in the government's favor." *United States v. Heath*, 455 F.3d 52, 60 (2d Cir. 2006).

5

Here, discovery of the contents of the February and April 2018 laptops was inevitable because, in the absence of a border search, the government would have simply obtained either a grand jury subpoena for the records contained on the devices, or a warrant to search the devices. Indeed, the evidence on those devices consists of business records and documents, the essential nature of which the government was already able to articulate based on the reasonable suspicion described above, and which the government could articulate with still more specificity after interviewing the employee. Thus, even if a border search were not a lawful means to obtain that evidence, a grand jury subpoena would have been. In this respect, the defendants' suggestion that a ruling for the government poses a threat to "any organization's private data," ECF No. 576, at 7, is overstated. Though corporations have Fourth Amendment rights, they lack any "claim [of] equality with individuals in the enjoyment of a right to privacy," *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950)), and it is black-letter law that they do not enjoy the Fifth Amendment privilege, *see, e.g.*, *In re Grand Jury Subpoena Issued June 18, 2009*, 593 F.3d 155, 157-58 (2d Cir. 2010) ("Under the long-established 'collective entity rule,' however, corporations cannot avail themselves of the Fifth Amendment privilege."). Thus, neither a corporation nor a custodian of its records may refuse to produce corporate documents on Fifth Amendment grounds, and because no other privilege or impediment to production applies, a grand jury subpoena for the relevant documents in the physical custody of the employee would have inevitably (absent criminally obstructive conduct by Huawei) resulted in their production.

Moreover, in addition to a grand jury subpoena, the government also would have been able to obtain a search warrant for the devices. As noted above, a lawful 2013 search of the same employee's laptop included dozens of files related to Huawei projects with

6

telecommunications providers in Iran.   Combined with the public reporting at the time that Huawei was violating U.S. sanctions on Iran—including by selling and attempting to sell embargoed U.S.-origin goods to Iran—the government had ample probable cause to obtain a search warrant for the February and April 2018 devices if one had been necessary.   As such, whether through grand jury subpoena or search warrant, the government inevitably would have obtained the records on the devices, and suppression is not appropriate.

III.   Suppression Would Be Inappropriate Because the Searches Were Conducted in <u>Good Faith</u>

In any event, because the agents who conducted the searches in 2018 were entitled to rely on binding caselaw as it existed in 2018, the good-faith doctrine applies.   Although the "evidentiary fruits of Fourth Amendment violations are generally inadmissible at trial[,] . . . the fruits of 'a search conducted in reasonable reliance on binding precedent are not subject to the exclusionary rule,' as that rule is designed 'to deter *future* Fourth Amendment violations.'"   *United States v. Aigbekaen*, 943 F.3d 713, 725 (4th Cir. 2019) (quoting *United States v. Davis*, 564 U.S. 229, 236-37 (2011)); *see also Davis*, 564 U.S. at 249-50 ("[W]hen the police conduct a search in objectively reasonable reliance on binding appellate precedent, the exclusionary rule does not apply.").

As noted above, *supra* 1 n.1, the Second Circuit will likely decide soon whether the Fourth Amendment requires any heightened level of suspicion for a border search of electronic devices, and if so, what; but as of the date of this filing, neither the Second Circuit nor the Supreme Court has done so, and the Fifth Circuit (the *situs* of the searches at issue)[4] has ruled only that no

---

[4]    There appears to be no binding authority on the question of whether the precedent

7

suspicion is necessary for manual border searches of electronic devices. *See United States v. Castillo*, 70 F.4th 894 (5th Cir. 2023). Indeed, in between the February and April 2018 searches, in March 2018, the Fifth Circuit expressly declined a request to rule that any heightened suspicion standard applies to border searches of electronic devices, noting that at that time only two courts anywhere (the Ninth Circuit and the District of Maryland) had ever done so, and relying instead on the agents' good-faith reliance on binding precedent of broad border-search authority. *United States v. Molina-Isidoro*, 884 F.3d 287 (5th Cir. 2018) (citing *United States v. Cotterman*, 709 F.3d 952 (9th Cir. 2013), and *United States v. Saboonchi*, 990 F.Supp.2d 536 (D. Md. 2014), as the only two cases to require any level of suspicion for any border searches of electronic devices).[5]

Although there are many more cases addressing this issue today with disparate results, nearly eight years ago when the searches at issue were conducted, the agents surely could not have anticipated such distant developments in jurisprudence. In early 2018, the state of the applicable binding precedent was simply the well-established principle "that the government has broad powers to conduct searches at the border even where . . . there is no reasonable suspicion that the prospective entrant has committed a crime." *Tabbaa v. Chertoff*, 509 F.3d 89, 97-98 (2d Cir.

---

of the circuit where a search occurred or the precedent of the circuit where a prosecution occurs is controlling when evidence obtained in one circuit is used in a prosecution occurring in another, but the Court need not address that question because there is no material difference in this instance. *Cf. generally* James Durling, *The Intercircuit Exclusionary Rule*, 128 Yale L.J. 231 (2018) (surveying caselaw and arguing that district courts should apply the precedent of their own circuit but also consider the law of the "search circuit" when considering the good faith of the agents).

[5]     The Fifth Circuit has also more recently (in 2020) affirmed on good-faith grounds a May 2018 forensic border search of an electronic device which was supported by reasonable suspicion without holding that reasonable suspicion is constitutionally necessary. *United States v. Aguilar*, 973 F.3d 445 (5th Cir. 2020).

2007) (collecting cases); *see also United States v. Ramsey*, 431 U.S. 606, 616 (1977) ("That searches made at the border, pursuant to the long-standing right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border, should by now, require no extended demonstration."); *United States v. Irving*, 452 F.3d 110, 123 (2d Cir. 2006) ("Border searches[,] from before the adoption of the Fourth Amendment, have been considered reasonable by the single fact that the person or item in question had entered our country from outside." (internal quotation marks, citations and alterations omitted)). "[A]irports . . . are functionally equivalent to international borders, and 'since the founding of our Republic, Congress has granted the Executive plenary authority to conduct routine searches and seizures at the border . . . .'" *United States v. Singh*, No. 12-CR-121 (DLI), 2012 WL 2501032, at \*3 (E.D.N.Y. June 27, 2012) (quoting *Montoya de Hernandez*, 473 U.S. at 537 (internal alterations omitted)).

Although the Second Circuit has recognized that reasonable suspicion is necessary to support certain "non-routine" border searches, to date (and certainly in 2018), it has only done so in cases of invasive searches of the body itself, never of property. *See, e.g.*, *Levy*, 803 F.3d at 123 n.3 (noting that the Supreme Court and Second Circuit "have suggested that the label 'non-routine' [and requirement of reasonable suspicion] should generally be reserved for intrusive border searches of the person (such as body-cavity searches or strip searches), not belongings"); *Abidor*, 990 F. Supp. 2d at 270 n.8 ("The only recognized exception to this broad holding [that any person or thing coming into the United States is subject to search . . . whether or not there be any suspicion of illegality], which has been carved out by the Courts of Appeals, relates to strip and body cavity searches.").

9

Thus, because in February and April 2018 neither the Supreme Court nor the Second or Fifth Circuit had ever imposed any heightened-suspicion standard on border searches of electronic devices or other property, and the agents had no reason to expect that they would, it was reasonable for the agents to rely on governing precedent that they had plenary authority to conduct searches of property at the border. Even if the Second Circuit soon announces a new rule, the agents in 2018 acted in reasonable reliance on then-existing case law and the good-faith doctrine therefore applies.

## **CONCLUSION**

For the foregoing reasons, and those discussed in the government's prior memorandum in opposition to the defendants' motion to suppress, the government respectfully submits that the Court should deny the defendants' motion to suppress in its entirety.

Dated:      Brooklyn, New York
            January 9, 2026

                                        JOSEPH NOCELLA, JR.
                                        United States Attorney
                                        Eastern District of New York

                            By:      __/s/_____
                                        Alexander A. Solomon
                                        Meredith A. Arfa
                                        Robert Pollack
                                        Matthew Skurnik
                                        Assistant United States Attorneys
                                        (718) 254-7000

                                        MARGARET A. MOESER
                                        Chief, Money Laundering, Narcotics and
                                        Forfeiture Section,
                                        Criminal Division,
                                        U.S. Department of Justice

Taylor G. Stout
Morgan J. Cohen
Jasmin Salehi Fashami
Trial Attorneys


CHRISTIAN NAUVEL
Acting Chief, Counterintelligence and Export
Control Section,
National Security Division,
U.S. Department of Justice

Sean O'Dowd
Christopher Fenton
Trial Attorneys